UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

THE CITY OF NEW YORK,

                                    Plaintiff,

                        v.

PUFF BAR, EVO BRANDS LLC, PVG2, LLC d/b/a PUFF          1:25-cv-02850
BAR, MIDWEST GOODS INC. d/b/a MIDWEST
DISTRIBUTION ILLINOIS, 10 DAYS, INC. d/b/a POD
JUICE, SAFA GOODS LLC, SV3, LLC d/b/a MI-ONE
BRANDS, MYLÉ VAPE INC., MVH I, INC.

                                    Defendants.

———————————————————————————x


**MEMORANDUM OF LAW OF PLAINTIFF THE CITY OF NEW YORK
IN OPPOSITION TO DEFENDANTS' MOTION TO SEVER**


                        **MURIEL GOODE-TRUFANT**
                        Corporation Counsel of the
                          City of New York
                        *Attorney for Plaintiff The City of New York*
                        100 Church Street, Room 20-82
                        New York, New York 10007
                        (212) 356-2299

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

ARGUMENT

    I.      Legal Standard ............................................................................................. 4

    II.     Defendants Are Properly Joined Under Federal Rule of Civil Procedure 20 ......... 6

          A.     The Complaint Alleges Joint and Several Liability Arising from the Same Series of Transactions or Occurrences ............................... 6

          B.     The Claims Involve Common Questions of Law and Fact ...................... 11

          C.     Other Considerations Counsel Against Severance ................................... 13

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

*Agnesini v. Doctor's Assocs., Inc.*,
   275 F.R.D. 456 (S.D.N.Y. 2011) ................................................................................5, 6

*Androphy v. Smith & Nephew, Inc.*,
   31 F. Supp. 2d 620 (N.D. Ill. 1998) .................................................................................9

*Ardolf v. Weber*,
   332 F.R.D. 467 (S.D.N.Y. 2019) .............................................................................14, 15

*Baergas v. City of New York*,
   2005 U.S. Dist. LEXIS 18785 (S.D.N.Y. 2005) .............................................................4

*Christian Dior Couture SA v. Xiaole Lin*,
   No. 22-cv-10716, 2023 U.S. Dist. LEXIS 222328 (S.D.N.Y. Aug. 24, 2023) .............8, 15, 16

*City of New York v. Magellan Tech., Inc.*,
   735 F. Supp. 3d 312 (S.D.N.Y. 2024), *reconsideration denied by City of New
   York v. Magellan Tech., Inc.*, 2024 U.S. Dist. LEXIS 231932 (S.D.N.Y. Dec.
   20, 2024) ..........................................................................................................................3

*City of New York v. A-1 Jewelry & Pawn, Inc.*,
   247 F.R.D. 296 (E.D.N.Y. 2007) ....................................................................................6

*City of New York v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) .............................................................................7

*City of New York v. EnviroMD et al.*,
   Case No. 24-cv-5161 (S.D.N.Y.) .....................................................................................14

*City of New York v. Magellan Tech. et al.*,
   Case No. 23-cv-5880 (S.D.N.Y.) .....................................................................................14

*Daniels v. Loizzo*,
   178 F.R.D. 46 (S.D.N.Y. 1998) ......................................................................................16

*Deskovic v. City of Peekskill*,
   673 F. Supp. 2d 154 (S.D.N.Y. 2009) .........................................................................4, 5

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) .......................................................................................9

*Gokdogan v. Slap Shop Pizza Enterprises, Ltd.*,
   No. 20-cv-5201, 2021 U.S. Dist. LEXIS 184745 (E.D.N.Y. Sept. 27, 2021) ..........................14

**Cases**                                                      **Pages**

*Golden Goose Deluxe Brand v. Aierbushe*,
No. 19-cv-2518, 2019 U.S. Dist. LEXIS 84639 (May 3, 2019) .......................................5, 6, 13

*Jem Accessories, Inc. v. Jvckenwood USA Corp.*,
No. 20-cv-4984, 2021 U.S. Dist. LEXIS 33687 (S.D.N.Y. Feb. 22, 2021)............................11

*Kenvin v. Newburger, Loeb & Co.*,
37 F.R.D. 473 (S.D.N.Y. 1965) ..............................................................................................8

*N. Jersey Media Grp., inc. v. Fox News Network, LLC*,
312 F.R.D. 111 (S.D.N.Y. 2015) ...........................................................................................13

*Nassau County Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*,
497 F.2d 1151 (2d Cir. 1974).............................................................................................7, 9

*New York v. Arm or Ally, LLC*,
718 F. Supp. 3d 310 (S.D.N.Y. 2024)....................................................................7, 10, 11, 16

*Njoy LLC v. Imracle HK Ltd*,
No. 23-cv-8798, 2024 U.S. Dist. LEXIS 47676 (C.D. Cal. Jan. 18, 2024) ............................9

*Oram v. SoulCycle LLC*,
979 F. Supp. 2d 498 (S.D.N.Y. 2013) .....................................................................................4

*Pergo, Inc. v. Alloc., Inc.*
262 F. Supp. 2d 122 (S.D.N.Y. 2003) .....................................................................................9

*SEC v. Pignatiello*,
No. 97-cv-9303, 1998 U.S. Dist. LEXIS 8297 (S.D.N.Y. June 3, 1998) ...............................13

*Skyline Steel, LLC v. Pilepro, LLC*,
No. 13-cv-8171 (JMF), 2015 U.S. Dist. LEXIS 27436 (S.D.N.Y. Mar. 5,
2015) ........................................................................................................................................7

*Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*,
No. 20-cv-10731, 2023 U.S. Dist. LEXIS 48925 (S.D.N.Y. Mar. 22, 2023)...................10, 11

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966)................................................................................................................4

*Viada v. Osaka Health Spa, Inc.*,
235 F.R.D. 55 (S.D.N.Y. 2006) ...............................................................................................4

*Vulcan Soc'y v. Fire Dep't of White Plains*,
82 F.R.D. 379 (S.D.N.Y. 1979) ...............................................................................................5

**Cases**                                                                      **Pages**

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*,
    No. 99-cv-0682, 2001 U.S. Dist. LEXIS 12691 (S.D.N.Y. Aug. 23, 2001).............................4

*Wilson-Phillips v. Metro Transp. Auth.*,
    No. 18-417, 2018 U.S. Dist. LEXIS 194201 (S.D.N.Y. Nov. 14, 2018)................................13

**Statutes**

15 U.S.C. § 375 (4).............................................................................................................................3

15 U.S.C. § 376...............................................................................................................................12

15 U.S.C. § 1716e............................................................................................................................12

Fed. R. Civ. P. 20...................................................................................................................*passim*

Fed. R. Civ. P. 21.........................................................................................................................1, 4

Fed. R. Civ. P. 42(b)........................................................................................................................16

**Other Authorities**

Siegel, *N.Y. Prac.* § 168A .................................................................................................................6

Plaintiff the City of New York (the "City") respectfully submits this memorandum of law in opposition to the motion to sever filed by Defendants Puff Bar, EVO Brands, LLC, PVG2, LLC, Midwest Goods, Inc. d/b/a Midwest Distribution Illinois, 10 Days Inc. d/b/a Pod Juice, Safa Goods, LLC, SV3, LLC d/b/a Mi-One Brands, Mylé Vape, Inc., and MVH I, Inc. (together, "Defendants"). *Defs. Mem. L. Supp. Mot. To Sever* (*Dkt. No.* 26-1) ("*Defs. Mem.*").

## INTRODUCTION

The City brings this action against Defendants—e-cigarette distributors responsible for flooding New York City with illegal flavored e-cigarettes ("vapes")—in response to a public health crisis. In their motion, Defendants ask the Court to sever this case into multiple, separate lawsuits, despite the identical claims against all Defendant groups and the collective harm Defendants' conduct causes New York City. The motion should be denied because the parties are properly joined under Fed. R. Civ. P. 20: the City asserts claims jointly and severally against the Defendants arising from the same series of transactions or occurrences and sharing common questions of law or fact. Other factors that courts consider in evaluating a motion brought under Fed. R. Civ. P. 21, foremost of which is judicial economy, weigh decisively in favor of denying severance. Resolving this dispute in a single action is the most efficient and fair way forward.

## BACKGROUND

New York City faces a severe public health crisis from the proliferation of e-cigarettes, particularly flavored, disposable e-cigarettes, none of which have the Food & Drug Administration ("FDA") approval required before the devices may be marketed in the United States. *Compl.* ¶ 1. As stated by the former HHS Secretary Alex Azar, flavored e-cigarettes have "engulf[ed] a new generation in nicotine addiction," *id.*, creating an epidemic among significant percentages of middle and high schoolers who are exposed—and now addicted to—"vapes." *Id.* A striking 18.7% of New York City high school students reported using e-cigarettes in 2022, for example. *Id.* ¶ 3.

Each of the present defendants distributes massive quantities of e-cigarettes to New York State and City sales outlets, bearing significant responsibility for the epidemic. *Id.* ¶¶ 26-30. The Defendants occupy a key nexus in the e-cigarette supply chain by importing the products into the United States, principally through partnerships with Chinese manufacturers, and then controlling regional distribution through sub-distributor and retailer networks. *Id.* Several Defendants specialize as master distributors of particular e-cigarette brands but commonly trade products among themselves to satisfy customer demand by diversifying their inventory. *Id.* ¶ 355. As a group, Defendants effectively control a significant portion of the New York market, coordinating their efforts to ensure that market remains profitable. *Id.* ¶ 356.

Each Defendant employs marketing gimmicks that deliberately target underage users; they deck out e-cigarettes in flavors and bright colors, and equip them with attention-grabbing devices like mini-video games, all intended to attract children. *Id.* ¶¶ 36, 68. Each Defendant employs young social media influencers to spread misinformation about the legality and safety of the e-cigarettes with which Defendants blanket the State and City. *Id.* ¶ 37. Defendants' efforts yield a lucrative market for highly addictive, flavored e-cigarettes. *Id.* ¶ 5.

While New York State and City have confronted the epidemic of youth nicotine addiction through comprehensive regulatory regimes, including the enactment of flavor bans, Defendants have found myriad ways to undercut that effort, necessitating the instant action. In total, the City asserts claims against six groups of related Defendants: (1) EVO Brands, PVG2 and Puff Bar (together, "Puff Defendants")[1]; (2) Midwest Goods Inc.; (3) Pod Juice; (4) Safa Goods; (5) Mi-

---

[1] EVO Brands is the trademark holder of the "Puff" brand of disposable e-cigarettes, and a family of marks consisting of or incorporating the term "Puff" and/or its distinctive cloud design, including the brands Puff BAR, Puff Plus, Puff Glow, and Puff Flow. *Compl.* ¶ 156. EVO Brands licenses the Puff Brands to PVG2. *Id.* ¶ 157. PVG2, in turn, is the operating entity that distributes disposable e-cigarettes bearing the Puff brands. *Id.* ¶ 158. Puff Bar has owned and operated the

One; and (6) MVH I and Mylé Vape (together, "Mylé Defendants"). [2]    As alleged in the Complaint, each Defendant group persistently violates the Prevent All Cigarettes Trafficking Act (the "PACT Act") i) by engaging in massive numbers of prohibited "delivery sales;"[3] ii) by using the United States Postal Service to ship e-cigarettes; and iii) by failing to maintain detailed records and submit reporting to New York City and other regulators. *Id.* ¶¶ 384-410. Each Defendant also violates i) the Family Smoking Prevention and Tobacco Control Act (the "Tobacco Control Act") by selling e-cigarettes lacking FDA approval; ii) New York's Public Health Law by, *inter alia*, by ignoring the State's complete retail ban on flavored e-cigarette products, *id.* ¶¶ 414-19; and iii) New York City's Administrative Code, the City's complete ban on all sales or offers to sell or possess flavored e-cigarettes, *id.* ¶¶ 411-13. In addition to these statutory violations, by promoting, marketing, selling and distributing flavored, disposable e-cigarettes in New York City, in direct contravention of the New York State and City regulatory frameworks, Defendants collectively

---

Puff Bar main website for a substantial segment of the Relevant Time Period. *Id.* ¶ 159. On information and belief, starting on February 21, 2021, PVG2 has also maintained that website, through which both Puff Bar and PVG2 advertised, sold, or offered for sale Puff brand disposable e-cigarettes. *Id.* Accordingly, the Puff Defendants are affiliates that operate a common enterprise to sell Puff Brand disposable e-cigarettes to distributors, wholesalers, retailers, and/or individual residents in New York City. *Id.* ¶ 160.

[2] MVH I is the owner of the word-mark trademark, MYLÉ, in the category of tobacco, smokers' articles, matches, and a family of marks consisting of or incorporating the term "MYLE" and/or its distinct black and white design. *Compl.* ¶ 328. Mylé Vape is the operating entity that distributes disposable e-cigarettes bearing the Mylé brand on behalf of MVH I. *Id.* ¶ 329. Mylé Vape is the owner of the word-mark trademarks, MYLÉ and MYLE, in the category of apparel, accessories, and other swag. *Id.* ¶ 329. Accordingly, the MYLÉ Defendants are affiliates that operate a common enterprise to sell Mylé brand disposable e-cigarettes to distributors, wholesalers, retailers, and/or individual consumers in New York City. *Id.* ¶ 331.

[3] Delivery sales are sales to "consumers," a defined term for any buyer of e-cigarettes, including unlawfully operating e-cigarette businesses. *See* 15 U.S.C. § 375 (4); *City of New York v. Magellan Tech., Inc*., 735 F. Supp. 3d 312 (S.D.N.Y. 2024), *reconsideration denied by City of New York v. Magellan Tech., Inc*., 2024 U.S. Dist. LEXIS 231932 (S.D.N.Y. Dec. 20, 2024).

cause harm to New York City's public health and safety, creating a public nuisance. *Id.* ¶¶ 420-27.

## ARGUMENT

### I. Legal Standard

Pursuant to Rule 20, joinder is proper if:

> (A) any right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).[4] "In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) (citing *Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006)); *Baergas v. City of New York*, 2005 U.S. Dist. LEXIS 18785 (S.D.N.Y. 2005). The overarching consideration in assessing a motion to sever, as stated by the Supreme Court, is that "under the [federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). "The requirements of [Rule 20] are to be interpreted liberally to enable . . . court[s] to promote judicial economy[.]" *Deskovic*, 673 F. Supp. at 160. Indeed, "[t]he Federal courts view severance as a procedural device," *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 503 (S.D.N.Y. 2013) (quoting *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, No. 99-cv-0682, 2001 U.S. Dist. LEXIS 12691, at *1

---

[4] The Defendants in this case were properly joined. If the Court decides otherwise, however, "misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

(S.D.N.Y. Aug. 23, 2001) (internal citations omitted)), "to be employed only in exceptional circumstances." *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (quoting *Deskovic*, 673 F. Supp. 2d at 160). As shown below, nothing is "exceptional" about the present circumstances, where multiple, independent tortfeasors have been joined in a single action.

As to the Rule 20 requirement of "same transaction," "[t]here is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20." *Agnesini* 275 F.R.D. at 458 (quoting *Vulcan Soc'y v. Fire Dep't of White Plains*, 82 F.R.D. 379, 387 (S.D.N.Y. 1979)). Courts "must assess the logical relationship between the claims and determine whether the 'essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Golden Goose Deluxe Brand v. Aierbushe*, No. 19-cv-2518, 2019 U.S. Dist. LEXIS 84639, at *3 (S.D.N.Y. May 3, 2019) (citations omitted). "The fact that defendants may be 'independent actors,' rather than joint tortfeasors, does not preclude joinder." *Id.* at *6 n.2. In the present circumstances of public nuisance independent actors can combine to create the nuisance. *See* n.9. Regarding the second requirement of Rule 20(a)(2), "the overlap in questions of law or fact must be 'substantial' in order for joinder to be appropriate." *Golden Goose Deluxe Brand*, 2019 U.S. Dist. LEXIS 84639, at *3 (citations omitted).

Other relevant considerations to a motion for severance include "'(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence.'" *Agnesini*, 275 F.R.D. at 458.

## II.  Defendants Are Properly Joined Under Federal Rule of Civil Procedure 20

As an initial matter, joinder is proper under Fed. R. Civ. P. 20. The City is asserting claims jointly and severally against the Defendants that arise from the same series of transactions or occurrences and share common questions of law or fact. *Agnesini*, 275 F.R.D. at 458 (citing Fed. R. Civ. P. 20(a)(1)).

### A.  The Complaint Alleges Joint and Several Liability Arising from the Same Series of Transactions or Occurrences

There can be no serious question that the City's claims against Defendants are "logically connected." *Golden Goose Deluxe Brand*, 2019 U.S. Dist. LEXIS 84639, at *3. The City's claims are brought against Defendants operating in the same industry, engaging in the same behavior — including through common marketing practices — that causes a uniform harm, in the form of a public nuisance. *Compl.* ¶¶ 420-27. Defendants' actions have collectively harmed New Yorkers by expanding the market for flavored vapes in the State and City to the point where their conduct has created a public nuisance in the form of a public health crisis, *id.* ¶ 427, fueled by the addictive and youth-attracting qualities of their products. *Id.* ¶¶ 366-71. The City is not alleging unconnected statutory violations, but rather a collective effort by the Defendants' that has flooded New York City with flavored vapes.

Indeed, Defendants are jointly and severally liable for the public nuisance caused by their collective actions. Under New York law, "[t]he rule of 'joint and several' liability has long been the rule in tort cases, meaning that each tortfeasor is responsible not only for the share of [plaintiff]'s damages that she herself caused ('several' liability), but also for the shares attributable to the other culpable tortfeasors ('joint' liability)." Siegel, *N.Y. Prac.* § 168A; *see also City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 347 (E.D.N.Y. 2007) ("Persons who join or participate in the creation or maintenance of a public nuisance are liable jointly and severally for

the wrong and resulting injury."); *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 282 (E.D.N.Y. 2004) (denying motion to dismiss firearms manufacturers, importers, and distributors, and holding that the defendants may be subject to joint and several liability for the creation or maintenance of a public nuisance). The City's assertion of "a right to relief . . . jointly, severally," makes joinder plainly proper.

Defendants contend that the claims do not arise out of the same series of transactions or occurrences because they have not conspired or acted jointly. *Defs. Mem* at 9.[5] This is not only incorrect, but a matter requiring discovery before Defendants' conclusory assurances are credited. Just as the court in *New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310, 344 (S.D.N.Y. 2024) was "skeptical" of a "bald assertion that there will be 'very little overlapping evidence' among Defendants," so too should this court reject Defendants' statements of fact untested by discovery.

The existence of a common transaction is best established by the allegations in the City's Complaint that Defendants jointly contribute to the creation and maintenance of a public nuisance and engage in "common marketing strategies." Compl. ¶¶ 153, 420-27. As shown below, the City's public nuisance claim requires common — or at least related — actions by the Defendants yielding common liability and/or damages across all Defendants. Leaving the joinder in place will therefore "serve the interest of judicial economy by preventing likely duplication of effort." *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-cv-8171 (JMF), 2015 U.S. Dist. LEXIS 27436, at *5 (S.D.N.Y. Mar. 5, 2015).

First, far from "comitt[ing] distinct and unrelated acts that happen to involve violations of the same statutory dut[ies]," *Nassau County Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty*

---

[5] Notably, Defendants do acknowledge that the Complaint alleges that Defendant Midwest Goods made purchases from other Defendants (specifically, Pod Juice, Safa Goods, and Mi-One). *Defs. Mem.* at 4-6.

*Co.*, 497 F.2d 1151 (2d Cir. 1974), The City also alleges that certain Defendants work *directly* together. In fact, the City alleges that Defendants commonly sell and purchase e-cigarette products *among themselves*, establishing an overlapping inventory of various cigarettes, brands, and flavors to satisfy demands by a single supplier. *Compl.* ¶ 355. Thus, Defendant Midwest Goods, which prides itself as the "#1 distributor for Vape & Smoke," *Id.* ¶ 217, purchased cigarettes from Defendants Mylé Vapor, Mi-One, and Safa Goods, and then sold and shipped products from those Defendants to distributor, wholesale, and retail customers in New York City. *Id.* ¶ 241.[6] This direct business relationship among Defendants underscores their collective control over the New York market, ensuring that they each profit in this saturated market. *Id.* ¶ 356. All Defendants contribute to the supply chain, and hence affect the availability, price, and promotion of the major brands of e-cigarettes for sale illegally throughout New York City over the past five years. *Id.* ¶ 12. Defendants are plainly in error in contending that "[n]owhere in its 138-page Complaint does the City allege that Defendants conspired or acted jointly." *Defs. Mem.* at 9.

For these reasons, the cases relied on by Defendants have no bearing here. In *Kenvin v. Newburger, Loeb & Co.*, the plaintiff alleged that defendant stockbrokers "participated in the arrangement of [the unlawful] extension of credit to the plaintiff for the purchase of securities and that as a result thereof" plaintiff sold the securities at a loss. 37 F.R.D. 473, 474 (S.D.N.Y. 1965).

---

[6] Specifically, the City alleges that: (1) between 2019-2020 and 2022, Midwest Goods purchased Mylé-branded disposable e-cigarettes, totaling over $300,000 from Defendant Mylé, and then sold a substantial number of those products into New York City; (2) between 2018-2024, Midwest Goods purchased e-cigarettes totaling over $8 million from Defendant POD Juice, and then sold a substantial number of those products into New York City; (3) between 2018-2023, Midwest Goods purchased e-cigarettes totaling over $17 million from Defendant Mi-One, and then sold those products into New York City; and (4) between 2020-2023, Midwest Goods purchased e-cigarettes totaling over $2 million from Defendant Safa Goods, and then sold a substantial number of those products into New York City. *Compl.* ¶ 241. *See Christian Dior Couture SA v. Xiaole Lin,* 2023 U.S. Dist. LEXIS 222328 (S.D.N.Y. Aug. 24, 2023) (plaintiffs' proof to include the use communications between various Defendants).

The court granted the motion to sever, reasoning that "[t]he dates, amounts lost and apparently the securities are all different" and "the operative facts asserted against [one defendant] are in no way factually connected to those asserted against the other defendants." *Id.* at 475. "It would appear that plaintiff has alleged against each of the four defendants distinct and unrelated acts which happen to involve violations of the same statutory duty." *Id.* Defendants also cite a string of patent cases for the proposition that joinder is improper where the offenders merely violated the same patents but were not alleged to have acted in concert. *See Pergo, Inc. v. Alloc., Inc.* 262 F. Supp. 2d 122 (S.D.N.Y. 2003); *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620 (N.D. Ill. 1998). None of Defendants' citations are applicable here, where Defendants are alleged to have worked together in some capacity and to have contributed to a public nuisance, in addition to statutory violations.[7]

---

[7] Defendants also cite *Nassau County*, 497 F.2d 1151, in which insurance agent associations commenced a class action against **164** insurance companies for terminating or threatening to terminate thousands of agency contracts in violation of federal antitrust laws. The Second Circuit found that there was "no connection at all between the practices engaged in by each of the 164 defendants," and that "[t]heir actions were charged as separate and unrelated, with terminations occurring at different times for different reasons with regard to different agents." *Id.* at 1154. Similarly, Defendants point to *Njoy LLC v. Imracle HK Ltd*, No. 23-cv-8798, 2024 U.S. Dist. LEXIS 47676 (C.D. Cal. Jan. 18, 2024), in which the court *sua sponte* severed claims against **51** vape product distributors and retailers that were alleged to violate the Lanham Act, California False Advertising Act, PACT Act, and California Unfair Competition Law. The court reasoned that:

> Though NJOY vaguely alleged that a few of the Defendants were affiliated with another defendant without explaining those affiliations, there were no allegations that all of the Defendants are liable to NJOY jointly, severally or in the alternative. Further, NJOY did not allege that any - let alone all - of the Defendants participated in the same transaction, occurrence, or series of transactions or occurrences.

*Id.* at *4-5. Here, by contrast, the City has asserted claims against six groups of defendants, several of whom engaged in interrelated transactions and all of whom contributed to a public nuisance in New York City.

By contrast to Defendants' inapposite citations, the present case should be decided in accord with the persuasive decision in *New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310 (S.D.N.Y. 2024). In *Arm or Ally,* the court decided a motion to sever brought by nine manufacturers of "ghost guns."[8] The Court denied severance because the complaint alleged that defendants were "jointly and severally liable for the public nuisance arising 'out of the same transaction, occurrence, or series of transactions and occurrences.'" *Id.* at 343 (quoting *Fed. R. Civ. P.* 20(a)(2)(A)). The *Arm or Ally* court's conclusion that the complaint there alleged the same occurrence was grounded in public nuisance, a claim for which collective action comprising a single transaction is inherent. *See Suez Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, No. 20-cv-10731, 2023 U.S. Dist. LEXIS 48925, at *36-37 (S.D.N.Y. Mar. 22, 2023) ("A defendant whose conduct, viewed in isolation, would not by itself interfere with a public or private right is not—by virtue of that fact alone—immune from an equitable action seeking relief against all persons whose conduct, in the aggregate, create a nuisance.") (quoting *NAACP*, 271 F. Supp. 2d at 493 ("Where multiple actors contribute to a public nuisance, equity can reach actors whose conduct standing alone might not be actionable.")).[9]

---

[8] "Ghost guns," so-called because of the absence of serial numbers that allow tracing by law enforcement, are "unfinished frames and receivers that can be converted into fully functional firearms by drilling a few holes or filing excess plastic, [sold] directly to consumers without following any of the federal or state laws and regulations that apply to the sale of guns." No. 22-cv-6124 (JMF), 2024 U.S. Dist. LEXIS 90114, at *2 (S.D.N.Y. May 20, 2024).

[9] Indeed, given the fact that e-cigarettes are deemed hazardous waste, *see, e.g.*, *In the Matter of NicoPure Labs LLC*, 2017 EPA RJO LEXIS 513 (deeming nicotine in discarded e-cigarettes hazardous waste) the public nuisance decisions by courts in this circuit on groundwater contamination caused by groups of actors are relevant to finding a "single transaction" here. Joint and several liability will be found for defendants that "(1) marketed or sold the product to customers who used the product …; (2) held a significant percentage of the relevant market; and (3) contributed to the contamination, either directly by releasing the contaminants into the environment, or indirectly by advising persons who purchased from it the contaminating products to release the contaminants into the environment with knowledge that the recommended disposal

The *Arm or Ally* court also held that the defendants seeking severance did not (and could not) deny the presence of some "question[s] of law or fact common to all defendants." *Id.* at 344 (quoting *Fed. R. Civ. P.* 20(a)(2)(B)). Notably, the court denied the severance motion even when complaint in *Arm or Ally* did not allege the buyer-seller relationships among the different defendants that are abundant here. In the *Arm or Ally*, the Court also noted that "every Moving Defendant relies almost exclusively" on one defendant's brief, *id.*, as indicative of the existence of "common questions of law and fact." The same circumstance is presented here by Defendants' single brief supporting the Defendants' Motion to Dismiss. *See New York v. Puff Bar et al.*, Case No. 25-cv-1445 (*Dkt. No.* 78).

Although allegations that a plaintiff was injured by a group of defendants is in of itself an insufficient basis for joinder pursuant to Rule 20(a), *Jem Accessories, Inc. v. Jvckenwood USA Corp.,* No. 20-cv-4984, 2021 U.S. Dist. LEXIS 33687, at *6 (S.D.N.Y. Feb. 22, 2021), that is simply not the case here, where as in *Arm or Ally*, it is the Defendants' *collective* efforts that *in sum* create a public nuisance by flooding the City with illegal flavored e-cigarettes. The City adequately alleges that its claims arise out of the same transaction or occurrence.

**B.  The Claims Involve Common Questions of Law and Fact**

Defendants contend that the City's case does not involve common questions of law or fact. Defendants argue that any overlap of law and fact is not substantial enough to warrant joinder, given that the City does not allege the same claims against each Defendant, and even for claims against all Defendants, the relevant facts do not overlap. *Defs. Mem*. at 10-12. Again, this is plainly incorrect.

---

methods would likely lead to contamination." *Suez Water*, 2023 U.S. Dist. LEXIS 48925, at *19-20. These factors fit closely, if not exactly, to the "contaminants released into the environment" by the present Defendants.

First, the City asserts claims under the N.Y.C. Administrative Code, N.Y. Public Health Law, and common law public nuisance against *all* Defendants. The City also asserts PACT Act violations (15 U.S.C. §§ 376a, 376, and 1716e) against all Defendants except Evo Brands and MVH I. However, as explained in the Complaint, Defendants Evo Brands and MVH I are trademark holders *associated with other Defendants*. For example, Defendant Evo Brands is the trademark holder of the "Puff" brand of disposable e-cigarettes and licenses Puff Brands to Defendant PVG2, which is the operating entity that distributes disposable e-cigarettes bearing the Puff Brands, while Defendant Puff Bar owned and operated the main Puff Bar website for a period of time. *Compl.* ¶¶ 157-58. Together, these Defendants are affiliates that operate a common enterprise to sell Puff Brand e-cigarettes to distributors, wholesalers, retailers and individual residents in New York City. *Id.* ¶ 160. Similarly, MVH I is the owner of the word-mark trademark, MYLÉ, and Defendant Mylé Vape is the operating entity that distributes disposable e-cigarettes bearing the Myle brand on behalf of MVH I. *Id.* ¶¶ 328-29. Together, MVH I and Mylé Vape are affiliates that operate a common enterprise to sell MYLÉ brand disposable e-cigarettes to distributors, wholesalers, and/or individual customers in New York City. *Id.* ¶ 331. By Defendants' logic, claims against Evo Brands and MVH I should be severed from claims against their affiliated entities, even though they are alleged to work together. This cannot be right. For all intents and purposes, the City has alleged identical claims against all *groups* of Defendants, and therefore the claims clearly present the same questions of law.

Second, the common thread between Defendants is not simply that they violated the same statutes and sold vapor products to customers in New York City. *Defs. Mem.* at 10-12. As described above, the City alleges that at least some Defendants work directly together and maintain collective control over the market in New York City, ensuring that they each profit in this saturated

market. Additionally, the City alleges that all Defendants collectively contribute to a public nuisance in New York City. While each Defendant or groups of Defendants may be separate business entities, the material facts establishing liability are the same for all Defendants. Common questions of fact include: sales records into New York City, lack of approval from the Food & Drug Administration for products sold by Defendants, and the health impacts of e-cigarettes, particularly on youth.[10]

Therefore, the City alleges claims that involve the same questions of law and fact.

## C. Other Considerations Counsel Against Severance

Finally, the additional factors considered by courts in a motion to sever do not support severance here. Notably, even if the Court were to find that joinder was improper under Rule 20, there may still be valid reasons to deny severance. *See Golden Goose*, 2019 U.S. Dist. LEXIS 84639, at *9-10 (denying motion to sever, even though joinder was not proper under Rule 20, because of concerns about judicial economy).

---

[10] Again, the cases cited by Defendants do not move the needle here. In *Wilson-Phillips v. Metro Transp. Auth.*, the court severed employment discrimination claims involving two different plaintiffs, because anti-discrimination laws require a case-by-case analysis of the circumstances giving rise to a claim of discrimination. No. 18-417, 2018 U.S. Dist. LEXIS 194201 (S.D.N.Y. Nov. 14, 2018). In *N. Jersey Media Grp., inc. v. Fox News Network, LLC*, a copyright infringement action, the court granted a motion to sever claims involving videos from claims involving photographs, even though the claims involved common issues of law arising under the Copyright Act, because "the claims [were] based on completely different facts: different copyrighted works, created on different media, infringed upon at different times, by different parties, within different media channels." 312 F.R.D. 111, 115 (S.D.N.Y. 2015). Finally, in *SEC v. Pignatiello*, No. 97-9303, the SEC alleged that defendants were involved in two fraudulent schemes to manipulate the public trading market for securities issued by two different companies, and each scheme was developed and implemented by an individual defendant, Joseph Pignatiello. 1998 U.S. Dist. LEXIS 8297 (S.D.N.Y. June 3, 1998). The court severed the claims because "the factual circumstances giving rise to each claim [were] unrelated. Each scheme involved different co-defendants, different common stock, a different contract, and a different method of compensating Pignatiello." *Id.* at *9-10. As noted above, certain Defendants are alleged to do business together, and all Defendants are alleged to contribute to a public nuisance in New York City.

The first factor, whether settlement of claims or judicial economy would be facilitated, weighs heavily in the City's favor. Defendants offer the same tired arguments for judicial economy that have been repeatedly rejected, including (1) reducing the likelihood of disputes requiring court intervention, (2) streamlining trial with fewer witnesses and evidence, which would be less confusing to a jury,[11] (3) avoiding the need for unrelated Defendants to share confidential information with each other, and (4) promoting global settlement.[12] As an initial matter, these concerns are largely speculative: none of these issues have arisen in the City's two pending vape lawsuits,[13] both involving multiple defendants, many represented by the same attorneys in this case.[14] But more to the point, it begs logic to claim that "streamlining trial" will be achieved by proposing to replace one trial with perhaps six separate trials. The proposed "reduction of disputes" by scattering the disputants among perhaps six different judges is equally irrational. It is not at all clear why "unrelated" Defendants would have to share confidential information, particularly if the facts of their defenses are as different as they claim, which in any event is a matter easily resolved by sealing orders and confidentiality agreements. Finally, how "global settlement" would be

---

[11] *See Gokdogan v. Slap Shop Pizza Enterprises, Ltd.*, No. 20-cv-5201, 2021 U.S. Dist. LEXIS 184745, *46 (E.D.N.Y. Sept. 27, 2021) ("courts have found potential jury confusion insufficient to warrant a finding of prejudice when the claims are properly joined under the requirements of Rule 20") (collecting cases).

[12] *Ardolf v. Weber*, 332 F.R.D. 467, 32 (S.D.N.Y. 2019) (rejecting defendant's argument that denying severance would hinder negotiations or settlement, reasoning that "settlement is each party's choice, and whether to settle with some, or all, of the individual Plaintiffs is an available resolution, even if the Plaintiffs' join their claims.").

[13] *City of New York v. Magellan Tech. Inc. et al.*, Case No. 23-cv-5880 (S.D.N.Y.); *City of New York v. EnviroMD Group LLC et al.*, Case No. 24-cv-5161 (S.D.N.Y.).

[14] The absence of motions to sever by many of the same attorneys appearing in the City's two pending multi-defendant cases suggests that severance is deemed to be of little significance or, at best, an afterthought.

promoted by shattering one case into perhaps six is not at all obvious. It is *denying* the motion to sever that would promote judicial economy; it would be far more efficient for resolution to involve a single lawsuit. *See, e.g.*, *Ardolf*, 332 F.R.D. at 481 (denying severance and reasoning that "the prospect of conducting five separate trials—with overlapping evidence and testimony—could be equally wasteful, if not worse" than conducting a single trial with multiple parties).

The second factor, whether the parties will be prejudiced by severance, weighs in favor of the City. The prejudice to the City if severance were granted is self-evident. The City would be forced to litigate multiple cases, each having identical claims but presented with different case management schedules, different judges and perhaps inconsistent rulings. Additionally, since joint and several liability is the rule for tort claims such as public nuisance, the City would be harmed by severing this case into separate actions. By contrast, Defendants have not demonstrated that any prejudice to them would result from proceeding as a single action, beyond the purely hypothetical concerns of jury confusion (uniformly debunked by the courts in this district) and the sharing of confidential business information among co-Defendants, both remediable by standard case management practices. Defendants also contend that severing this case will allow each Defendant to pursue its own defenses without consideration of other Defendants' interests, but any litigant is always entitled to take that route – indeed rules of professional responsibility require their counsel to pursue their own interests and defenses even in a single case. Defendants have not in any case "indicated that they plan to raise conflicting defenses." *Christian Dior Couture SA*, No. 22-cv-10716, 2023 U.S. Dist. LEXIS 222328, at *3.

The third factor, whether different witnesses and documentary proof are required, is subject to the same charge of irrationality as Defendants' other "burden" arguments. Having the "different witnesses" and the "different documents" spread over six different proceedings instead of one is

prejudicial and not an effective means of preserving judicial resources. In reality, the City's case against each Defendant will involve a *significant* overlap in witnesses and evidence, such as evidence regarding the impact of e-cigarettes on youth and the impact of the harm on New York City caused by Defendants' collective conduct. *See Christian Dior Couture,* 2023 U.S. Dist. LEXIS 222328, at * 4 ("Plaintiffs are likely to use the same witnesses in prosecuting their claims against each of the Defendants").

Finally, Defendants' claims of trial complexity was also impliedly addressed by the *Arm or Ally* court, which stated that "*[a]t this stage,* the Court is skeptical of the Moving Defendants' bald assertion that there will be 'very little overlapping evidence'" among Defendants." 718 F.Supp. 3d at 344 (emphasis added). And "[t]he Court has considered the Moving Defendants' remaining arguments and, *at least at this stage of the litigation,* finds them to be without merit." *Id.* (emphasis added). The simple fact is that in the event that none of the six Defendant groups have settled before trial, so that all six (or fewer) go to trial, Defendants can resort to Fed. R. Civ. P. 42(b) to seek separate trials of the Defendants in this case. *See id.* ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."); *Daniels v. Loizzo*, 178 F.R.D. 46 (S.D.N.Y. 1998) (District court has broad discretion to order separate trials of defendants to promote convenience, expedite proceedings, or avoid unfair prejudice to party).

## **CONCLUSION**

For the reasons outlined above, the City respectfully requests that the Court deny the

motion to sever filed by Defendants.

Dated:          New York, New York
                June 6, 2025

                                            MURIEL GOODE-TRUFANT
                                            Corporation Counsel of the
                                             City of New York
                                            *Attorney for Plaintiff The City of New York*
                                            100 Church Street, Rm. 20-82
                                            New York, New York 10007
                                            (212) 356-2299

                                    By:     /s/ Alexandra Jung
                                            Alexandra Jung
                                            Eric Proshansky
                                            Aatif Iqbal
                                            Elizabeth Slater

                                            Assistant Corporation Counsels

## **WORD COUNT CERTIFICATE**

I hereby certify that the foregoing memorandum of law complies with the word count limitations set forth in Local Civil Rule 7.1 and the Individual Rules and Practices II(B)(2). This memorandum of law contains 5,699 words, excluding parts of the document exempted by Local Civil Rule 7.1 and the Individual Rules and Practices II(B)(2).

/s/ Alexandra Jung

Alexandra Jung
