PETERS
BROVNER
LLP.

March 31, 2026

**VIA ECF**
Hon. Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

> **Re:**   *State of New York v. Puff Bar, et al.*; Civil Action No. 25-cv-1445-MMG; *City of New York v. Puff Bar, et al.*; Civil Action No. 25-cv-02850-MMG
> Letter Motion for Request To File Motion in Limine

Dear Judge Garnett:

We represent Safa Goods LLC and write on behalf of all Defendants to respectfully request a conference concerning a threshold issue of statutory interpretation under the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. § 377(b)(1)(A)(ii) – the geographic and temporal limits of the Act's 2% of gross sales penalty.  Specifically, we seek the Court's guidance as to whether that issue may appropriately be presented through an early motion *in limine*. To the best of Defendants' knowledge, this issue presents questions of first impression, as Defendants are not aware of any reported decision squarely addressing either the geographic scope of the term "gross sales" or the temporal application of the statute's 2% of gross sales civil-penalty provision.  Early resolution of this issue will both help the parties negotiate a potential settlement of this case and will facilitate resolution of potential discovery disputes.

Following meet-and-confers with both the State and the City, the parties remain at an impasse as to the proper statutory interpretation of the scope of the term "gross sales" in Section 377(b)(1)(A)(ii), as well as the temporal application of the statute's 2% civil-penalty provision. These issues are already having significant practical consequences in this litigation, including with respect to the scope of discovery sought, the parties' respective settlement positions, and the proof of any civil penalty at trial. Defendants respectfully submit that early guidance from the Court on these issues would materially assist the parties in narrowing their disputes and litigating this case under the proper statutory framework.



| | |
|---|---|
| ADDRESS | 139 Fulton St. Suite 132, NYC 10038 |
| PHONE | 917-639-3270 |
| EMAIL | mpeters@petersbrovner.com |
| | lbrovner@petersbrovner.com |
| WEBSITE | petersbrovner.com |

As pertinent here, the PACT Act civil penalties provision states that, in the case of a delivery seller, a violator may be subject to a civil penalty of the greater of a fixed dollar amount or, "for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation." 15 U.S.C. § 377(b)(1)(A)(ii).

The parties disagree as to what that language means in two important respects.

First, the parties disagree as to the geographic scope of the phrase "gross sales." Plaintiffs contend that the phrase reaches a defendant's nationwide gross sales during the relevant one-year period, even in an enforcement action solely brought by New York governmental entities concerning alleged violations tied to New York. Plaintiffs take this position despite the fact that if all 50 state Attorneys General and several municipalities brought individual suits, plaintiffs' position would lead to collective penalties of more than 100% of national gross sales. Defendants disagree. In Defendants' view, the more appropriate reading is that "gross sales," in the context of this action, refers only to sales connected to the alleged violations actually at issue here, not all sales nationwide regardless of any nexus to New York.

Second, the parties disagree as to the temporal application of the 2% penalty. Plaintiffs have taken the position that they may seek a separate 2% penalty for each individual violation based on the one-year lookback period preceding each such violation. Defendants disagree with that interpretation as well. Where, as here, the alleged conduct is characterized as ongoing, Defendants respectfully submit that the statute is properly read to permit a single 2% penalty keyed to the commencement of the ongoing violation —not numerous overlapping 2% penalties within the same year based on the same alleged course of conduct.

Defendants further respectfully submit that Plaintiffs' interpretation would lead to extraordinary and untenable results. If the 2% provision is not limited to the jurisdiction bringing the enforcement action, and if the same 2% may also be imposed repeatedly for each alleged violation, then the same underlying course of conduct could expose a defendant to multiplying penalties untethered to any sensible limit. By way of example, if every state, together with numerous municipalities, were permitted to sue under that theory and seek 2% of a defendant's nationwide gross sales, the resulting aggregate exposure could quickly exceed several thousand percent of gross sales, an untenable and absurd result that would impose liability far exceeding the defendant's total gross sales. Defendants respectfully submit that Congress cannot be understood to have intended such an absurd result through the language used in Section 377(b)(1)(A)(ii).

That conclusion is reinforced by settled principles of statutory interpretation. Where statutory text is susceptible to more than one reading, courts may resort to traditional canons of construction, including the rule that statutes should be interpreted to avoid absurd results. *See Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 384–86 (S.D.N.Y. 2015); *S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011). And although that canon is applied cautiously, it applies where the consequences of a competing interpretation are so extreme that it is "quite impossible that Congress could have intended the result." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. E.P.A.*, 846 F.3d 492, 517 (2d Cir. 2017). That concern is present here as well. Under Plaintiffs' reading, multiple sovereigns could repeatedly seek 2% of a defendant's

2

nationwide gross sales based on the same underlying course of conduct, resulting in cumulative liability untethered to the conduct at issue and potentially exceeding the defendant's total gross sales. Courts in this District have rejected comparable statutory-damages theories where the proposed interpretation would yield extreme and irrational results. See *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 313, 317 (S.D.N.Y. 2011) (rejecting interpretation that would have driven damages "into the trillions" and citing the "absurdity of this result" as a reason to reject that reading). The same logic applies here.

Plaintiffs' reading also raises serious constitutional concerns. At minimum, a construction of Section 377(b)(1)(A)(ii) that would permit overlapping sovereigns to seek repeated 2% penalties pegged to nationwide gross sales raises substantial questions under the Excessive Fines Clause. See *United States v. Bajakajian*, 524 U.S. 321, 334 (1998); *Timbs v. Indiana*, 586 U.S. 146, 149 (2019). And where, as here, a statute is susceptible to more than one interpretation, courts should avoid constructions that create serious constitutional doubt. See *Clark v. Martinez*, 543 U.S. 371, 381 (2005). Absent a clear statement from Congress, Section 377(b)(1)(A)(ii) should not be read to authorize penalties of that magnitude. These issues are not academic. Plaintiffs' interpretation of Section 377(b)(1)(A)(ii) is the principal basis on which they have sought expansive nationwide sales and operational discovery, and it has likewise informed the parties' settlement discussions. Defendants respectfully submit that the meaning of this provision is therefore a threshold legal issue that would benefit from early resolution. If Plaintiffs' interpretation is correct, the parties can proceed accordingly – although that interpretation would appear to carry extraordinarily severe potential consequences for persons that may have engaged in otherwise *de minimus* violations of the PACT Act, such as by shipping a package several ounces in excess of ten pounds *or by shipping a package which although subject to PACT Act, did not contain nicotine products*. *See* 15 U.S.C. §§ 375 (2)(A)(ii)(II), (7)(A), 376a(b)(3). If Defendants' interpretation is correct, however, then substantial burden and expense associated with nationwide discovery and inflated penalty theories may be avoided. Resolution of this issue at the outset may also permit the parties to engage in more meaningful and productive settlement discussions under the proper statutory framework. Accordingly, Defendants respectfully request a conference at the Court's convenience to address whether the Court would permit an early, targeted motion *in limine* limited to the proper interpretation of 15 U.S.C. § 377(b)(1)(A)(ii), including both the geographic scope of the phrase "gross sales" and the temporal application of the statute's 2% penalty language.

We thank the Court for its time and consideration.

Respectfully submitted,

/s/ *Lesley A. Brovner*

Lesley A. Brovner
Madison A. Kucker
Mark G. Peters
PETERS BROVNER LLP
*Counsel for Safa Good, LLC*