

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**

STEVEN BANKS
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, NEW YORK 10007

**Eric Proshansky**
Assistant Corporation Counsel
212.356.2032
eproshan@law.nyc.gov

April 2, 2026

**By ECF**
Hon. Margaret M. Garnett
United States District Court
  Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** *The City of New York v. Puff Bar et al.,* 1:25-cv-*2850* (MMG)
***City's Response to Safa Goods Conference Request*** (*Dkt. No.* 80)

Dear Judge Garnett:

This office represents plaintiff the City of New York (the "City"), in responding to defendant Safa Goods, Inc.'s ("Safa Goods") request that the Court advise the parties on the meaning of the term "gross sales" as used in the PACT Act's penalty provision, 15 U.S.C. §377 (b)(1)(A)(ii). In construing 15 U.S.C. § 377, Safa Goods principally relies on the canon against absurd results. The sole absurdity here would be reliance on that canon, as explained below.

To start, Safa Goods misstyles its motion as a motion *in limine,* a motion which is intended to exclude pretrial evidence anticipated as prejudicial, principally to screen the jury from inadmissible or prejudicial evidence or narrow trial issues. *Brockhaus v. Gallego Basteri*, 2015 U.S. Dist. LEXIS 199146, at 10 (S.D.N.Y. Nov. 20, 2015) ("The purpose of a motion *in limine* is to allow the trial court to rule on the admissibility and relevance of certain anticipated evidence before that evidence is actually offered at trial."). "*In-limine*: (Of a motion or order) raised preliminarily, esp. because of an issue about the admissibility of evidence believed by the movant to be prejudicial." *Black's Law Dictionary* at 907 (10th ed. 2014). Safa Goods seeks no such relief, but instead asks the Court to issue a bare statutory construction. The Court should decline the request.

First, neither the import of 15 U.S.C. §377 (b)(1)(A)(ii) nor the meaning of "gross sales" will play any part at a trial, nor will a jury hear anything about the penalties faced by Safa Goods. The imposition and amount of penalties is a matter for the Court alone. *See Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir. 2001) ("the ultimate assessment of penalties is a discretionary matter for the district court"). "[T]he amount of the penalty to be assessed is a matter for the court to determine…" *U.S. v. Karns*, 1963 U.S. Dist. LEXIS 9972, at *4 (S.D.N.Y. Nov. 12, 1963); s*ee Tull v. United States*, 481 U.S. 412, 426-27 (1987) ("Since Congress itself may fix the civil penalties, it may delegate that determination to trial judges.").

Second, this is not a dispute over admissible evidence, it is a discovery dispute.  The City recently pressed for discovery of defendants' nationwide sales, consistent with (as shown below), the plain meaning of the term "gross sales" from which penalties would be calculated. Defendants responded that only sales into the jurisdiction making the PACT Act claim are relevant, and promising this motion as a means to bar discovery of sales into jurisdictions other than the City.  Safa Goods is not seeking to exclude evidence at trial, but is seeking a ruling to limit the scope of discovery; "[i]t is not the function of [the] Court, in assessing relevance for purposes of discovery, to decide issues of admissibility or resolve potentially dispositive disputes, because relevant information need not be admissible." *DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556, 573 (S.D.N.Y. 2024).  Federal Rule of Civil Procedure 26(b)(1) itself makes that clear: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Safa Goods has disguised an attempt to thwart the City's discovery as a motion *in limine.*

Even were the Court to indulge Safa Good's request,(in which case the City requests full briefing) Safa Goods's statutory construction it seeks is wrong.  The contention that a PACT Act penalty is limited only to sales made into an enforcing jurisdiction is inconsistent with principles that guide the determination of penalties.  "[I]n an enforcement action, civil or criminal, there is no requirement that the government prove injury, because the purpose of such actions is deterrence, not compensation." *New York v. UPS*, 942 F.3d 554, 597-98 (2d Cir. 2019) (quoting *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012).  A penalty premised on sales into jurisdictions other than the prosecuting jurisdiction falls easily within this principle—PACT Act violations by sales to jurisdictions other than New York City are penalized for reasons of deterrence, not compensation.

The section at issue, 15 U.S.C. §377 (b)(1)(A)(ii) provides for a penalty calculated as:

> (ii) For *any* violation, 2 percent of the gross sales of cigarettes … of the delivery seller during the 1-year period ending on the date of the violation.[1]

*Id*. (emphasis added) (hereafter, the "2% Penalty") Conventional principles of statutory construction mandate inclusion of all sales, nationwide, to calculate the 2% Penalty.  First, Safa Goods's construction requires the insertion of language that Congress did not use, as if the section were to read "2 percent of the gross sales of cigarettes … of the delivery seller *that are sold into the enforcing jurisdiction …*" Adding a term to a statute "from which it is conspicuously absent more closely resembles invent[ing] a statute rather than interpret[ing] one." *Hardt v. Reliance Standard Life Ins. Co*., 560 U.S. 242, 252 (2010); s*ee Fag Italia S.P.A. v. United States*, 291 F.3d 806, 818 (Fed. Cir. 2002) ("In effect, commerce's interpretation requires the addition of  statutory language that  Congress  did  not  include.  Commerce would have us rewrite [the] section …").

Second, an undefined term in a statute is understood in its common, ordinary meaning.  Multiple business treatises define "gross sales" to meani *all* sales by a business: "Very simply, gross sales are the *total amount* of your sales …" *https://www.salesforce.com/blog/gross-sales-vs-net-sales/;* "Gross sales are        the      *total*      sales       transactions       within      a       specific       period       for       a

---

[1] The PACT Act also imposes a per violation penalty of $5000 for the first and $10,000 for any subsequent violations. 15 U.S.C. §377 (b)(1)(A)(i). The PACT Act takes a robust view of penalties, providing that the greater of the alternative penalty provisions governs and that civil penalties may be added to criminal penalties, other  relief and unpaid taxes. 15 U.S.C. §377 (b)(2).

company."    *https://www.investopedia.com/terms/;*    *"Total* sales calculated by summing *all* sales at invoice values, ….";  *https://www.nasdaq.com/glossary/g/gross-sales*; *see also* 7 U.S.C. § 6802, Definitions ("(3) Gross sales price. The term *"gross sales price"* means the *total* amount of the transaction in a sale.") (all emphases added).  By plain language, a penalty calculated on the basis of gross sales includes "total" or "all" sales, even those to jurisdictions other than the City.

Third, Safa Goods's contention that only sales into the enforcing jurisdiction are considered for a penalty calculation thwarts the intended operation of the PACT Act.  In an enforcement action by State A against a State A delivery seller that ships e-cigarettes to State B, Safa Goods's construction would exclude all "non-A" sales from "gross sales" because the e-cigarettes were delivery sales into State A, the enforcing jurisdiction.  This diminishes PACT Act enforcement, contrary to a congressional statement of the PACT Act's "Purposes" as intended to (1) require remote sellers of cigarettes … to comply with the same laws that apply to law-abiding tobacco retailers; "(2) create strong disincentives to illegal smuggling of tobacco products; "(3) provide government enforcement officials with more effective enforcement tools; "(4) make it more difficult for cigarette … traffickers to engage in and profit from their illegal activities; "(5) increase collections of Federal, State, and local excise taxes on cigarettes…;" 15 U.S.C. § 375, Findings.  Safa's Goods's construction disincentivizes enforcement by a state against resident sellers by reducing the penalties recoverable, and incentivizes sellers to serve as suppliers to other states.

Fourth, the 2% Penalty  applies "*for <u>any</u>* violation."  *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) (explaining that "any" has "expansive meaning"; because "Congress did not add any language limiting the breadth of that word" the court could not impose a limit).  Safa Goods's construction imposes a limit on "any" violation by excluding non-City sales .

Safa Goods's appeal to the canon of absurd results, a narrow exception to the plain meaning rule permitting rare deviation from literal statutory language, disregards the high threshold required for such a label. An absurd result is not one that is surprising, anomalous, or contrary to good policy, but one that must be so gross as to shock the general moral or common sense. *Crooks v. Harrelson*, 282 U.S. 55 (1930), *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947 (4th Cir. 2025).  Safa Goods's "parade of horribles" — large penalties in a hypothetical suit by multiple jurisdictions — fabricates an "absurd result" that essentially could never occur because penalties are not mechanically applied, but guided judicial views of reasonableness.  "[W]hen Congress adopts legislation authorizing the award of civil penalties, it generally leaves to the courts the job of fleshing out federal common-law rules governing the maximum aggregate size of penalties."  *New York v. UPS*, 942 F.3d 554, 599-600 (2d Cir. 2019).  A technically permissible  penalty that is not a reasonable penalty is subject to adjustment by the court. Id. (reducing PACT Act penalties as unreasonable). As Judge Amon concluded in *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. LEXIS 47037, at *120 (E.D.N.Y. Mar. 29, 2013), "using the PACT Act calculations as a *starting point* for an award of civil penalties is appropriate and would not violate due process," because the court "will inform its determination of a civil penalty *up to* these amounts using traditional factors, including the good or bad faith of the defendants, the injury to the public, and the defendants' ability to pay."  Safa Goods is amply protected from a make-believe "absurd result" by the courts' discretion in setting penalties.

Respectfully submitted,

Eric Proshansky
Assistant Corporation Counsel

3