**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| PEOPLE OF THE STATE OF NEW YORK, | ) ) ) ) | |
| *Plaintiff,* | ) ) | No. 1:25-cv-01445-MMG |
| v. | ) ) | |
| PUFF BAR, *et al.*, | ) ) ) | |
| *Defendants.* | ) ) | |
| THE CITY OF NEW YORK, | ) ) ) | |
| *Plaintiff,* | ) ) | No. 1:25-cv-02850-MMG |
| v. | ) ) ) | |
| PUFF BAR, *et al.*, | ) ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANTS' BRIEF ON THE APPROPRIATE
INTERPRETATION OF 15 U.S.C. § 377(b)(1)(A)(ii)**

Defendants Ecto World LLC, Magellan Technology, Inc., Midwest Goods, Inc., 10 Days, Inc., Safa Goods LLC, and SV3 LLC, on behalf of all defendants, respectfully submit this brief to address the proper interpretation of the delivery seller civil penalty provision of the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. § 377(b)(1)(A)(ii).

Section 377(b)(1)(A)(ii) states: "(b) Civil penalties. (1) In general . . . whoever violates this Act shall be subject to a civil penalty in an amount not to exceed—(A) in the case of a delivery seller . . . (ii) for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation." The questions presented by section 377(b)(1)(A)(ii) are twofold. The State and City contend that the foregoing "gross sales" language encompasses all sales made by a defendant, wherever made, and that the State and City are each entitled to a separate 2% penalty for each violative delivery sale made into their respective jurisdiction, even where multiple delivery sales arise from the same course of conduct. Defendants submit that section 377(b)(1)(A)(ii) is properly read to limit "gross sales" to sales into the plaintiff jurisdiction and to permit only a single 2% penalty for an alleged continuing violation, measured by one relevant one-year period.

The State's and City's interpretation of section 377(b)(1)(A)(ii) would lead to patently irrational results wholly untethered to the degree of harm caused by Defendants' alleged violations. Plaintiffs' interpretation of "gross sales" would allow all fifty states and innumerable localities to each seek civil penalties of 2% of a defendant's combined national and international gross sales such that the civil penalties could readily exceed 100% of a defendant's gross revenue—even if the defendant had only a single violative delivery sale into New York. Such an interpretation defies common sense and is untenable. *SEC v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) ("It is, to be sure, well-established that "[a] statute should be interpreted in a way that avoids absurd results.'");

1

*Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 283 (2d Cir. 2005) (noting that an interpretation that "lead[s] to absurd results" is "forbidden by canons of construction") (abrogated in part on other grounds by *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)).

As explained below, the Constitution's Excessive Fines Clause, the Due Process Clause, the text and structure of the PACT Act itself, the alleged injuries of which the State and City complain and their corresponding "zones of interest," and the rule of lenity all weigh in favor of the Court (i) construing the term "gross sales" in section 377(b)(1)(A)(ii) to mean gross sales into the plaintiff jurisdiction and (ii) construing any 2% gross-sales penalty for an alleged continuing violation to be limited to a single penalty measured by one relevant one-year period, not repeated penalties based on each incidence of the same underlying course of conduct.

## ARGUMENT

**I.   General Principles Related to the Eighth Amendment's Excessive Fines Clause, Due Process, Standing, and the Rule of Lenity**

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const., amend VIII. A forfeiture violates the Excessive Fines Clause if it is "grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The Excessive Fines Clause applies to civil penalties that are punitive in nature as opposed to those that are merely remedial. *United States v. Viloski*, 814 F.3d 104, 109-11 (2d Cir. 2016).[1] If a fine is punitive in nature, a court then considers whether it is unconstitutionally excessive. *Id.* at 109. "The touchstone of the

---

[1] Even minimum statutory civil penalties are subject to the Excessive Fines Clause. *See, e.g.*, *United States ex rel. Bassan v. Omnicare, Inc.*, No. 15-cv-4179-CM, 2025 U.S. Dist. LEXIS 128455, *3-4, 7 (S.D.N.Y. July 7, 2025) (suggesting that had the Government pursued full statutory damages under the False Claims Act, the total resulting award of $26.9 billion would have violated the Excessive Fines Clause); *United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*, No. 3:19-cv-02486-N, 2025 U.S. Dist. LEXIS 34310 (N.D. Tex. Feb, 26, 2025); *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 715 F. Supp. 3d 1133, 1165 (D. Minn. 2024).

constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334. Among the non-exhaustive list of factors that district courts should consider when determining whether a civil penalty violates the Excessive Fines Clause is the nature of the harm caused by the defendant's conduct. *Viloski*, 814 F.3d at 110; *see also O'Diah v. TBTA-Triborough Bridge & Tunnel Auth.*, No. 19-cv-7586, 2021 U.S. Dist. LEXIS 117279, *17 (S.D.N.Y. June 23, 2021) (finding fines likely excessive where resulting harm was "minor").

Likewise, statutory penalties violate the Due Process Clause if they are "so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable." *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). In addressing the analogous context of jury awards of punitive damages, the Supreme Court recently observed that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree will satisfy due process," noted that a ratio of 4:1 "might be close to the line of constitutional impropriety" and concluded that when compensatory damages are substantial "then a lesser ratio, *perhaps only equal to compensatory damages*, can reach the outermost limit of the due process guarantee." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

To establish Article III standing, a plaintiff must (i) have suffered an injury in fact, (ii) that is "fairly . . . trace[able] to the challenged action of the defendant," and (iii) that will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). And "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "Only those plaintiffs have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court. . . . Article III grants federal courts the

power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (cleaned up). Further, to establish statutory standing, a plaintiff must also establish that the "interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Bennett v. Spear*, 520 U.S. 154, 163 (1997).

Finally, the rule of lenity provides that any "ambiguities concerning legislative intent in criminal statutes should be resolved in favor of the [defendant]." *United States v. Figueroa*, 165 F.3d 111, 119 (2d Cir. 1998). The rule of lenity applies not only in criminal cases, but also in civil suits when such suits are brought under a statute that has criminal penalties. *See e.g.*, *United States v. Santos*, 553 U.S. 507, 523 (2008) ("We have resolved an ambiguity in a tax statute in favor of the taxpayer in a civil case because the statute had criminal applications that triggered the rule of lenity.") (superseded by statute). In a recent case, Justices Gorsuch and Jackson concluded that the rule of lenity applied to a civil penalty provision under the Bank Secrecy Act because "statutes imposing penalties are to be 'construed strictly' against the government." *Bittner v. United States*, 598 U.S. 85, 101-02 (2023); *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 297 (2012) (indicating that the rule of lenity applies to "civil penalties"); *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178, 1182 n.5 (N.D. Cal. 2013) ("Although this is a civil case, the rule of lenity applies here because conduct that triggers civil penalties under the relevant provision of the CFAA would also be a criminal violation."). Here, 15 U.S.C. § 377(a)(1) provides for criminal penalties for knowing violations of the PACT Act's delivery sales requirements.

## II.     The PACT Act's Text and Structure

Title 15 U.S.C. § 376a requires delivery sellers of ENDS to comply with the state and local laws of the shipment's destination. Section 376a(a) states, "[w]ith respect to delivery sales into a

specific State and place [. . .] each delivery seller shall comply with" shipping and recordkeeping requirements and State and local laws generally applicable to the sales of tobacco products "as if the delivery sales occurred entirely within the specific State and place [. . .]." Section 376a(f) likewise provides that "a delivery sale shall be deemed to have occurred in the State and place where the buyer obtains personal possession" of the ENDS. And interstate sales, regardless of whether they are delivery sales "shall be deemed to have been made into the State, place, or locality in which such [ENDS products] are delivered." 15 U.S.C. § 375(10)(B) (emphasis added).[2]

States and local governments that levy taxes subject to 15 U.S.C. § 376a(a)(3) have statutory standing to bring a cause of action in district court to prevent or restrain violations of the Act, and to "obtain any other appropriate relief from any person for violations of this [Act], including civil penalties, money damages, and injunctive or other equitable relief." *See* 15 U.S.C. § 378(c)(1)(A). However, it does not follow from the mere fact that the State and City may[3] have statutory standing to pursue civil penalties under 15 U.S.C. § 377(b)(1)(A)(ii) that sales made outside of the relevant plaintiff's jurisdiction can serve as the basis for calculating those penalties, nor that multiple penalties may be recovered for a single, continuous course of violative conduct.

**III.    The Best Meaning of the PACT Act's Penalty Provision is that the Geographic Scope of "Gross Sales" is Limited to Shipments Into the Relevant Plaintiff's Jurisdiction.**

To properly construe section 377(b)(1)(A)(ii)'s reference to "gross sales," the Court must first consider the scope of the State's and City's claimed injuries. The PACT Act's enforcement

---

[2] In this respect, the PACT Act's language tracks with Uniform Commercial Code, which defines a "sale" as "the passing of title from the seller to the buyer for a price," U.C.C. § 2-106(1), and states that "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of goods" and "if the contract requires delivery at [the] destination, title passes on tender there." U.C.C. § 2-401(2)(b).

[3] For purposes of this brief, Defendants assume *arguendo*, without conceding, that both the State and the City "lev[y] a tax subject to [15 U.S.C. § 376a(a)(3)]." 15 U.S.C. § 378(c)(1)(A).

provision, section 378(c)(1)(A), provides a cause of action to state and local government to prevent or restrain violations of the PACT Act that occur within their borders. Indeed, all provisions of 15 U.S.C. §§ 375, *et seq*., are either directed at the jurisdiction of the shipment's destination or are otherwise silent. It follows that a governmental plaintiff's recovery is limited to 2% of the gross sales that occurred within the governmental plaintiff's borders.

"Congress is presumed to legislate against the background of the zone-of-interests limitation, which applies unless it is expressly negated." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (cleaned up). The PACT Act provides no such express negation. *See* 15 U.S.C. §§ 375, *et seq*. When Congress enacted the PACT Act, it directed businesses selling ENDS products to comply with the laws of the states and localities into which they direct shipments, and it provided those states and localities a cause of action to enforce and restrain violations of their laws. Not only have the State and City not suffered any injury as a result of sales made by Defendants into other jurisdictions, even if they could be construed to have statutory standing to sue as a result of those sales, they would lack a cognizable Article III injury as to those transactions. Indeed, it is a basic premise of due process that a state cannot punish defendants for conduct wholly outside its borders. *See e.g.*, *State Farm*, 538 U.S. at 421 ("A state cannot punish a defendant for conduct that may have been lawful where it occurred. . . . Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction."). It thus follows that the Court should not construe section 377(b)(1)(A)(ii) to establish as a basis for Plaintiffs' claimed remedy extraterritorial sales from which the State and City could not have possibly been injured.

The Excessive Fines Clause further bolsters this conclusion. While each defendant's circumstances will necessarily be unique, to illustrate the irrationality of the State's and City's

position, consider a delivery seller defendant that engages in a single violative sale to a customer in New York in the amount of $100, while in the year before that sale, all of the defendant's delivery sales were to customers outside the United States and totaled $999,900. Under Plaintiffs' theory, that defendant would be liable for a civil penalty of $20,000—an amount that fails to "bear some relationship to the gravity of the offense that [the civil penalty] is designed to punish." *Bajakajian*, 524 U.S. at 334. The best way to ensure that any civil penalty awarded under section 377(b)(1)(A)(ii) is congruent with the nature of the harm caused by the defendant's conduct, *Viloski*, 814 F.3d at 110, is to exclude non-jurisdictional sales from the calculation of "gross sales."

Undefined statutory terms "do—in fact must—have a single best meaning." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). In interpreting the best meaning of "gross sales" in section 377(b)(1)(A)(ii), the Court should "look to the common sense of the statute, to its purpose, [and] to the practical consequences of the suggested interpretations." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) (quoting *Johnson v. United States*, 123 F.3d 700, 703 (2d Cir. 1997)). The statute should be interpreted "in a way that avoids absurd results." *Rosenthal*, 650 F.3d at 162. But, in addition to the potential for absurd (and unconstitutional) results illustrated above, the possibility of multiple jurisdictions bringing competing PACT Act claims under the same theory further illustrates the practical risk of irrational and absurd results posed by the State's and City's interpretation. For example, both the State and the City's complaints premise their claims that Defendants sell to New York State- and City-based businesses that are not "lawfully operating" on the allegation that among the products Defendants have sold to such businesses are ENDS products that lack FDA marketing authorizations. *See*, *e.g.*, ECF No. 1 in Case No. 1:25-cv-01445 at ¶¶ 148-55; ECF No. 86 in Case No. 1:25-cv-01445 at 3, 24. ECF No. 1 in Case No. 1:25-cv-02850 at ¶¶ 132-39. Nothing would prevent each other State

7

and any other locality into which Defendants have sold such products from bringing an identical PACT Act claim and similarly seeking civil penalties of 2% of all gross sales—national and international. The civil penalties could thus quickly exceed 100% of a defendant's total gross sales.

Such a theory would also allow multiple claims to percentages of the same overlapping sales (as the State and City apparently seek here with respect to Defendants' gross sales into the City). The Second Circuit has already strongly indicated that allowing multiple recoveries for the same violative conduct constitutes an abuse of discretion. *See New York v. UPS*, 942 F.3d 554, 599-603 (2d Cir. 2019) (holding multiple $78 million civil penalty awards under the PACT Act and New York Public Health Law § 1399-*ll* excessive since both penalties were "for what was, in essence, one set of impermissible conduct" and reducing award to a single amount of $78 million).

The better reading—which best harmonizes section 377 with sections 376a and 378—is that the 2% of "gross sales" penalty for violations of a state's or locality's laws are limited to gross sales *into that state or locality*. It would make no sense that a state or locality could recover monetary penalties based on sales to other jurisdictions the laws of which the plaintiff jurisdiction cannot enforce. Finally, to the extent that the Court is not convinced that the text and structure of the PACT Act limit the geographic scope of "gross sales" to shipments into the plaintiff jurisdiction, and that the term is instead ambiguous, the rule of lenity requires this narrow construction of the term.

## IV. The PACT Act Permits a Single 2% of Gross Sales Penalty Tied to the Commencement of a Single Continuous Violation.

Plaintiffs take the extreme position that they may seek a separate 2% gross sales penalty for each and every individual alleged violative shipment measured by the one-year lookback period preceding that shipment. Not only would multiple sovereigns be able to seek overlapping civil penalties based on overlapping "gross sales," as discussed above, but the same sales would be able

8

to be used repeatedly in calculating overlapping civil penalty amounts. If a single defendant had even 50 violative delivery sales into a given jurisdiction within a one-year period, the aggregate exposure to that jurisdiction's claims would be 100% of the defendant's gross sales. Surely, Congress cannot have intended state and municipal governments to attain such a financial windfall or defendants to face penalties so disconnected from the alleged harm. Indeed, the City itself has previously acknowledged that a single one-year lookback is appropriate where a continuing violation involved multiple discrete transactions. *See City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-cv-03966, 2013 U.S. Dist. LEXIS 142127, *5-7 (E.D.N.Y. Oct. 1, 2013) (agreeing with the City's suggestion of a single 2% penalty based on a specified date even though the defaulting defendant's violative sales continued for a further six months thereafter).

By way of example, if a defendant engaged in three violative delivery sales of ENDS on January 15, 2023, January 30, 2023, and June 30, 2023, the same revenues generated during the period from July 1, 2022, through June 30, 2023 would be included three times over when calculating the "gross sales . . . of the delivery seller during the 1-year period ending on the date of the violation" for each of the three violative delivery sales. In *New York v. UPS*, the Second Circuit stressed that "[p]enalties cascading on a defendant from several different statutory regimes must be applied with great care when they result from one underlying set of bad actions." 942 F.3d at 600. Although the "cascading" penalties in that case involved two different statutory schemes, the same general principle applies here. Allowing double counting of overlapping "gross sales" to calculate per-shipment civil penalty amounts is excessive and would almost certainly violate the Excessive Fines Clause and/or the Due Process Clause.

Plaintiffs' "shipment stacking" interpretation would permit penalties untethered to the alleged injury and lead to absurd and untenable results. It would force defendants into immediate

9

bankruptcy and provide states and municipalities windfalls they cannot justify. Congress cannot have intended to authorize such extraordinary "relief." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 517 (2d Cir. 2017) (holding that the rule that statutes should be interpreted to avoid absurd results is appropriately applied where an interpretation is so extreme that it is "quite impossible that Congress could have intended the result"). This District has rejected a comparable statutory damages theory where the proposed interpretation would yield extreme and irrational results. *See Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 313, 317 (S.D.N.Y. 2011) (rejecting interpretation of statute that would have driven damages "into the trillions" and citing the "absurdity of this result" as a reason to reject that reading). The same logic applies here.

Section 377 should not be construed to authorize penalties of the magnitude Plaintiffs seek. The far more reasonable conclusion is that section 377 is properly read to permit, at most, a single 2% penalty for an alleged continuing violation, measured by the one-year period preceding the commencement of that alleged violation—not numerous overlapping 2% penalties within the same year based on the same alleged course of conduct.

## CONCLUSION

Accordingly, for the reasons discussed above, Defendants respectfully submit that the proper reading of Section 377's civil penalty provision is that the geographic scope of "gross sales" is limited to the jurisdiction into which the violative delivery sales are made, and that the PACT Act permits, at most, a single 2% penalty for an alleged continuing violation, measured by the one-year period preceding the commencement of that alleged violation.

Respectfully submitted,

THOMPSON HINE LLP

Dated: May 11, 2026                         By: /s/ Eric N. Heyer
                                            Eric N. Heyer
                                            Joseph A. Smith
                                            James C. Fraser
                                            Anna M. Stressenger
                                            Ryan D. Callinan
                                            Irvin Hernandez
                                            1919 M St., NW, Suite 700
                                            Washington, DC 20036
                                            T: 202-331-8800
                                            F: 202-331-8330
                                            eric.heyer@thompsonhine.com
                                            joe.smith@thompsonhine.com
                                            james.fraser@thompsonhine.com
                                            anna.stressenger@thompsonhine.com
                                            ryan.callinan@thompsonhine.com
                                            irvin.hernandez@thompsonhine.com

                                            *Counsel for Ecto World LLC d/b/a Demand
                                            Vape, Magellan Technology, Inc., Midwest
                                            Goods, Inc. d/b/a Midwest Distribution
                                            Illinois, 10 Days, Inc. d/b/a Pod Juice, Safa
                                            Goods LLC, and SV3 LLC*

                                            *And on behalf of all other Defendants.*

11