UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                        Plaintiff,

                -against-

PUFF BAR, EVO BRANDS, LLC, PVG2, LLC d/b/a PUFF
BAR, MIDWEST GOODS INC. d/b/a MIDWEST
DISTRIBUTION ILLINOIS, l0 DAYS, INC. d/b/a POD
JUICE, SAFA GOODS LLC, SV3, LLC d/b/a MI-ONE
BRANDS, MYLÉ VAPE INC., MVH I, INC.,

                        Defendants.

Case No. 25-cv-02850

------------------------------------------------------------------------- X

# THE CITY OF NEW YORK'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' INTERPRETATION OF THE PACT ACT PENALTY PROVISION

**STEVEN BANKS**
Corporation Counsel of the
 City of New York
*Attorney for Plaintiff the City of New York*
100 Church Street, Room 3-211
New York, New York 10007
(212) 356-2032

Of counsel:

Eric Proshansky
Aatif Iqbal
Elizabeth Slater

Assistant Corporation Counsels

Plaintiff the City of New York (the "City") respectfully submits this brief in opposition to Defendants' interpretation of the penalty provision of the PACT ACT.

## INTRODUCTION

Defendants seek to minimize their potential liability for obvious PACT Act violations by urging a view of the PACT Act's penalty provision, 15 U.S.C. § 377 that is at odds with the plain meaning of the statute, its legislative history, and its intended operation. Defendants read the PACT Act to use language that Congress did not supply and support that argument by means of constitutional arguments inapplicable to a statute that provides for the calculation of the *upper bounds* of a penalty amount. Defendants seek, in effect, to revert PACT Act penalties to the mere "slap on the wrist" that Congress expressly did away with in transforming the Jenkins Act into the PACT Act. The Court should not indulge Defendants' statutory rewriting where prior decisions have swiftly rejected the efforts of e-cigarette sellers to narrow the reach of the PACT Act by adding language that alters the plain meaning of the words Congress used.

## ARGUMENT

### I.  THE COURT SHOULD APPLY THE PLAIN MEANING OF "GROSS SALES"

Statutory interpretation "begin[s] with the statute's plain meaning, if it has one." *United States v. Bulloch*, 165 F.4th 676, 683 (2d Cir. 2026) (cleaned up). "In looking at a statute's plain meaning, we also must consider the context in which the statutory terms are used, as we do not construe statutory phrases in isolation; we read statutes as a whole. If the statutory language is unambiguous, the inquiry ends there." *Id.* (quoting *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022)). The meaning of the term "gross sales" as ordinarily used is clear—gross sales are "all sales national and international," *not* "sales into the plaintiff jurisdiction," as Defendants argue. *See Dkt. No.* 99 at 1. This reading aligns with the express purpose of the PACT

Act—to disincentivize the illegal trafficking of tobacco products by boosting penalty amounts—which the legislative history further elucidates.

### A.    The Ordinary Meaning of "Gross Sales" Is Clear

Any "delivery seller" violating the PACT Act:

> shall be subject to a civil penalty in an amount *not to exceed* . . . the greater of . . . (i) $5,000 in the case of the first violation, or $10,000 for any other violation; or (ii) for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation.[1]

15 U.S.C. § 377(b)(1)(A) (emphasis added). The statute does not define "gross sales," as urged by Defendants, to be "2 percent of the gross sales *that occurred within the governmental plaintiff's borders*." *Dkt. No*. 99 at 6 (emphasis added). Indeed, the statute provides no definition of "gross sales" at all. "Where Congress did not define certain terms . . . we 'presumptively give those terms their ordinary meaning.'" *Bulloch*, 165 F.4th at 683 (quoting *EPA v. Calumet Shreveport Refin., L.L.C.*, 605 U.S. 627, 638 (2025)); *see also United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

Tellingly, Defendants skip over the textbook first step of statutory interpretation by failing to offer a definition or ordinary use of "gross sales" to support their interpretation. But the ordinary meaning of "gross sales" is well established: "gross sales" means "all sales" without limitation. *Dkt. No.* 101 at 3 (citing *Black's Law Dictionary* (12th ed. 2024)). The absence of any ambiguity in the meaning of "gross sales" counsels against reading new limiting terms into the statute. To do so would "more closely resemble[] invent[ing] a statute rather than interpret[ing] one." *Hardt v.*

---

[1] The PACT Act defines "cigarette" to include "an electronic nicotine delivery system." 15 U.S.C. § 375(2)(A)(ii)(II).

2

*Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010); *Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 55-56 (2025) ("[E]ven supposing [petitioner's] . . . theory were a textually permissible way to understand the statute, we do not usually pick a conceivable-but-convoluted interpretation over the ordinary one.").

Other courts in this district have declined to endorse narrowed interpretations of unambiguous terms in the PACT Act put forth by distributors of flavored vapes, including Demand Vape. In *City of New York v. Magellan Tech., In*c., 735 F. Supp. 3d 312 (S.D.N.Y. 2024), the Court interpreted 15 U.S.C. § 378(c)(1)(A), which allows "a local government . . . that levies" a tax applicable to sales of cigarettes and smokeless tobacco "to bring an action . . . to prevent and restrain violations of this chapter." Demand Vape argued there that only jurisdictions applying an excise tax specifically on e-cigarettes—not on traditional cigarettes alone—had statutory standing to bring an action under the statute. The court disagreed, holding that "[t]here is no limiting language requiring the violation of the chapter to be against the same type of cigarette as the type of tax levied." *Id.* at 321; *accord City of New York v. Enviromd Grp. LLC*, No. 24-5161, 2025 U.S. Dist. LEXIS 133942, *17-18 (S.D.N.Y. July 14, 2025). The court in *Magellan* also disagreed with Demand Vape that "lawfully operating" in 15 U.S.C. § 375(5) means "licensed," holding that "'lawfully operating' means compliance with laws under the plain meaning of the statute." *Id.* at 324; *accord Enviromd*, 2025 U.S. Dist. LEXIS 133942, at *24. Like the defendants in *Magellan* and *Enviromd*, Defendants here do not show any ambiguity in the language of the PACT Act.

The absence of ambiguity in the term "gross sales" forecloses Defendants' argument that the "rule of lenity" mandates a narrower reading of the statute. *Dkt. No. 99* at 4. The Supreme Court has squarely held that "the touchstone of the rule of lenity is statutory ambiguity." *Burgess v. United States*, 553 U.S. 124, 135 (2008). Here, as in *Burgess*, "there is no ambiguity for the rule

of lenity to resolve." *Id*. at 136. Defendants have not even proposed an alternative meaning of gross sales that could create ambiguity. Not only is the rule of lenity inapplicable, but the cases cited by Defendants do not even support its application. For example, *United States v. Figueroa* held that the defendant's "reliance on the rule of lenity is . . . misplaced" because "the rule is inapplicable unless after a court has seized on everything from which aid can be derived, it is still left with an ambiguity." 165 F.3d 111, 119 (2d Cir. 1998) (cleaned up). For these same reasons, Defendants' rule of lenity argument was rejected in *Magellan*. 735 F. Supp. 3d at 324.

B.    **The Context, Structure, and Legislative History of the PACT Act Support Applying the Plain Meaning of "Gross Sales"**

Defendants offer the stunning *non-sequitur* that because "all provisions of 15 U.S.C. §§ 375 *et seq.*, are either directed at the jurisdiction of the shipment's destination *or otherwise silent*," it "follows that a governmental plaintiff's recovery is limited to 2% of the gross sales that occurred within the governmental plaintiff's borders." *Dkt. No*. 99 at 5-6 (emphasis added). Defendants nowhere explain how the "broader context and structure" of the PACT Act supports departing from the plain meaning of "gross sales" or why a statute's "silence" is a license to add language. The references to the plaintiff's jurisdiction in particular PACT Act sections have the specific purpose described in the legislative history, as explained below, that has nothing to do with penalty calculations.

Defendants seek support for the above position from 15 U.S.C. §§ 376a(a)(3), 376a(f), and 375(10)(B)—PACT Act provisions specifying the place where a delivery sale is "deemed" to have been delivered—to argue that penalties must be measured only by "gross sales" into the government plaintiff's jurisdiction. *Dkt. No. 99* at 4-5. Defendants defeat their own argument by recognizing that *certain sections* of the PACT Act are "directed at" the jurisdiction into which a delivery is made, while others are "*otherwise silent*." Significantly, the penalty provision at issue

4

here, § 377(b)(1)(A)(ii), is one of those that is "silent" in referring to a particular jurisdiction: "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 104 S. Ct. 296 (1983); *Nev. Resort Ass'n Int'l All. of Theatrical Stage Emps. v. JB Viva Vegas, LP*, 163 F.4th 1240, 1247-48 (9th Cir. 2026) (limiting language in one part of statute, and the absence of such language in another, is evidence of Congress's expressed intent not to impose any limitation).

The sections Defendants point to as referencing a plaintiff jurisdiction have the specific purpose of deeming the delivery sale to have occurred at the place of delivery because of congressional concern that "the sale of illegal cigarettes and smokeless tobacco over the Internet, and through mail, fax, or phone orders" allowed remote sellers operating outside a receiving jurisdiction to avoid the laws of that jurisdiction. *See Pub. L. No. 111-154 § 1(b)(4)*. Accordingly, Congress enacted §§ 376a(a)(3), 376a(f), and 375(10)(B) to "deem" the laws existing in the place of delivery to be equally binding on an out-of-jurisdiction seller as on a seller located in the place of delivery, thereby eliminating the advantage of a seller who might reside in a place imposing lower cigarette taxes or lower age restrictions. The sections cited by Defendants reference the jurisdiction into which a delivery is made as a means of identifying the laws with which remote sellers must comply, thereby creating the level playing field— by requiring "remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers," *Pub. L. No. 111-154 § 1(c)(1)(1)*—which is the central purpose of the PACT Act. Those sections serve that purpose but have nothing to do with specifying the geography of the "gross sales" considered in determining penalties.

5

The PACT Act's prohibitions on common carriers that deliver to entities on the "Non-Compliant List" (the "NCL")is instructive. *See* 15 U.S.C. § 376a (e)(2) (prohibiting the "delivery of any package for any person whose name and address are on the [NCL]").[2] Violation of that provision is also penalized by 15 U.S.C. § 377(b):

> (1) whoever violates this Act shall be subject to a civil penalty in an amount not to exceed … (B) in the case of a common carrier or other delivery service, $2,500 in the case of a first violation, or $5,000 for any violation within 1 year of a prior violation.

*Id*. § 377(b)(1)(B). As with § 377(b)(1)(A), this language does not limit penalty calculations to deliveries into a plaintiff jurisdiction, but is another "otherwise silent" provision. The penalty for a common carrier delivering for an NCL listee does not even reference the place of delivery —the violation is premised solely on the identity of the shipper, not the place of delivery. Penalties are imposed without reference to the place of delivery but instead based on the delivery seller's status. That common carrier penalty structure thoroughly rebuts Defendants' argument that penalties are to be calculated solely on the basis of injuries to the plaintiff jurisdiction (discussed *infra* at 8–10). A violative delivery could consist entirely of compliant cigarettes; the violation consists of a "delivery of any package for any person whose name and address are on the list." 15 U.S.C. § 376a (e)(2). So sections 377(a) and (b) operate in the same fashion: by measuring the penalties imposed on violators based on factors other than injury to the plaintiff, providing the enforcement teeth sought by Congress.

---

[2] Delivery sellers can be placed on the NCL for failure to register as an e-cigarette delivery seller, even if the sales themselves are PACT Act compliant.

## II.    DEFENDANTS MISCONSTRUE 15 § U.S.C. 377(b) AS PROVIDING A MANDATORY PENALTY AMOUNT

Defendants argue that the City's interpretation "would lead to patently irrational results wholly untethered to the degree of harm cause by Defendants' alleged violations.." *Dkt. No.* 99 at 1. Given the express language specifying penalties "not to exceed" a specified amount, and black letter law governing the discretionary setting of penalties, it is Defendants' argument that is "patently irrational."

First, the 2% figure is *not* a mandatory penalty amount. Rather, as with the "per violation" penalty, the 2% figure merely establishes *the upper limit* that may be imposed by the Court. The provision expressly states that a delivery seller who violates the PACT Act "shall be subject to a civil penalty in an amount *not to exceed*" the greater of the per violation fines or 2% of gross sales during the one-year lookback period. 15 U.S.C. § 377(b)(1)(A) (emphasis added). Section 377 does not provide a set-in-stone penalty, but "caps" the penalty amount. *UPS,* 942 F.3d at 599; *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-3966, 2013 U.S. Dist. LEXIS 142127, at \*8 (E.D.N.Y. Sep. 30, 2013) (using 2% of gross sales as the "starting point" for PACT Act civil penalties, to be modified by the "traditional factors" considered).

Second, the Court has discretion within the range established by § 377(b)(1)(A) to impose a penalty that both accords with constitutional limits and serves as a meaningful deterrent. "In general, civil penalties are designed to punish culpable individuals, deter future violations, and prevent the conduct's recurrence," with "[d]istrict courts hav[ing] discretion in fashioning appropriate relief in civil enforcement actions to achieve these goals." *UPS*, 942 F.3d at 599 (citing *Friends of the Earth, Inc., v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000)). Congress generally "leaves to the courts the job of fleshing out federal common-law rules governing the maximum aggregate size of penalties and punitive damages awards," which are

7

"typically guided by a number of factors, including the good or bad faith of the defendants, the injury to the public, and the defendant's ability to pay." *Id.* at 599–600 (citing *Advance Pharmaceutical, Inc. v. United States*, 391 F.3d 377, 399 (2d Cir. 2004)). Defendants' parade of horrors featuring supposed unconstitutionally large penalties (*Dkt. No.* 99 at 1-3) is premised entirely on speculative hypotheticals, to be addressed only if some court, somewhere, were to impose an outsize penalty. Defendants have no facial challenge here, but instead an as-applied one, in the future, if a court were to abuse its discretion. *See, e.g.*, *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 304 (1981) (challenge to statutory penalty before assessment or collection was premature); *Farina v. Metro. Transportation Auth.,* 409 F. Supp. 3d 173, 195 (S.D.N.Y. 2019) ("Challenges under the Excessive Fines Clause are ... generally not ripe until the actual, or impending, imposition of the challenged fine.") (cleaned up).

Finally, because the ultimate penalty award is discretionary, Defendants' concern that the statutory one-year look back period for each violation allows for "overlapping civil penalties based on overlapping 'gross sales'" is unwarranted. *Dkt. No.* 99 at 8-9. Judicial discretion negates the need to read the statute as stating anything other than its plain meaning. In any event, the City has agreed that, in this case, "for *each year* of violations the 2% penalty should be assessed on the basis of the gross sales in that year," regardless of the number of violations. *Dkt. No.* 101 at 9 n.5.

III.   **DEFENDANTS CONFUSE STANDING TO ENFORCE A CAUSE OF ACTION WITH THE METHODOLOGY FOR CALCULATING PENALTIES**

Defendants repeatedly state that because the City does not have Article III standing as to out-of-state sales, it cannot recover for those sales. *Dkt. No.*  99 at 3, 6 ("Not only have the State and City not suffered any injury as a result of sales made by Defendants into other jurisdictions, even if they could be construed to have statutory standing, they would lack a cognizable Article III injury *as to those transactions*.") (emphasis added). Defendants have confused standing to sue

8

with a method for calculating a penalty award in circumstances where the City already has Article III standing, evidenced in part by Defendants' failure to mount an Article III challenge.

Article III standing simply requires a "case or controversy" between the parties. To recover for PACT Act violations, this requires an enforcing jurisdiction to prove injury from violative delivery sales. "'The . . . injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *City of N.Y. v. Milhelm Attea & Bros.*, No. 06-3620, 2012 U.S. Dist. LEXIS 116533, at *40-41 (E.D.N.Y. Aug. 17, 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)). Defendants did not challenge that the City has shown that. Once Article III standing is met, the PACT Act provides a formula to calculate the maximum allowable penalty for those violations. The City is not seeking *damages* from out-of-state sales; it is simply using those sales to compute a penalty for established Article III-complaint violations.[3] Doing so is entirely consistent with traditional principles determinative of penalties: "the injury to the public, and the defendant's ability to pay." *UPS*, 942 F.3d at 599. Defendants' nationwide gross sales are surely relevant to any determination of Defendants' ability to pay.Courts have upheld using gross sales as a means of computation without requiring a plaintiff to prove that each underlying sale contributed to its injury. This is true in cases involving the PACT Act, *see Dkt. No*. 101 at 7-8 (discussing cases[4]), as well as those involving other federal statutes. *See McGregor v. Chierico*, 206 F.3d 1378, 1388-1389 (11th Cir. 2000) (in FTC action involving material misrepresentations, damages based on defendant's gross sales upheld even though

---

[3] One advantage of a penalty based on "gross sales" is that they can be "estimated using a variety of other documents." *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, No. 08-03966, 2013 U.S. Dist. LEXIS 142127, at *8 (E.D.N.Y. Sep. 30, 2013).

[4] *Milhelm Attea* was under the CCTA; it analyzed the PACT Act in detail because "its purposes closely mirror those of the CCTA" and its "enforcement provisions" are "very similar to the CCTA's." *City of N.Y. v. Milhelm Attea & Bros.*, No. 06-3620, 2012 U.S. Dist. LEXIS 116533, at *90-91 (E.D.N.Y. Aug. 17, 2012); *accord City of N.Y. v. Golden Feather Smoke Shop, Inc.*, No. 08-03966, 2013 U.S. Dist. LEXIS 142127 (E.D.N.Y. Sep. 30, 2013).

government did not prove each sale was made because of a misrepresentation); *FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1206 (10th Cir. 2005) ("[G]ross receipts from consumer sales [is] a proper beginning point for the calculation of sanctions in [an FTC Act] case."); *see also Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 359 (E.D.N.Y. 2010) (plaintiff in Lanham Act case seeking disgorgement of defendant's profits need only prove "defendant's sales", not "'sales due to the false advertising' or 'sales due to the violative conduct'").

Not a single case Defendants cite stands for the proposition that a plaintiff must have Article III standing as to each individual transaction playing any role in calculating a penalty. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021), *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014), and *Lujan v. Defenders of Wildlife*, 504 U.S. 544, 560 (1992) simply hold that a plaintiff must have a redressable injury. *Transunion*, *Lexmark* and *Lujan* do not discuss damages or penalties once a plaintiff proves its injury. Defendants did not move to dismiss for lack of Article III standing; accordingly, they acknowledge that the City has suffered concrete harm and has standing to sue for PACT Act violations.[5]

Defendants' reliance on *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) is misplaced because instead of a statutory cap subject to discretionary adjustment, the case addressed a jury award of punitive damages *already awarded* (not hypothetical, as here).[6] *State Farm* in any event states that "[l]awful out-of-state conduct may be probative when it demonstrates

---

[5] Moreover, "a sanction that 'deter[s] future violations' and 'prevents [the conduct's] recurrence provides a form of redress.'" *City of N.Y. v. Milhelm Attea & Bros.*, No. 06-3620, 2012 U.S. Dist. LEXIS 116533, at *48 (E.D.N.Y. Aug. 17, 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 186 (2000)).

[6] In any case, "to the extent that . . . the Supreme Court's punitive damages doctrines are applicable here, due process will not be offended by the imposition of civil penalties . . . so long as the Court ensures that they are commensurate with 'the degree of [the defendants'] reprehensibility,' reflect a reasonable relationship to 'the harm or potential harm' caused by the defendants, and are proportional to 'the civil penalties authorized or imposed in comparable cases.'" *City of N.Y. v. Milhelm Attea & Bros.*, No. 06-3620, 2012 U.S. Dist. LEXIS 116533, at *88 (E.D.N.Y. Aug. 17, 2012) (quoting *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

the deliberateness and culpability of the defendant's action in the State where it is tortious" as long as "that conduct must have a nexus to the specific harm suffered by the plaintiff." *Id.* at 422. That standard will be easily satisfied when Defendants finally produce their e-cigarette sales to other states, which we predict will show Defendants' out-of-state customers  turn-around and sell  e-cigarettes purchased from Defendants into the City.

**CONCLUSION**

For the foregoing reasons, the Court should hold that the term "gross sales" in 15 U.S.C. § 377(b)(1)(A)(ii) refers to a delivery seller's nationwide gross sales.

Dated: New York, New York
May 27, 2026

**STEVEN BANKS**
Corporation Counsel of the
  City of New York
*Attorneys for Plaintiff The City of New York*
100 Church Street, Rm. 3-211
New York, New York 10007
(212) 356-2032

By: _____
    Eric Proshansky
    Aatif Iqbal
    Elizabeth Slater

    Assistant Corporation Counsels

11