**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| CITY OF NEW YORK, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 1:25-cv-02850-MMG |
| | ) | |
| v. | ) | |
| | ) | |
| PUFF BAR, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS' RESPONSIVE BRIEF ON THE**
**APPROPRIATE INTERPRETATION OF 15 U.S.C. § 377(b)(1)(A)(ii)**

Defendants 10 Days, Inc., Midwest Goods, Inc., Safa Goods LLC, and SV3 LLC, on behalf of all defendants, respectfully submit this responsive brief to the City's brief (ECF No. 101) on the appropriate interpretation of 15 U.S.C. § 377(b)(1)(A)(ii). The City asks the Court to adopt an expansive reading of "gross sales" that would permit penalties based on nationwide sales, untethered to the jurisdiction in which the alleged violative delivery sales occurred. That interpretation is inconsistent with the statute's text, structure, constitutional limits, and common-sense principles of proportionality. For the reasons set forth below, "gross sales" should be limited to sales into the plaintiff's jurisdiction, and section 377(b)(1)(A)(ii) should be construed to permit, as most, a single 2% penalty for an alleged continuing violation, measured by one relevant one-year period.

## ARGUMENT

**I.      The Plain Meaning of the PACT Act's Statutory Text Limits the Geographic Scope of the City's Enforcement Powers to Its Own Jurisdiction.**

The PACT Act prescribes civil penalties in an amount not to exceed, "in the case of a delivery seller," the greater of "$5,000 in the case of the first violation, or $10,000 for any other violation" or "for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation." 15 U.S.C. § 377(b)(1)(A)(i)-(ii). The City claims that "Defendants interpret '2 percent of the gross sales of cigarettes' as if it says '2 percent of the gross sales of cigarettes… *sold into the enforcing jurisdiction*'" and that this "addition of language . . . ignores the plain meaning of 'gross sales'" in the PACT Act which, according to the City, includes all sales and shipments to customers located *outside of* the City. ECF No. 101 at 2. The City is mistaken. Defendants do not need to add language to section 377(b)(1)(A)(ii) to understand its meaning. One need only look at the statutory

1

provisions immediately preceding and following section 377(b)(1)(A)(ii) to understand its geographic scope.

The introductory phrase, "in the case of a delivery seller," relates section 377(b)(1)(A) to the statutory provision directly preceding it—15 U.S.C. § 376a—which sets forth the requirements for delivery sellers under the PACT Act. Specifically, 15 U.S.C. § 376a requires, "[w]ith respect to delivery sales into a specific State and place," that delivery sellers comply with the PACT Act's shipping, labeling, recordkeeping, and age verification requirements, as well as "all State, local tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place[.]" 15 U.S.C. § 376a(a)(3) (emphasis added). The PACT Act further provides that "a delivery sale shall be deemed to have occurred in the State and place where the buyer obtains personal possession" of the ENDS, 15 U.S.C. § 376a(f), and that interstate sales "shall be deemed to have been made into the State, place, or locality in which such [ENDS products] are delivered." 15 U.S.C. § 375(10)(B).

Courts have an "obligation to interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an [sic] harmonious whole." *Rivera-Perez v. Stover*, 171 F.4th 196, 208 (2d Cir. 2026). Read together, the plain text of section 376a regulates delivery sales into a specific state and place, and section 378 provides those specific states and places a cause of action to enforce the regulated activity in their specific jurisdiction. It follows that section 377 prescribes the available penalties for violations within those same specific states and places. This is the most logical and coherent reading of the meaning of section 377(b)(1)(A)(i)-(ii) given its statutory context. *See e.g.*, *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470-71 (2d Cir. 2018) ("The meaning of a statute can be understood 'in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another.'") (quoting *Auburn*

2

*Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002)); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) ("In examining a particular provision of a statute, it is important to interpret it in the context of the full statutory scheme.").

The City's statutory interpretation falters at the first step because it fails to consider the statutory scheme within which section 377(b)(1)(A)(i)-(ii) operates. Indeed, the City's brief makes no mention of section 376a and only mentions section 378 once for a different point. As a result, the City reads section 377(b)(1)(A)(i)-(ii) in isolation and advances a position that is inconsistent with the surrounding statutory text. "Statutory provisions are not written in isolation and do not operate in isolation, so we cannot read them in isolation." *Mass Dep't of Revenue v. Shek (In re Shek)*, 947 F.3d 770, 777 (11th Cir. 2020). "The plain meaning of a statutory provision derives not only from the 'particular statutory language at issue,' but also 'the language and design of the statute as a whole.'" *Id*. at 777 (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). The absence of an express geographic limitation in section 377(b)(1)(A)(ii) simply reflects that Congress wrote the PACT Act *for* the federal government, which needs no such limitation because its jurisdiction is already nationwide. A locality, by contrast, has limits to its enforcement power commensurate with the limits to its sovereignty, and New York City cannot shed those limits merely by invoking a federal statute. Reading section 377(b)(1)(A)(i)-(ii) consistently with the surrounding statutory text, the 2% gross sales penalty available to states and localities enforcing violations of section 376a is limited to 2% of a defendant's gross sales within the enforcing jurisdiction.

## II.     District Court Cases Applying the PACT Act Penalty Calculation to Sales on Native American Reservations Do Not Contradict Defendants' Geographic Scope Argument.

The two cases the City cites for support for its nationwide calculation of 2% gross sales—*City of New York v. Milhelm Attea & Bros.* and *City of New York v. Golden Feather Smoke Shop,*

*Inc.*—do not alter Defendants' position. No. 06-cv-3620 (CBA), 2012 U.S. Dist. LEXIS 116533 (E.D.N.Y. Aug. 17 2012); No. 08-cv-03966 (CBA) (JMA), 2013 U.S. Dist. LEXIS 142127 (E.D.N.Y. Sept. 30, 2013). Both cases involved the sale of unstamped cigarettes in New York and Native American reservations therein in a manner that circumvented New York's cigarette stamping tax. Neither case involved the calculation of penalties from nationwide sales.

Through former New York Tax Law § 471, New York imposed a tax on all cigarettes possessed for sale or use in New York State, except for those cigarettes that New York lacked authority to tax, such as cigarettes sold to members of Native American tribes for their own consumption. *See Milhelm*, 2012 U.S. Dist. LEXIS 116533 at *4-6. On-reservation cigarette sales to persons other than Native Americans, however, were subject to state taxation. *Id*. at *6. The tax law provided that stamping agents shall be liable for the collection and payment of tax on cigarettes. *Id*. at *5. The defendants in *Milhelm* were licensed New York stamping agents that sold untaxed cigarettes to retailers on Native American reservations. The City established standing under the tax law and the Contraband Cigarette Trafficking Act ("CCTA") to bring the action because the vast majority, if not all, of the unstamped cigarettes were resold to non-Native Americans. Because the CCTA did not specify a penalty, the court considered the PACT Act penalty provision as a "guidepost." *Id*. at *89. Because this was a summary judgment motion on liability, the court did not decide the appropriate penalty amount. However, applying section 337(b)(1)(ii) of the PACT Act, the City argued that the court should impose a penalty of "up to 2% of each defendant's gross sales of unstamped cigarettes to Native American reservations." *Id*. at *93. The City did not seek 2% of each defendant's gross sales outside the reservations, let alone outside New York. The City's position in *Milhelm* was, therefore, consistent with the common-

4

sense reading Defendants advance here: the relevant "gross sales" are the sales tied to the jurisdictional and statutory violation being enforced, not a defendant's gross sales everywhere.

For its part, *Golden Feather* is instructive on the separate question (further addressed below) of whether numerous alleged violations arising from the same course of conduct should be treated as separate penalty-triggering events. Although *Golden Feather* involved claims under the CCTA and New York law, the City urged the Court to use the PACT Act civil-penalty provision as a guidepost because the CCTA did not specify a penalty amount. In doing so, the City argued that applying the PACT Act penalty provision on a per-violation basis would result in an "astronomical maximum penalty," and proposed instead that section 377(b)(1)(A)(ii) be applied "as if defendants each committed a single, continuing violation," with the maximum penalty equal to 2% of gross sales for the year preceding a chosen violation date. Pl.'s Mem. of Law in Supp. Of Summ. J. & Damages at 56, *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-cv-03966 (CBA) (JMA), ECF No. 424-1 (E.D.N.Y. Aug. 6, 2012). The court agreed that, given the "enormous number" of individual violations, a per-violation measure would set an "unduly high" starting point and instead used a single 2% gross-sales measure for the year preceding the chosen violation date. 2013 U.S. Dist. LEXIS 142127, at *6.

### III.    The PACT Act Limits State and Local Government Enforcement Power to Their Own Jurisdictions.

The City takes the untenable position that the PACT Act has deputized it and every other state and local government to enforce against alleged violations wherever they occur, without regard to their connection to the forum state or locality. The City further contends that penalties may be calculated from nationwide sales, including sales that were lawful where they occurred. ECF No. 101 at 6-7. To arrive at this conclusion, the City makes unsupported leaps and ignores the plain language of the PACT Act's delivery seller, penalty, and enforcement provisions, as well

as basic principles of Article III standing, statutory standing, and due process. *See* 15 U.S.C. §§ 376a, 377, 378. The City's assertion that "[t]he PACT Act has nationwide reach—violations are violations no matter where they occur" is unremarkable; Defendants do not contend that a federal statute lacks nationwide application. *See* ECF 101 at 2. The issue is whether the PACT Act authorizes a state or local government to enforce against alleged violations with no connection to its own jurisdiction, and then calculate penalties based on nationwide sales, including sales that were lawful where they occurred. It does not.

The City's further assertion that "Defendants nowhere provide a basis for immunizing some violations on the basis of location" also misses the mark. Defendants do not seek to "immunize" any violations. Rather, the plain text and structure of the PACT Act limit state and local enforcement authority to violative delivery sales where the shipment is received in the enforcing jurisdiction; the Act does not grant states and localities extraterritorial enforcement power. Nor could it. "States cannot punish a defendant for conduct that may have been lawful where it occurred." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003). "Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." *Id*. "Any proper adjudication that occurred outside [the state] to other persons would require their inclusion, and, to those parties, the [state] courts, in the usual case, would need to apply the laws of their relevant jurisdiction." *Id*.

This is why Congress wrote section 378(c)(1)(A) the way it did. This provision gives states and local governments that levy tax subject to section 376a(a)(3) standing to prevent and restrain delivery sellers from violating their state and local laws. "The PACT Act was not a demand that New York become the cigarette-tax enforcer for the entire United States." *New York v. UPS*, 942

F.3d 554, 580 (2d Cir. 2019). Even Congress does not have that legislative power. *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005) ("Statutes do not abdicate the standing requirements of the Constitution.").

Indeed, standing requirements illustrate the error in the City's hypothetical suggesting that a delivery seller located in State A who makes no delivery sales in State A, but makes delivery sales into twenty-five other states, should be subject to punishment from State A. *See* ECF No. 101 at 6. Because State A (i) suffers no concrete and particularized injury; and (ii) its interests are not within the zone of interests that the PACT Act's delivery seller requirements were intended to protect, State A does not, and cannot, have the power to seek civil penalties for those sales under section § 377(b)(1)(A). The City's hypothetical also assumes that State A and the twenty-five other states have identical laws for delivery sellers, whether they be tax laws, licensing requirements, or otherwise. In reality, each state (and in some instances, a local government) imposes its own legal requirements pertaining to the taxation and licensing of ENDS products, including in some cases, no requirements at all. This is all the more reason why the proper reading of section 378(c)(1)(A) is that it only grants states and local governments standing to enforce against violators of their own laws within their own borders. The City's alarm that "[i]n such a scenario, effective enforcement of the PACT Act might require each of those 25 states to sue separately" is misplaced; that is the intended and lawful reading of the statute.

Limiting penalties under section 377(b)(1)(A)(ii) to sales into the plaintiff's jurisdiction also limits (even if it does not eliminate entirely) the potential for duplicative damage awards to

multiple sovereigns, such as those that both the City here and the State in case number 25-cv-01445 seek arising out of the same allegedly violative delivery sales to customers located in the City of New York. In the City's hypothetical, under the City's view, if the delivery seller located in State A violates a delivery sale ban in State B, both States could sue the defendant for the same conduct in separate courts and the defendant would potentially be liable for duplicative penalties for the same violative delivery sale. However, courts are wary of situations that would result in duplicative awards for the same underlying conduct or against the same funding source. *See American Ad. Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1059-60 (9th Cir. 1999) (in antitrust litigation, cautioning that "'[p]otential plaintiffs at each level in the distribution chain would be in a position to assert conflicting claims to a common fund [. . .] thereby creating the danger of multiple liability for the fund and prejudice to the absent plaintiffs'") (quoting *Associated General Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 544 (1983)) (alterations added). "It is, further, generally accepted that the rule against double recovery extends across jurisdictional bounds." *Restivo v. Hessmann*, 846 F.3d 547, 594-95 (2d Cir. 2017). Defendants' interpretation minimizes this risk of liability for duplicative penalties to different jurisdictions arising out of the same transaction.

**IV.    Assessing Multiple Penalties for Continuous Violations Arising From the Same Underlying Conduct is Inconsistent with the Text and Purposes of the PACT Act and the Federal Sentencing Guidelines.**

In addition to arguing that penalties may be calculated based on 2% of Defendants' nationwide gross sales, the City also contends that the 2% penalty may be assessed separately for each year in which a violation allegedly occurred, beginning with the year the action was filed. ECF No. 101 at 9 n.5. Specifically, the City applies a multi-calendar year calculation theory: "In the present case, Defendants are alleged to have committed continuous violations each year until

the date this suit was filed, which was April 7, 2025. Accordingly, for *each year* of violations the 2% penalty should be assessed on the basis of the gross sales in that year, except that the lookback for 2025 begins on the date of filing and ends on January 1, 2025." *Id.* (emphasis in original). But nothing in section 377(b)(1)(A)(ii) mentions a calendar year. Rather, the statute states that the penalty shall not exceed "2 percent of the gross sales . . . during the 1-year period ending on the date of the violation." The City filed this lawsuit on April 7, 2025, meaning that the 1-year period would be April 7, 2024, through April 7, 2025.

Accordingly, Defendants contend that the period from April 8, 2024, through April 7, 2025, should be the only 1-year period assessed, and from it, a 2% gross New York City sales calculation should be made once. The City has offered no explanation why this Court should stray from the Eastern District's holdings in *Milhelm* and *Golden Feather*, in which the City proposed, and the court endorsed, the assessment of a 2% gross sales penalty for a single one-year period against defendants who engaged in multiple and continuous violations of New York's cigarette tax stamping law, including violations that continued after the date selected. *Milhelm*, 2012 U.S. Dist. LEXIS 116533, at *93, 96; *Golden Feather*, 2013 U.S. Dist. LEXIS 142127, at *7-8.

Defendants' position regarding the appropriate punishment for these civil violations also squares with section 3D1.2 of the federal Sentencing Guidelines, which states:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: . . . (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offensive behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

18 U.S.C. Appx. § 3D1.2; U.S.S.G. § 3D1.2. The federal Sentencing Guidelines are instructive here, as the City seeks to assess civil penalties against each Defendant for multiple transactions that each allegedly violated the PACT Act in the same way(s) and so allegedly involved

9

substantially the same harm, and the level of harm is based on the total quantity of the sales and shipments at issue. The Second Circuit has applied the federal Sentencing Guidelines to inform the assessment of penalties under the Contraband Cigarette Trafficking ACT ("CCTA") which, like the PACT Act, imposes both civil and criminal penalties for violative sales. *See UPS*, 942 F.3d at 601 (observing that "[t]he analogous penalty under the federal Sentencing Guidelines for sentences for trafficking cigarettes under the CCTA sheds some light on these ratios" of aggregate penalties imposed versus financial loss to New York for unpaid taxes and profits UPS made on illegal cigarette shipments). Indeed, the Second Circuit explained that "[t]he guidelines are particularly relevant here because they make clear that tax evasion is the principal conduct at which these statues are directed, *see* U.S.S.G. § 2E4.1, and are designed to avoid hyper-technical, per-violation penalty calculations where the conduct at issue 'involv[es] substantially the same harm.'" *Id*. (quoting U.S.S.G. § 3D1.2). As the parties have explained, Congress likewise adopted the PACT Act principally to prevent tax evasion. Thus, the Second Circuit's reasoning holds equally true here as well.

**CONCLUSION**

For the reasons discussed above, Defendants respectfully request that this Court adopt their position that 15 U.S.C. § 377(b)(1)(A)(ii) is properly read to limit "gross sales" to sales into the plaintiff jurisdiction and to permit only a single 2% penalty for an alleged continuing violation, measured by one relevant one-year period.

                                        Respectfully submitted,

                                        THOMPSON HINE LLP

Dated: May 27, 2026                    By: /s/ Eric N. Heyer
                                        Eric N. Heyer
                                        Joseph A. Smith
                                        James C. Fraser

10

Anna M. Stressenger
Ryan D. Callinan
Irvin Hernandez
Lauren K. Ierardi
1919 M St., NW, Suite 700
Washington, DC 20036
T: 202-331-8800
F: 202-331-8330
eric.heyer@thompsonhine.com
joe.smith@thompsonhine.com
james.fraser@thompsonhine.com
anna.stressenger@thompsonhine.com
ryan.callinan@thompsonhine.com
irvin.hernandez@thompsonhine.com
lauren.ierardi@thompsonhine.com

*Counsel for 10 Days, Inc. d/b/a Pod Juice, Midwest Goods, Inc. d/b/a Midwest Distribution   Illinois, Safa Goods LLC, and SV3 LLC*

*And on behalf of all other Defendants.*

11