**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| STATE OF NEW YORK, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 1:25-cv-1445-MMG |
| | ) | |
| v. | ) | |
| | ) | |
| PUFF BAR, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| CITY OF NEW YORK, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 1:25-cv-2850-MMG |
| | ) | |
| v. | ) | |
| | ) | |
| PUFF BAR, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' REPLY BRIEF ON THE
APPROPRIATE INTERPRETATION OF 15 U.S.C. § 377(b)(1)(A)(ii)**

As more fully set forth in Defendants' opening briefs, the parties seek guidance from the Court concerning the proper interpretation of the PACT Act's delivery-seller civil penalty provision, 15 U.S.C. § 377(b)(1)(A)(ii). The questions presented are twofold: first, whether the 2% gross-sales penalty is measured by a defendant's total gross sales wherever made, as Plaintiffs contend, or only by gross sales into the plaintiff jurisdiction, as Defendants submit; and second, whether Plaintiffs may seek separate overlapping 2% penalties based on each alleged violation or whether, for an alleged continuing violation, section 377 permits only a single 2% penalty measured by one relevant one-year period.

Plaintiffs' responsive briefs confirm the problems with their interpretation. Plaintiffs read the phrase "gross sales" in isolation and argue that, because section 377(b)(1)(A)(ii) does not expressly include a geographic limitation, every State and locality authorized to sue under the PACT Act may seek penalties measured by a defendant's nationwide gross sales. But that argument ignores the surrounding statutory provisions that define the scope of State and local enforcement. Read in context with sections 376a and 378, section 377(b)(1)(A)(ii) is properly understood to limit the relevant "gross sales" to sales into the jurisdiction bringing the enforcement action.

Plaintiffs' reading also creates the absurd and constitutionally suspect consequences identified in Defendants' opening briefs. Plaintiffs attempt to avoid those consequences by characterizing the 2% gross-sales calculation as merely a cap, but that does not resolve the statutory interpretation problem. The Court should not adopt an expansive construction that authorizes overlapping nationwide penalty requests by multiple sovereigns and then rely on later judicial discretion to prevent unconstitutional results. The better reading is the narrower and more coherent one: in a State or local enforcement action, the 2% gross-sales penalty is limited to gross sales into the enforcing jurisdiction.

## ARGUMENT

### I.    Plaintiffs Interpret the Term "Gross Sales" in Isolation From its Statutory Context.

The dispute between Plaintiffs and Defendants is not about the standard dictionary definition of "gross" meaning "all." Instead, the operative question is all of *which* sales: in context, "gross sales" in section 377(b)(1)(A)(ii) means the delivery seller's sales into the State or place bringing the PACT Act enforcement action, not every sale the seller made anywhere.

Plaintiffs argue that because the dictionary definition of "gross" means "all," the term "gross sales" in section 377(b)(1)(A)(ii) must mean *all* of Defendants' sales *anywhere* in the United

States or abroad. In so doing, Plaintiffs divorce the term "gross sales" from its context within the PACT Act, running afoul of the basic principle that "statutory language cannot be construed in a vacuum." *Davis v. Mich. Dep't of the Treasury*, 489 U.S. 803, 809 (1989).

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.*; *see also Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (rejecting the Ninth Circuit's reading of a statutory phrase that "may be plausible in the abstract, but . . . is ultimately inconsistent with both the text and context of the statute as a whole"); *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022) ("In looking at a statute's plain meaning, we must also consider the context in which the statutory terms are used, as we do not . . . construe statutory phrases in isolation; we read statutes as a whole."); *United States v. Gayle*, 342 F.3d 89, 93 (2d Cir. 2003) ("The text's plain meaning can be best understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); *Basr P'ship v. United States*, 795 F.3d 1338, 1343 (Fed. Cir. 2015) ("Under Supreme Court precedent, we cannot determine the meaning of the statutory language without examining that language in light of its place in the statutory scheme.").

That rule is particularly important where, as here, a party relies on the broadest possible dictionary meaning of a single word.

"[A] statute's meaning does not always turn solely on the broadest imaginable definitions of its component words." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) (quoting *Yates v. United States*, 574 U.S. 529, 537 (2015)); *see also Maracich v. Spears*, 570 U.S. 48, 65 (2013) ("It is necessary and required that an interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning."). "Even in

cases where the literal language of the statute is neutral in isolation, reading the whole phrase can point to a more targeted reading." *Dubin v. United States*, 599 U.S. 110, 120 (2023) (internal quotations omitted).

This Court can agree with Plaintiffs that, broadly speaking, "gross sales" means "all sales," while also agreeing with Defendants that, in the context of the PACT Act, the scope of "gross sales" is limited to all sales made into the jurisdiction asserting the PACT Act claim. Section 377 does not exist in isolation, and its phrase "in the case of a delivery seller" is not meaningless. It refers to section 376a, which imposes obligations on delivery sellers "with respect to delivery sales into a specific State and place." Section 378, in turn, confers standing upon specific States and places to enforce against violations of section 376a. Nothing in section 378 confers upon these plaintiffs extraterritorial jurisdiction to enforce the laws of *other* States and places.

Together, sections 376a and 378 draw a geographic fence around section 377 for actions brought by states and localities. Plaintiffs' reading would make section 377 an outlier, untethered to the location of the PACT Act violation, while its related sections 376a and 378 are so limited. While "gross sales" means "all sales" in isolation, this Court cannot ignore the term's place within this overall statutory scheme. The better reading is the harmonious one: in this context, "gross sales" is "much more sensibly interpreted to mean" gross sales into the State and place bringing the action under section 378 for violations of section 376a. *Roberts v. Sea-Land Servs.*, 566 U.S. 93, 102 (2012). This interpretation gives effect to 15 U.S.C. § 377 without severing it from the surrounding provisions of the PACT Act.

Viewed in this statutory context, the term "gross sales" is unambiguous. *See Yates v. United States*, 574 U.S. 528, 537 (2015) ("Whether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of

statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Here, that context points to one sensible construction: gross sales into the enforcing jurisdiction.

To the extent, however, that this Court concludes that the statutory context does not lend clarity or leaves room for more than one interpretation, such ambiguities must be resolved in favor of Defendants. *See United States v. Granderson*, 511 U.S. 39, 54 (1994) ("[W]here text, structure, and history fail to establish that the Government's position is unambiguously correct – we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor."). As Defendants explained in their opening brief, the rule of lenity applies not only in criminal cases, but also in civil cases where the statute at issue also includes criminal penalties; the PACT Act, section 377(a)(1) of which makes knowing violations a felony, satisfies these criteria. *See* ECF No. 172 at 4. And Justices Gorsuch and Jackson recently clarified that "statutes imposing [civil] penalties are to be 'construed strictly' against the government." *Bittner v. United States*, 598 U.S. 85, 101-02 (2023). Accordingly, to the extent this Court finds the geographic scope of "gross sales" ambiguous, the rule of lenity requires this Court to adopt Defendants' narrower construction of the term.

Finally, the State's reliance on *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), misreads the decision it cites. The State zeroes-in on footnote 21 of *Gore* to support basing the penalty calculation on nationwide gross sales. ECF No. 178 at 10. But footnote 21 addresses only the evidentiary use of out-of-state conduct—specifically, that evidence of repeated misconduct in other jurisdictions may be relevant to assess a defendant's reprehensibility. It says nothing about using nationwide sales as an arithmetic base for calculating a penalty. The State takes specific

evidentiary admissibility and converts it into a license to quantify penalties by reference to commerce that occurred wholly outside New York.

As a matter of legislative interpretation, the *Gore* holding runs directly against the State. The Court held: "We think it follows from these principles of state sovereignty and comity that a State *may not* impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' *lawful conduct in other States*." *Id.* at 572 (emphasis added). That is precisely what New York's nationwide-gross-sales theory accomplishes; it would calibrate the penalty by reference to defendants' commercial activity in Florida, Texas, California, and forty-six other states, none of which is party to this action and none of whose laws defendants are alleged to have violated here. The geographic reach of the penalty base is the constitutional defect *Gore* identified.

The structural principle the *Gore* Court announced confirms this: "While each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies *on the entire Nation*." *Id.* at 585 (emphasis added). New York has ample authority to penalize defendants for violations tied to New York delivery sales — and a penalty calculated on New York gross sales fully serves that interest. The same goes for the City. What New York cannot do is treat its enforcement jurisdiction as a vehicle for penalizing defendants' nationwide commerce. The 2% penalty based on gross sales from all fifty states does not protect New York consumers more effectively than 2% of New York sales; it simply multiplies the sanction by reference to transactions New York has no sovereign interest in punishing.

## II.    Plaintiffs' "Cap" Argument Does Not Save Their Expansive Reading of Section 377.

In their opening briefs, Defendants explained that Plaintiffs' nationwide-gross-sales theory would produce both absurd and constitutionally suspect results. If every state and locality authorized to sue under the PACT Act could recover 2% of a defendant's nationwide gross sales

based on violations of that state's or locality's laws, aggregate penalties could quickly exceed 100% of the defendant's total gross sales. That result is not merely impractical; it raises serious concerns under the Excessive Fines Clause and Due Process Clause and provides another reason why section 377(b)(1)(A)(ii) should not be construed to authorize penalties based on nationwide sales in state and local enforcement actions.

Plaintiffs attempt to avoid this problem by arguing that section 377(b)(1)(A)(ii) establishes only a statutory cap, not a mandatory penalty amount. But that response misses the point. The constitutional problem is not eliminated simply because a court may later exercise discretion to award less than the maximum amount. Plaintiffs' interpretation would authorize each State and locality to seek penalties measured by 2% of nationwide gross sales, leaving courts to reduce those penalties on a case-by-case basis to avoid unconstitutional results. But that is not how statutes should be construed. Where a statute is susceptible to more than one plausible reading, courts must avoid interpretations that raise serious constitutional doubts. See *Clark v. Martinez*, 543 U.S. 371, 381 (2005) (constitutional avoidance is "a tool for choosing between competing plausible interpretations of a statutory text" and rests on the presumption that Congress did not intend a construction raising serious constitutional doubts); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."); *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.").

Nor is the problem merely theoretical. Plaintiffs' reading would create a cascading-penalty problem that no single court could reliably cure. If one state obtains a penalty calculated from 2% of nationwide gross sales, a later state or locality pursuing its own enforcement action would necessarily seek additional penalties based on some or all of that same nationwide sales base. Even if the later court attempted to exercise discretion conservatively, the same nationwide sales already would have been used to support a prior sovereign's penalty request, and the problem would repeat in each successive action. The Second Circuit has recognized the constitutional danger of cumulative punishment based on the same or overlapping conduct. See *New York v. United Parcel Serv., Inc.*, 942 F.3d 554, 600 (2d Cir. 2019) ("Penalties cascading on a defendant from several different statutory regimes must be applied with great care when they result from one underlying set of bad actions."). Thus, this Court should construe section 377 in a way that prevents this constitutional problem at the source, rather than adopting an expansive interpretation that would place later courts in the untenable position of attempting to manage overlapping nationwide penalties imposed seriatim by different sovereigns.

Plaintiffs' "cap" argument also ignores the proportionality principles that govern punitive monetary sanctions. The Excessive Fines Clause limits the government's power to extract payments as punishment, including civil penalties that serve punitive purposes. *Austin v. United States,* 509 U.S. 602, 609–10 (1993). The "touchstone" of the Excessive Fines inquiry is proportionality: the penalty must bear a relationship to the gravity of the offense. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). A construction that allows New York to seek penalties based on sales occurring outside New York, including sales that were lawful where made and unrelated to any injury to New York, is difficult to reconcile with those principles. *See Timbs v. Indiana*, 586

U.S. 146, 150–51 (2019) (observing that the Excessive Fines Clause applies to the States and guards against excessive economic sanctions).

Section 377 should not be read to invite those constitutional problems. The better reading is the narrower and more coherent one: in a state or local enforcement action against a delivery seller, the 2% gross-sales penalty is limited to gross sales into the enforcing jurisdiction. That construction avoids absurd and constitutionally suspect aggregate penalties, preserves the statute's remedial and deterrent function, and aligns the penalty base with the sovereign interests actually being enforced.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' opening and responsive briefs, Defendants respectfully request that this Court hold that, in a State or local enforcement action, the "gross sales" referenced in 15 U.S.C. § 377(b)(1)(A)(ii) are limited to gross sales into the enforcing jurisdiction, and that Section 377 does not authorize separate, overlapping 2% nationwide gross-sales penalties based on each alleged violation or each year of alleged violations.

Respectfully submitted,

Dated: June 8, 2026                    THOMPSON HINE LLP

By: /s/ Eric N. Heyer
Eric N. Heyer
Joseph A. Smith
James C. Fraser
Anna M. Stressenger
Ryan D. Callinan
Irvin Hernandez
Lauren Ierardi
Thompson Hine LLP
1919 M Street, NW, Suite 700

- 9 -

Washington, DC 20036
T: 202-331-8800
F: 202-331-8330
eric.heyer@thompsonhine.com
joe.smith@thompsonhine.com
james.fraser@thompsonhine.com
anna.stressenger@thompsonhine.com
ryan.callinan@thompsonhine.com
irvin.hernandez@thompsonhine.com
lauren.ierardi@thompsonhine.com

*Counsel for Ecto World LLC d/b/a Demand Vape, Magellan Technology, Inc., Midwest Goods, Inc. d/b/a Midwest Distribution Illinois, 10 Days, Inc. d/b/a Pod Juice, Safa Goods LLC, and SV3 LLC*

*And on behalf of all other Defendants.*