UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                        Plaintiff,

             -against-

PUFF BAR, EVO BRANDS, LLC, PVG2, LLC d/b/a PUFF
BAR, MIDWEST GOODS INC. d/b/a MIDWEST
DISTRIBUTION ILLINOIS, l0 DAYS, INC. d/b/a POD
JUICE, SAFA GOODS LLC, SV3, LLC d/b/a MI-ONE
BRANDS, MYLÉ VAPE INC., MVH I, INC.,

                      Defendants.

Case No. 25-cv-02850

------------------------------------------------------------------------- x

**THE CITY OF NEW YORK'S REPLY MEMORANDUM IN SUPPORT OF ITS
INTERPRETATION OF THE PACT ACT PENALTY PROVISION**

**STEVEN BANKS**
Corporation Counsel of the
 City of New York
*Attorney for Plaintiff the City of New York*
100 Church Street, Room 3-211
New York, New York 10007
(212) 356-2032

Of counsel:

Eric Proshansky
Aatif Iqbal
Elizabeth Slater

Assistant Corporation Counsels

Plaintiff ("the City") submits this reply pursuant to the Court's May 29, 2026 Order granting the parties permission to file a reply. *Dkt. No.* 112. The City submits this reply in response to Defendants' opening and opposition briefs. *Dkt. Nos.* 99, 111.

## I.   APPLICATION OF STATUTORY INTERPRETATION PRINCIPLES SUPPORTS THE CITY'S POSITION

Congress prescribed one of the two methods to calculate penalties for PACT Act violations by a "delivery seller" as "2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller" — full stop.  15 U.S.C. "Gross sales" is modified by "of cigarettes or smokeless tobacco" and "of the delivery seller" — no additional qualifier, geographic or otherwise, modifies "gross sales."  Defendants never confront this address central flaw in their argument but instead look to other sections of the statute in an attempt to import language into the penalty provision of § 377(b) that simply is not present in that section.

While the above plain-language analysis is enough to resolve the present question, the City has no quarrel with Defendants' subsidiary considerations that courts have an '"obligation to interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an … harmonious whole,'" *Dkt. No.* 111, at 2 (quoting *Rivera-Perez v. Stover*, 171 F.4th 196, 208 (2d Cir. 2026)), or that "[t]he meaning of a statute can be understood 'in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another,'" *id.* (quoting *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470-71 (2d Cir. 2018)).

But even adopting Defendants' near-complete reliance on the vagaries of a holistic approach to statutory interpretation, application of that method to the question at hand shows Defendants' principal argument — that for penalty purposes, "gross sales" embraces only sales into a jurisdiction that has brought a PACT Act enforcement action — to be wrong.  Reviewing the  PACT Act with an eye toward "appreciating how sections relate to one another," 879 F.3d at

1

470-71, and fitting "all parts into an harmonious whole," 171 F.4th at 208, provides confirmation of the City's interpretation of 15 U.S.C. § 377(b)(1)(A)(i)-(ii) — not Defendants'.

### A. None of the Other Penalty Provisions in Section 377 Contain a Geographic Limitation

Defendants suggest a "look at the statutory provisions immediately preceding and following section 377(b)(1)(A)(ii) to understand its geographic scope." *Dkt. No. 111* at 1-2. Defendants of course must focus on statutory provisions "immediately preceding and following" the penalty section in 15 U.S.C. § 377(b) because § 377(b) itself has *no* language modifying the meaning of "gross sales" in the manner sought by Defendants.  But even the appearance of geographic references in the text of 15 U.S.C. § 376a does not help Defendants, because "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted) (quoted in *Dkt. No*. 110 at 5).  Moreover,  the provisions in 15 U.S.C. § 376a  on which Defendants point to as specifying geographic references serve a completely different purpose than the penalty provision. Section § 376a (a)(3) is there to provide a geographic reference point that will specify the laws of a jurisdiction with which a delivery seller must comply. Accordingly, that statutory section cannot be interpreted *in pari materia* with § 377(b). *See Dkt. No. 110* at 5.

Instead of looking to the language of adjacent statutory provisions, a more sensible approach to "appreciating how sections relate to one another," *CSX Transp.*, 879 F.3d at 470-71, or to fitting "all parts into an harmonious whole," *Rivera-Perez*, 171 F.4th at 208, is to look at provisions having similar or the same purposes, *i.e.* other penalty provisions.  The City has already pointed out that the *same* section — § 377 itself (*not* a preceding or following section) —

specifying the 2% penalty for delivery sellers also specifies a penalty for PACT Act violations by common carriers and delivery services, stating:

> [W]hoever violates this Act shall be subject to a civil penalty in an amount not to exceed —
>
> ***
>
> (B) in the case of a common carrier or other delivery service, $2,500 in the case of a first violation, or $5,000 for *any* violation within 1 year of a prior violation.

15 U.S.C. § 377 (emphasis added).  Consistent with the penalty provision applied to delivery sellers, the penalty for delivery services, § 377(b)(1)(B), contains no language indicating that the common carrier/delivery services' penalty is to be calculated on the basis of deliveries into the enforcing jurisdiction alone. To the contrary, the statute imposes a penalty for "*any* violation."[1]

### B.    The Mail Prohibitions of the PACT Act Demonstrate that Congress Knew How to Limit Penalties but Chose Not To

The mail prohibitions of the PACT Act in 18 U.S.C. § 1716E provide still further insight into the correct interpretation of § 377(b), because the text of 18 U.S.C. § 1716E(h) includes the precise geographic limitation that Defendants *wish* were present in § 377(b):

Actions by State, local, or tribal governments relating to certain tobacco products.

(1) In general. A State, through its attorney general, or a local government or Indian tribe that levies an excise tax on tobacco products, through its chief law enforcement officer, may in a civil action in a United States district court obtain appropriate relief with respect to a violation of this section. Appropriate relief includes injunctive and equitable relief and damages equal to the amount of unpaid taxes on tobacco products mailed in violation of this section *to addressees in that State, locality, or tribal land*.

---

[1] "Any" violations certainly encompasses violations outside of the enforcing jurisdiction.  "On its face, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind,'" *United States v. Gonzales*, 520 U.S. 1, 5, (1997) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1976)). "Taken alone or in combination, the terms 'any' and 'all' convey nearly limitless breadth." *Cayuga Nation v. Tanner*, 6 F.4th 361, 378 (2d Cir. 2021).

18 U.S.C. § 1716E(h) (emphasis added).  The significance of 18 U.S.C. § 1716E(h) is that a jurisdiction that brings an enforcement action for mail violations recovers a penalty for mailed cigarettes, but § 1716E(h) expressly limits penalties (referenced by the terms "appropriate relief"), limited to mailings "to addresses in that state, locality or tribal land." *Id*.  By contrast, an action under the Act's plenary enforcement provision, 15 U.S.C. § 378(c) for all other PACT Act violations does not contain that limitation. Accordingly, Congress knew how to impose a geographic scope on recoveries, but decided not to in § 377(b).

The express limitation on the geographic scope of penalties in 18 U.S.C. § 1716E(h) contrasts sharply both with the common carrier penalty provision cited above, *supra* Part I.A., and with the PACT Act's plenary enforcement provision that addresses all other violations except those involving the mails:

> State, local, and tribal enforcement.
>
> (1) In general.
>
> (A) Standing. A State, through its attorney general, or a local government or Indian tribe that levies a tax subject to section 2A(a)(3) [15 U.S.C. § 376a(a)(3)], through its chief law enforcement officer, may bring an action in a United States district court to prevent and restrain violations of this Act [15 U.S.C. §§ 375 *et seq*.] by any person or to obtain any other appropriate relief from any person for violations of this Act [15 U.S.C. §§ 375 *et seq*.], including civil penalties, money damages, and injunctive or other equitable relief.

15 U.S.C. § 378.  This section authorizes appropriate relief for <u>all</u> "violations of this Act" that is not restricted to violations from deliveries "to addressees in that State, locality, or tribal land." If Defendants' interpretation had any merit, the geographic limiting language contained in § 1716E(h) would have been used by Congress in § 378 — that section too would have included the language that appropriate relief would be based on "products [delivered] in violation of this section *to addressees in that State, locality, or tribal land*." 15 U.S.C. § 1716E(h) (emphasis added). But of course, § 378 does not  contain this limiting language. Once again, Congress certainly knew

how to use the language when it wanted to, as in 18 U.S.C. § 1716E(h), but did not do so in imposing penalties in either § 377 or § 378. Again, Defendants' position should be rejected under the principle that inclusion of language in one statutory provision and its omission in another is deemed intentional. In short, the City's position "appreciate[es] how sections relate to one another," *CSX Transp.*, 879 F.3d at 470-71, and fits "all parts into an harmonious whole," *Rivera-Perez*, 171 F.4th at 208. Defendants' does not.

Defendants present an interpretation of the PACT Act that considers only the narrow standpoint of the recovery of damages, asserting that there can be no rationale for one jurisdiction to recover for violations connected to another jurisdiction. But that perspective views the PACT Act with tunnel vision, ignoring the Act's congressionally-stated national purposes to

(1) require Internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers;

(2) create strong disincentives to illegal smuggling of tobacco products;

(3) provide government enforcement officials with more effective enforcement tools to combat tobacco smuggling;

(4) make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities;

(5) increase collections of Federal, State, and local excise taxes on cigarettes and smokeless tobacco; and

(6) prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco through illegal Internet or contraband sales.

*Pub. L. No. 111-154* § 1. None of these purposes is served by penalizing the violations of a delivery seller or common carrier as if the violations affect an enforcing jurisdiction alone. When a delivery seller makes delivery sales to fifty states, or a common carrier makes deliveries for a prohibited entity to fifty states, there can be no logic to — and the above purposes would be ill-served by — calculating penalties based only on the identity of the enforcing jurisdiction. The

5

PACT Act's nationwide goals are achieved by penalties with nationwide bite by using sales figures to calculate penalties reflecting nationwide violations. The identity of a jurisdiction that has assumed the burden of enforcement has no relevance to the size of a penalty. The issue presented by penalty calculations is not injury to a jurisdiction; it is deterrence of the violator.

**C.    Defendants' Premises Are Unsupported and Indeed Contradicted by Legislative History**

Defendants offer the made-up reflection that "The absence of an express geographic limitation in section 377(b)(1)(A)(ii) simply reflects that Congress wrote the PACT Act *for* the federal government." *Dkt. No.* 111 at 3 (emphasis in original). That supposition is not merely unsupported by citation but is expressly refuted by PACT Act legislative history. That history focuses almost entirely on the inadequacy of federal efforts and the need to extend enforcement powers to states and localities. For example, Senate Report No. 110-153 repeatedly emphasizes this:

> **§ I (Purpose)**: "The bill would … (3) make it a federal offense for any seller making a 'delivery sale' to fail to comply with all *state* excise tax, *state* sales tax, *state* licensing, and *state* tax stamping laws; (4) empower *state* Attorneys General and others to bring an action in federal court seeking injunctive relief and civil penalties against out-of-state sellers who violate *state* or federal requirements."
>
> **§ II. C ("State Tax Resources Being Diverted to Terrorists and Other Criminal Enterprises…")**: "[C]igarette smuggling is depleting *state and local* resources.... the total loss of federal and state taxes amounted to somewhere between $3.5 billion and $3.8 billion in 2004. *New York alone lost approximately $1.1 billion*…. For state governments, the problem will only get worse if left unaddressed."
>
> **§ II. D ("State and Local Law Enforcement Lack Sufficient Tools")**
>
> - "*State and local* governments are directly affected by tobacco smuggling. They have an incentive to bring enforcement actions. To combat these schemes, the *states* have taken an aggressive, multi-faceted approach to stopping these illegal sales."
>
> - "States' enforcement authority is severely limited, however. Cigarette trafficking is, by its very nature, an interstate problem .... Though state enforcement officials can often identify out-of-state sellers who are violating their tobacco tax laws, the high-tax states' ability to enforce their laws against out-of-state sellers is limited because of the

jurisdictional limitations of their state courts. As a result, our state and local governments are often helpless to address this problem and have to rely on federal law enforcement officials to pursue these cases."

**§ IV, Section-by-Section, § 2(e) ("Enhanced enforcement authorities")**:

- "Subsection (2)(e) includes critically important new authorities for *state, local and tribal* law enforcement officials. Currently, the ability of *state and local* law enforcement officials to reach out-of-state cigarette traffickers through enforcement actions in their own state courts is limited. To extend the reach of these officials, this subsection provides jurisdiction to United States District Courts to prevent and restrain violations of this Act, as well as to award injunctive or equitable relief, including money damages, for such violations."

*S. Rep. No*. 110-153 (2007) (all emphases added). Nothing in the Act was written "for" the federal government.

Defendants offer another unsupported claim that "A locality…  has limits to its enforcement power commensurate with the limits to its sovereignty, and New York City cannot shed those limits merely by invoking a federal statute." *Dkt. No. 111* at 4.  This statement flies in the face of 15 U.S.C. § 378,  which extends standing "to a local government … [to] bring an action in a United States district court to prevent and restrain violations of this Act," an express grant of authority of nationwide enforcement powers to the City that very obviously "shed[s] the limits" of that would be otherwise exist but for a federal statute.[2]

### II.   DEFENDANTS MISCONSTRUE OR MISREPRESENT THE CITY'S ARGUMENT

Defendants have misconstrued, or misrepresented, the City's argument as follows:

The issue is whether the PACT Act authorizes a state or local government to enforce against alleged violations with no connection to its own jurisdiction, and then calculate penalties based on nationwide sales, including sales that were lawful where they occurred.

---

[2] The Contraband Cigarette Trafficking Act, 18 U.S.C. § 2346 *et seq*. extends precisely the same nationwide enforcement powers previously reserved to the federal government to states and localities.

*Dkt. No. 111* at 7. Characteristically, the statement is made with citation and is not the City's argument at all. The City has nowhere "alleged violations with no connection to [the City's] own jurisdiction." *Id*. The *violations* at issue in this case are all for Defendants' actual sales into the City. It is the *calculation of the penalties* for those violations that is premised on the Defendants' "gross sales," which based on the meaning of "gross sales" includes sales that were not shipments into the City. The penalty award here is premised on the existence of on in-City violations, but is calculated using a formula, one factor of which considers nationwide sales as a measure of the egregiousness of a violator's offense.

To the extent Defendants are referencing the City's use of the hypothetical delivery seller located in State A who makes no delivery sales in State A, but makes delivery sales into twenty-five other states (*Dkt. No*. 111 at 7 (citing *Dkt. No.* 101 at 6)), those are not the facts here. That hypothetical was offered by the City to show the flaws in Defendants' argument. The hypothetical is not premised on "violations with no connection to its own jurisdiction" (as Defendants would have it) for the simple reason that the hypothetical dealer is located in the same state as the enforcing jurisdiction, State A. That dealer is making sales only to other jurisdictions, but commits its violations in State A. Nothing in the City's formulation of its hypothetical is premised on the City penalizing sales, for example, originating in New Jersey and delivered into Connecticut.

## III.    DEFENDANTS CONTINUE TO IGNORE THAT PENALTIES ARE DISCRETIONARY

Defendants never — not in their opening or opposition brief — address the City's arguments that 15 U.S.C. § 377(b) provides for a *cap* on penalties for established violations and that the ultimate penalty amount is to be awarded by the judge. *See Dkt. No*. 110 at 8-9. Ignoring this argument is fatal to Defendants' interpretation of the PACT Act. A district court can decide

8

the penalty amount with constitutional limitations in mind. Therefore, there are no facial flaws that require adjusting the statute's meaning so as to prohibit consideration of nationwide sales. *Id.*

This reasoning also applies to Defendants' "continuous violations" argument. See Dkt. No 111 at 8. The plain text of the statute is clear: the City can recover 2% of the gross sales "for any violation." 15 U.S.C. § 377(b)(1)(A)(ii). Just because the City can statutorily recover for every violation does mean that it will — judicial discretion will determine what the City can recover for the violations it proves, once discovery is completed. *See Dkt. No. 110* at 8.

## IV.    DEFENDANTS MISCONSTRUE *MILHELM* AND *GOLDEN FEATHER*

Defendants' long-winded expositions of *City of N.Y. v. Milhelm Attea & Bros.*, 2012 U.S. Dist. LEXIS 116533 (E.D.N.Y. Aug. 17, 2012), and *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. LEXIS 142127 (E.D.N.Y. Sep. 30, 2013) do not refute that these cases support the City's position — not Defendants'. *See Dkt. No. 111* at 3-4. As Defendants themselves note, "[b]oth cases involved the sale of unstamped cigarettes in New York and Native American reservations therein in a manner that circumvented New York's cigarette stamping tax." *Id.* at 4. More precisely, both cases involved New York City suing stamping agents located in Nassau and Suffolk Counties for sales made *outside* of New York City to Native American reservations under the CCTA. *See Dkt. No*. 110 at 7. In *Milhelm*, the City argued — and the court agreed — that the PACT Act should serve as a guidepost in applying a penalty amount under the CCTA and that an appropriate penalty for those sales would be "2% of . . . gross sales of unstamped cigarettes to Native America reservations." *Milhelm*, 2012 U.S. Dist. LEXIS 116533, at *92. In *Golden Feather*, no geographic limitation applied to the calculation of gross sales — a fact Defendants do not address. *See Golden Feather*, 2013 U.S. Dist. LEXIS 142127, *8 (using "the number of cartons of unstamped cigarettes Smoking Arrow purchased at wholesale" as a "proxy" for gross sales).

9

Defendants' original position in this case was that "section 377(b)(1)(A)(ii) is properly read to limit 'gross sales' to sales into the plaintiff jurisdiction." *Dkt. No.* 99 at 1. In *Milhelm* and *Golden Feather*, the calculation of "gross sales" was based on sales made *outside of* New York City's borders, which, under Defendants' original interpretation of the PACT Act, would not be allowed. These cases, therefore, fully support the City's position.

**CONCLUSION**

For the foregoing reasons, the Court should hold that the term "gross sales" in 15 U.S.C. § 377(b)(1)(A)(ii) refers to a delivery seller's nationwide gross sales.

Dated: New York, New York
June 8, 2026

**STEVEN BANKS**
Corporation Counsel of the
  City of New York
*Attorneys for Plaintiff The City of New York*
100 Church Street, Rm. 3-211
New York, New York 10007
(212) 356-2032

By:_____
  Eric Proshansky
  Aatif Iqbal
  Elizabeth Slater

  Assistant Corporation Counsels