

June 15, 2026

<u>**VIA ECF**</u>
Hon. Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

>   **Re:**   *State of New York v. Puff Bar, et al.*; Civil Action No. 25-cv-1445-MMG; *City of New York v. Puff Bar, et al.*; Civil Action No. 25-cv-02850-MMG
>   Joint Letter Re. Status of Discovery

Dear Judge Garnett:

Pursuant to the Court's June 3, 2026, Order directing the parties to submit a joint status update by June 15, 2026, the parties write jointly to provide the Court with an update regarding the status of discovery following the Court's April 27, 2026, conference and related discovery Order. *See* ECF No. 185. The parties, in that format, respectfully provide to the Court their respective updates on the status of discovery as set forth below.

## I.   DEFENDANTS' JOINT POSITION

### a.   DEFENDANTS' DISCOVERY EFFORTS TO DATE

At the outset, Defendants note that the State Plaintiff has, below, misstated the status of discovery and Defendants' actions to try to comply with the State's ever-expanding demands. Moreover, it is the State that has slowed the discovery process, insisting in one instance that over one week go by between the request for a meet-and-confer on search terms and the date of the meet-and-confer. At another point the State tried to refuse to even meet and confer on search terms with a Defendant that had produced hit counts until all Defendants produced hit counts, a delaying tactic so improper that the State was forced to quickly backtrack on that position. In sum, Defendants must regretfully conclude that the State's own delays since the April 27, 2026,



| | |
|---|---|
| ADDRESS | 139 Fulton St. Suite 132, NYC 10038 |
| PHONE | 917-639-3270 |
| EMAIL | mpeters@petersbrovner.com |
| | lbrovner@petersbrovner.com |
| WEBSITE | petersbrovner.com |

conference indicate a desire to emphasize points of dispute rather than to collaborate on completing fact discovery in an orderly manner.

As to Defendants' own efforts, Defendants respectfully submit that since the April 27th conference, they have taken their discovery obligations seriously (as they have since the beginning of this matter) and have worked diligently to comply with the Court's directives. Among other things, Defendants have continued making document productions, identified custodians, proposed search terms, collected custodial email and text-message data, worked with their respective discovery vendors to process and search that data, exchanged hit-count information with Plaintiffs, and participated in meet-and-confer discussions with the State and City regarding search methodology, search syntax, proposed search terms, additional terms requested by Plaintiffs, and potential refinements to the resulting review populations.

## b.  VOLUME OF EMAIL COLLECTIONS AND HIT COUNTS

Defendants have now completed, or are in the process of completing, custodial email/text-message collections and hit-count analyses. Those efforts have revealed an overwhelming practical issue for all Defendants: the search results, using terms agreed upon with Plaintiffs, have yielded extraordinarily high hit counts. For example, Safa's searches have now generated over 150,000 unique documents after deduplication. (Contrary to the State's misstatement in their portion of the letter, this is not an inflated number but includes all of the analytic work that the State demanded Safa conduct during a meet-and-confer that occurred on June 11th.). Demand Vape's searches generated more than 490,000 documents after deduplication, SV3s searches generated over 350,000 documents after deduplication, Pod Juice's searches generated over 230,000 documents after deduplication, and other Defendants are facing similarly substantial review populations. (Again, contrary to the State's misstatement in their portion of the letter, these hit counts are also not inflated, but merely reflect the results of running the search terms the State has demanded.)

The volume reflected in these hit counts presents a practical scheduling issue regardless of whether the current terms are further narrowed. Defendants are continuing to meet and confer with Plaintiffs regarding additional narrowing, analytics, threading, deduplication, and other tools to reduce the review populations. However, even assuming further refinements are made, it is not practicable to complete a reasonable attorney review, privilege review, confidentiality-designation process, and production of hundreds of thousands of documents by the current June 29, 2026 deadline. Defendants raise this issue now because the current June 29, 2026, deadline is approaching quickly, and Defendants do not want to wait until the eve of that deadline to advise the Court of a practical problem that is already clear.

Defendants remain committed to working cooperatively with Plaintiffs to narrow the review populations and complete discovery in a reasonable and proportional manner. However, absent meaningful narrowing or an adjustment to the current schedule, Defendants do not believe it is practicable to complete a reasonable attorney review, privilege review, confidentiality-designation process, and production of these volumes by June 29th.

## c.  DEFENDANT-SPECIFIC DISCOVERY STATUS

2

i.  *Safa Goods LLC*

Safa Goods LLC has worked diligently and in good faith to comply with the Court's April 27 discovery Order and its discovery obligations. Safa has produced three tranches of non-email/text-message document discovery to date and is in the process of preparing a fourth production for later this week.

Safa also began the custodial email/text-message collection process following the April 27 conference. Due to technical issues outside Safa's control, as well as the volume of data involved, that process took longer than initially anticipated. Safa nevertheless continued working with its discovery vendor to complete the collections as quickly as possible.

Safa also actively engaged with Plaintiffs regarding search terms. Safa participated in meet-and-confer discussions concerning proposed search terms and, although Safa believed certain additional terms requested by the State were overbroad, Safa nevertheless ran the State's requested terms in an effort to cooperate and move the discovery process forward. As soon as Safa received the resulting hit counts from its vendor, Safa promptly shared them with Plaintiffs. Those hit counts reflected approximately 249,109 documents after deduplication.

Immediately after receiving and sharing those hit counts, on June 2, 2026 Safa requested a follow-up meet and confer to discuss narrowing and refinement of the search terms in light of the substantial review population. Plaintiffs advised that they were unavailable to meet until June 11, 2026. Although Safa appreciates that the June 11 conference was ultimately productive, the delay in scheduling that conference further compressed the already limited time available to review, privilege-review, designate, and produce documents before the current June 29 deadline.

On the morning of the June 11 conference, the State requested that Safa run hit counts for additional proposed search terms. Safa again acted promptly and worked with its discovery vendor to run those additional searches. The updated searches were completed just as the conference commenced, allowing counsel for Safa, the State, and the City, along with their respective e-discovery/vendor representatives, to review the updated hit counts in real time and have a productive discussion regarding Safa's data, the search terms being run, the resulting hit counts, and the use of analytics, threading, deduplication, and other tools to further evaluate and potentially reduce Safa's review population.

During the June 11 conference, Plaintiffs requested that the documents reflected in Safa's updated hit count, approximately 205,000 documents, be promoted to a new workspace so that additional analytics, including threading, could be applied. Safa promptly worked with its discovery vendor to do so. As of the date of this letter, that process has been completed. After threading, Safa's current review population appears to include approximately 163,547 documents, with approximately 190,589 inclusive term hits with family included.

Safa intends to continue meeting and conferring with Plaintiffs regarding potential narrowing or refinement of the search terms. However, even after Safa's prompt efforts to run additional searches, promote documents to a new workspace, and apply threading, the remaining review population is extraordinarily large in light of the current June 29, 2026 discovery deadline.

ii.    *Ecto World LLC / Demand Vape ("Demand Vape") and Magellan Technology, Inc. ("Magellan")*

Demand Vape has worked diligently and in good faith to comply with the Court's April 27th discovery Order and its discovery obligations. Demand Vape has produced three tranches of non-email/text-message document discovery to date, on January 7, 2026 (4,298 documents), January 8, 2026 (25,104 documents), and April 17, 2026 (15,090 documents).

Magellan has also worked diligently and in good faith to comply with the Court's April 27th discovery Order and its discovery obligations. Magellan has produced three tranches of non-email/text-message document discovery to date, on January 7, 2026 (438 documents), January 8, 2026 (8,223 documents), and April 17, 2026 (841 documents).

Demand Vape and Magellan also began the custodial email/text-message collection process following the April 27th conference. On May 1, 2026, Demand Vape and Magellan proposed search terms and custodians for electronic communication collection to the State and City. On May 4, 2026, counsel for the State requested a meet and confer on May 11, 13 or 15, 2026. The parties agreed on May 13, 2026 to meet. Demand Vape and Magellan received no feedback on the terms proposed before the May 13, 2026 meet and confer. On May 15, 2026, Demand Vape and Magellan informed the Plaintiffs that they had run preliminary searches on a subset of emails that had been collected and the search resulted in a hit count of approximately 30,000 documents. On May 22, 2026, the State provided a revised set of search terms for Demand Vape and Magellan to run. Demand Vape and Magellan provided a revised search term report on May 27, 2026. This revised report reflected approximately 589,629 documents after deduplication. On June 3, 2026, the State provided changes to the search terms and the Parties agreed to meet and confer once the hit report came back. Demand Vape and Magellan sent a revised report reflecting approximately 514,788 documents after deduplication.

The Parties had a further meet-and-confer on June 9, 2026. The Parties, along with their respective e-discovery/vendor representatives, had a productive discussion regarding Demand Vape and Magellan's data, the search terms being run, the resulting hit counts, and the use of analytics, threading, deduplication, and other tools to further evaluate and potentially reduce Demand Vape and Magellan's review population. As of the date of this letter, Demand Vape and Magellan are waiting for a revised report from their discovery vendor.

Demand Vape and Magellan intend to continue meeting and conferring with Plaintiffs regarding potential narrowing or refinement of the search terms. However, even after Demand Vape and Magellan's prompt efforts to run additional searches, promote documents to a new workspace, and apply threading, the remaining review population is extraordinarily large in light of the current June 29, 2026 discovery deadline.

iii.    *Midwest Goods, Inc.*

Midwest Goods produced 128 documents on January 7, 2026, and 753 documents on January 8, 2026.  Midwest Goods, which is based in Illinois, has wound down its business over

the last nine months, has turned in all of its tobacco licenses, and is no longer engaged in the sale of ENDS products in any jurisdiction.

### iv.    10 Days, Inc.

10 Days produced 175 documents on January 7, 2026 and 1,772 documents on January 8, 2026. 10 Days has largely completed email collections. 10 Days provided a hit count analysis on June 8, 2026, reflecting over 230,000 documents after deduplication. 10 Days received revised terms from the State on June 10, 2026 and promptly provided these terms to its vendor. However, on June 11, 2026, Plaintiff advised that the terms provided the previous day contained errors and provided new terms. 10 Days will provide updated hit-counts in the coming days once the results are provide by its e-discovery vendor.

Further, 10 Days cooperated with Plaintiff and has collected an additional email address at Plaintiff's request. Due to the dormancy of the email address, 10 Days was only able to access it today, June 15, 2026, after working diligently with technical support from 10 Day's email provider.

### v.    SV3 LLC / Mi-One ("SV3")

SV3 has worked diligently and in good faith to comply with the Court's April 27th discovery Order and its discovery obligations. SV3 has produced six tranches of non-email/text-message document discovery to date, on January 7, 2026 (26 documents), January 8, 2026 (16,837 documents), January 14, 2026 (5 documents), April 17, 2026 (16,428 documents), May 13, 2026 (547 documents), and May 27, 2026 (1 document).

SV3 began the custodial email/text-message collection process following the April 27th conference. Due to technical issues outside SV3's control, as well as the volume of data involved, that process took longer than initially anticipated. SV3 nevertheless continued working with its discovery vendor to complete the collections as quickly as possible

On May 1, 2026, SV3 proposed search terms and custodians for electronic communication collection to the State and City. On May 4, 2026, counsel for the State requested a meet and confer on May 11, 13 or 15, 2026. The parties agreed on May 13, 2026 to meet. SV3 received no feedback on the terms proposed before the May 13, 2026 meet and confer. On May 22, 2026, the State provided a revised set of search terms for SV3 to run.

SV3 provided a revised search term report on June 12, 2026. This revised report reflected approximately 355,130 documents after deduplication. Upon transmitting this report, SV3 inquired into whether the Plaintiffs would like SV3 to move toward disaggregation of the terms, and subsequently promotion and threading and analytics (similar to what the discovery vendor is undertaking for Safa Goods and Demand Vape. SV3 is awaiting the Plaintiffs' response.

SV3 intends to continue meeting and conferring with Plaintiffs regarding potential narrowing or refinement of the search terms.

### vi.    *YLSN Distribution Inc.*

**I. Production Progress -** YLSN continues to make substantial progress in its document production. The productions to date represent 8,328 documents and 13,946 pages, which YLSN understands constitutes the overwhelming majority of non-email/phone records. YLSN anticipates an additional production this week and is continuing to finalize any remaining non-email productions.

**II. Email Collection -** YLSN continues to make progress with respect to its email collection, including Customer Service Emails (3 email accounts), emails from Custodians David Wang, Duo Zhong (3 email accounts), and Yu Guo. In addition, YLSN has collected WeChat and phone records from Mr. Zhong and Mr. Wang.

**III. Search Terms & Meet and Confer -** YLSN has proposed search terms and has engaged in various meet and confer sessions with the State, including on May 11th, June 9th, and an additional session anticipated for June 17th, to narrow the scope of searches. YLSN's initial hit count resulted in over 107,000 unique hits. We anticipate that the potential hit count may be substantially higher as additional custodians are added and as issues relating to Mandarin-Language Documents are addressed. YLSN is working with its discovery vendor to further analyze the hit counts based on ongoing discussions with the State. Notwithstanding the substantial hit count, YLSN is reviewing email documents while working to further narrow the scope and will continue to produce responsive documents on a rolling basis.

**IV. Outstanding Issues -** In addition to narrowing the scope of emails, YLSN is working with the State to address several unique issues including:

1. *Mandarin-Language Documents* — Ongoing discussions relating to review of documents in Mandarin, which likely impact the overall hit count.
2. *WeChat Message Relevance* — YLSN is working with the State to address the relevance of WeChat messages to the scope of production.
3. *Review of Personal / Non-Company Emails of Mr. Zhong* that may have been used for YLSN business and potentially relevant.

**V. Confidentiality & AEO Designations -** YLSN has been working cooperatively with the State to address the various confidentiality and Attorneys' Eyes Only (AEO) designations applicable to produced documents.

YLSN will continue to work with the State to address its discovery obligations.

### vii.    *Price Point Distributor Defendants (PPD)*

**Production Progress** - Price Point continues to make substantial progress in its document production. To date, PPD has made five productions. The productions to date represent 6,452 documents and 16,146 pages, which PPD understands constitutes the overwhelming majority of non-email/phone records. PPD is continuing to finalize any remaining non-email productions.

**Email Collection -** PPD continues to make progress with respect to its email collection, including emails and other records from Custodians Hamza Jalili, Elias Jalili and Weis Kwaja. In addition, PPD is in the process of collecting phone records / text messages from Mr. Jaili. In order to more efficiently meet its discovery obligations, PPD recently agreed to incur additional costs and moved its email production to KLD (previously on Logickull) which will make discovery production more efficient going forward.

**Search Terms & Meet and Confer -** PPD has proposed search terms and has engaged in various discussions with the State. PPD will continue to work with the State to narrow the scope of searches. YLSN's initial hit count resulted in over 152,000 unique hits. We anticipate that the potential hit count may be slightly higher as phone records are added as well as emails of an additional custodian PPD is working with its discovery vendor to further analyze the hit counts based on ongoing discussions with the State. We note that PPD has already produced a substantial number of emails / phone records as part of its production of documents previously submitted in connection with other litigation. Notwithstanding the substantial hit count, PPD is reviewing email documents while working to further narrow the scope and will continue to produce responsive documents on a rolling basis.

**Confidentiality & AEO Designations -** PPD has been working cooperatively with the State to address the various confidentiality and Attorneys' Eyes Only (AEO) designations applicable to produced documents.

PPD will continue to work with the State to address its discovery obligations and produce documents on a rolling basis.

### viii.    Puff Defendants:

The Puff Defendants have been working together with the State of New York and the City of New York since the issuance of the subpoenas and the complaints and recently were able to acquire the additional information requested by the State. This information has been forwarded to the State and made available also to the City of New York as of this past Friday, June 12, 2026. In addition, additional declarations of the Puff brand owners will be submitted by the end of this week to the State as well which, together with updated answers to the State's interrogatories, will complete the transmittal of all documentation currently requested by the State. The Puff defendants have, with their counsel, reviewed all documents, emails and texts individually as they are unable due to financial constraints to hire an external search consultant or software to accomplish this task.

### ix.    MYLÉ Vape Inc.

On June 8, 2026, the Court granted Buchanan Ingersoll & Rooney PC's motion to withdraw as counsel for MYLÉ Vape Inc. and MVH I, Inc. (Dkt. No. 188 in Case No. 1:25-cv-01445; Dkt. No. 117 in Case No. 1:25-cv-02850). The MYLÉ Defendants have since retained new counsel, who filed notices of appearance on June 15, 2026

### d. DEFENDANTS' CONCLUSION

Defendants submit that the current volume and schedule present a practical and proportionality issue, not a lack of diligence. Even after application of threading and related analytics, certain Defendants continue to face review populations in the hundreds of thousands of documents. It is simply not possible to review hundreds of thousands of documents in approximately two weeks, particularly where the review must include responsiveness determinations, privilege review, confidentiality designations, and preparation for production. Counsel representing multiple Defendants may face an even larger aggregate review burden.

Defendants remain committed to working cooperatively with Plaintiffs to narrow the search terms and reduce the review populations to a reasonable and proportional scope. Defendants intend to continue meeting and conferring with Plaintiffs regarding search-term refinements, analytics, threading, deduplication, and other methods to reduce the volume of documents requiring review. However, absent meaningful narrowing or an adjustment to the current schedule, it will not be possible to complete a reasonable review and production of these volumes by the current June 29, 2026, deadline.

Additionally, there remain open questions regarding the proper scope of nationwide discovery, including issues that may depend in part on the Court's interpretation of the PACT Act penalty provisions, which have now been fully briefed.

Lastly, from Defendants' perspective, there remain outstanding significant third party document productions. Defendants served subpoenas on the New York Department of Health and the New York Department of Taxation and Finance at the beginning of March 2026. While both Departments have started their rolling document productions, to date, neither Department has completed its production. Moreover, the Department of Taxation and Finance has claimed that virtually all of the responsive documents it has identified to date are covered by the deliberative process privilege, despite the fact that the Department of Taxation and Finance has not yet complied with the requirements to validly invoke that privilege, including by producing a declaration from the Acting Tax Commissioner supporting the invocation of the privilege. Counsel for Defendants is continuing to meet and confer with both Departments regarding these issues, but anticipates that they will not be fully resolved by June 29, 2026, as neither Department even yet claims that its production is complete, which will be a pre-requisite to resolving the remaining deliberative process privilege issues.

Defendants intend to continue meeting and conferring regarding the current search terms, hit counts, potential refinements, and the use of analytics to reduce the review populations where appropriate. Defendants respectfully submit that, given the current document volumes and the June 29, 2026 deadline, a conference with the Court would be useful to discuss the practical issues raised by the current hit counts and to establish a workable schedule for completion of email/text-message review and production.

## II.    STATE'S POSITION

It is the State's position that Defendants have patently misstated the status of Defendants' discovery. The State raises this concern for two primary reasons. First, and most alarming, Defendants have not yet even begun a **review** of communications to produce. Instead, we are still

conferring over data analytics. Moreover, at the recent conferrals with Safa, Magellan and Demand Vape and their e-discovery vendor (who joined at our request), we learned that the search term reports provided so far (Myle Defendants and Puff Bar Defendants have not provided reports) likely contain inflated results, and therefore the high number of hits are not realistically indicative of burden or proportionality. As of June 12th, Defendants had not run analytics on the emails collected (including email threading, metadata and text searches, and potential bulk-coding opportunities), and as a result the parties do not have accurate metrics to assess the quality of the hits for the searches conducted, the extent the search results are inflated, and whether any of the search queries should be narrowed to reduce burden. In short, Defendants are still trying to figure out the world of responsive emails to begin reviewing for production.

Second, Defendants still have not articulated to the State a proposed plan for completing discovery, let alone a timeline to expect a production of documents responsive to requests for which no search terms are required and that remain outstanding. *See* State's June 1, 2026 Letter (ECF No. 182).

Accordingly, while the State is remiss to have to write this update in this negative manner, we are deeply concerned by Defendants' ongoing dilatory conduct. As such, we respectfully request Court intervention, and a Court conference, as it is clear that we need more oversight over Defendants' discovery conduct. The State can be available this week. Lastly, the State is gravely concerned and frustrated that it did not receive Defendants' Joint Position, which includes blatant falsehoods concerning the State's conduct, until 9:42 p.m. this evening (on June 15th – the date of the Court's imposed deadline). Given the late hour, the State did not have the opportunity to refute each and every false statement or otherwise meaningfully address the State's concerns with Defendants. As a result, should the Court find it helpful, this Office can expand upon its concerns not otherwise mentioned herein, provide a more fulsome overview of each Defendant's production to date, and respond to the accusations leveled against the State by Defendants in this letter herein.

## III.    CITY'S POSITION

The City's position does not differ from the State's in any material respect. The City echoes the State's concerns that Defendants have not even begun a review of documents or explained to Plaintiffs the quality of the documents that the search terms are returning. The City agrees with the State that Court intervention and a Court conference is needed to ensure that meaningful discovery occurs in this case.

Respectfully submitted,

/s/ *Lesley Brovner*

Lesley Brovner
Mark G. Peters
Madison A. Kucker
PETERS BROVNER LLP
*Counsel for Safa Goods, LLC*

9

*On behalf of All Parties*