

ATLANTA | CHICAGO | CINCINNATI | CLEVELAND
COLUMBUS | DAYTON | LOS ANGELES | MINNEAPOLIS
NEW YORK | SILICON VALLEY | WASHINGTON, D.C.

*VIA ECF*

July 29, 2026

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> RE: *State of New York v. Puff Bar, et al.*, Civil Action No. 25-cv-1445-MMG; *City of New York v. Puff Bar, et al.*; Civil Action No. 25-cv-02850-MMG
> Defendants' Letter Motion for Clarification Regarding the Scope of Nationwide Sales Discovery Pursuant to the Court's July 6, 2026 Oral Ruling

Dear Judge Garnett:

The undersigned are counsel for Defendants 10 Days, Inc., Ecto World LLC, Magellan Technology Inc., Midwest Goods Inc., SV3, LLC, and Safa Goods LLC and on behalf of those parties and Defendants YLSN Distribution, Inc., Myle Vape Inc., MVH I, Inc., Puff Bar, Evo Brands, LLC, and PVG2, LLC (collectively, "Defendants"), respectfully submit this letter motion for clarification because the Parties appear to have reached an impasse regarding the scope of nationwide discovery that the Court has directed is to be allowed pursuant to the Court's July 6, 2026 oral ruling.

Defendants understood the Court's ruling to clearly distinguish between nationwide discovery relevant to the calculation of PACT Act civil penalties and broader nationwide discovery sought for liability purposes. Specifically, the Court explained during the July 6, 2026 virtual hearing that Plaintiffs were entitled to nationwide discovery "only inasmuch as it relates to the dollar amount of a company's gross sales nationwide," and further observed that such discovery should be "relatively narrow and easy for defendants to produce." July 6, 2026 Hrg. Tr. at 18:10-16. The Court also explained that out-of-state discovery remains relevant only where it bears "a proven connection to in-jurisdiction sales or to arguments that the plaintiffs are raising about the elements they have to prove for the in-jurisdiction statutory violations." *Id*. at 18:4-9.

Defendants understood the Court's directives to mean that nationwide discovery related to PACT Act civil penalties is limited to nationwide gross sales data, while broader nationwide discovery for liability purposes must satisfy the specific standard articulated by the Court. That standard, however, has led the Parties to differing interpretations regarding the categories of nationwide discovery that remain appropriate. Defendants understand the Court's ruling as requiring a demonstrated connection between the requested discovery and New York-specific conduct or a demonstrated connection to a required legal element of Plaintiffs' remaining claims.

Eric.Heyer@thompsonhine.com  Fax: 202.331.8330  Phone: 202.263.4128

THOMPSON HINE LLP
ATTORNEYS AT LAW

1999 K Street NW, Suite 600
Washington, D.C. 20006

www.ThompsonHine.com
O: 202.331.8800
F: 202.331.8330



July 29, 2026
Page 2

The State, by contrast, appears to interpret the Court's ruling as permitting broad nationwide transaction-level, customer-level, distribution, and operational discovery without any further limitation or restriction. To make the disagreement concrete, it is not even clear whether the State would concede that a communication between a defendant that is not based in New York and a customer in Nevada that both happen to be members of an industry trade group about the customer's order to be shipped to Nevada or between the defendant and the carrier for that shipment is outside the scope of discovery that the Court has authorized. Likewise, it is not clear that the State would concede that the invoice or shipping records for such a transaction or any Nevada-specific pricing or promotional plans pursuant to which the customer placed the order are outside the scope of discovery that the Court has authorized.

On July 20, 2026, Defendants requested that the State meet and confer for the very purpose of discussing the implementation of the Court's July 6, 2026 ruling for the remaining discovery requests that are nationwide in scope and in response to which Defendants have lodged overbreadth and relevance objections. Instead of agreeing to meet and confer with Defendants, however, on July 21, 2026, the State responded by asserting that the Court's April 27, 2026 order "makes plain that the Court agrees that nationwide discovery is . . . appropriate" and by demanding that Defendants "advise by July 23 if Defendants are refusing to comply with the Court's April 27, 2026 Order, and claiming that the State is not entitled to nationwide discovery." In short, the State did not indicate that it was willing to meet and confer regarding the implications of the Court's July 6, 2026 ruling, but insisted instead that there was nothing further to discuss regarding the issue of nationwide discovery.

Attached hereto is an Appendix listing all requests for production in response to which Defendants have lodged objections based on overbreadth and/or relevance because they understand the scope of the requests to extend far beyond the limited scope that the Court has permitted pursuant to its July 6, 2026 ruling. To date, the State has not explained to Defendants how it believes the non-New York scope of each request satisfies the standard for non-New York discovery the Court established in its July 6, 2026 ruling. Rather, as noted above, the State has refused to further meet and confer on this topic. Defendants respectfully request that the Court clarify its ruling and provide more specific guidance regarding the scope of documents and information that Defendants must provide in response to each request set forth in the Appendix.

We regret that Defendants have to bother the Court with this degree of minutiae regarding this discovery dispute and sincerely thank the Court for its consideration of this request.

Defendants also intend to submit by tomorrow a letter responding to several of the misstatements and mischaracterizations found in the State's July 24, 2026 letter.



July 29, 2026
Page 3

Respectfully submitted,

*/s/ Eric N. Heyer*
Eric N. Heyer
Joseph A. Smith
James C. Fraser
Anna M. Stressenger
Ryan D. Callinan
Irvin Hernandez
Thompson Hine LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
T: 202-331-8800
F: 202-331-8330
eric.heyer@thompsonhine.com
joe.smith@thompsonhine.com
james.fraser@thompsonhine.com
anna.stressenger@thompsonhine.com
ryan.callinan@thompsonhine.com
irvin.hernandez@thompsonhine.com

*Counsel for Ecto World LLC d/b/a Demand
Vape, Magellan Technology, Inc., Midwest
Goods, Inc. d/b/a Midwest Distribution
Illinois, 10 Days, Inc. d/b/a Pod Juice, and
Safa Goods LLC, SV3 LLC.*

*And on behalf of Defendants YLSN
Distribution, Inc., Myle Vape Inc., MVH I,
Inc., Puff Bar, Evo Brands, LLC, and PVG2,
LLC*

cc:   All counsel of record (via ECF)

# APPENDIX

## REQUESTS FOR PRODUCTION SUBJECT TO A NEW YORK-NEXUS OBJECTION

**To All Defendants:**

**REQUEST FOR PRODUCTION NO. 5:** All Documents and Communications concerning board of director meetings.

**REQUEST FOR PRODUCTION NO. 9:** All Documents and Communications concerning Your purchases of Flavored E-Cigarettes during the Time Period, including the following information: (a) seller's name; (b) seller's telephone number; (c) seller's complete billing address; (d) seller's complete shipping address; (e) date of purchase; (f) date of shipment; (g) description, brand, model number, quantity, flavor, and unit price of each Flavored E-Cigarette purchased; (h) breakdown of total purchase price including shipping and handling fees, discounts applied, and taxes paid; (i) shipping method; (j) package weight; and (k) delivery/shipping provider.

**AMENDED REQUEST FOR PRODUCTION NO. 10:** All Communications with any Flavored E-Cigarettes competitor (other entities that provide similar products or services as You), including any other Defendant, concerning (i) sales and purchasing strategies; (ii) legal compliance; (iii) marketing strategies; (iv) pricing; (v) sales territories; (vi) Defendants' respective market share and/or geographic reach; (vii) lobbying efforts; and (viii) the health impact of Flavored E-Cigarettes.

**REQUEST FOR PRODUCTION NO. 12:** All invoices for Flavored E-Cigarettes purchased by You.

**REQUEST FOR PRODUCTION NO. 14:** All shipping records, including without limitation invoices, bills of lading, customs bonds, certificates of origin, and shipping labels, for Flavored E-Cigarettes You have purchased.

**REQUEST FOR PRODUCTION NO. 15:** All Documents and Communications concerning Representations You made to any Person Concerning the safety, benefits, potential harms, and other effects of Flavored E-Cigarettes.

**REQUEST FOR PRODUCTION NO. 16:** All Documents and Communications concerning Representations You made to any Person Concerning Your Policies and Procedures, practices, and the efficacy thereof, of age restrictions on the sales of Your Flavored E-Cigarettes.

**AMENDED REQUEST FOR PRODUCTION NO. 17(b):** All Documents and Communications between You and Any distributor and/or wholesaler concerning Your purchase and/or sale of Flavored E-Cigarettes from said distributor and/or wholesaler, including any contracts or Agreements.

**AMENDED REQUEST FOR PRODUCTION NO. 17(c):** All Documents and Communications between You and Any (i) importer of record, (ii) buyer and/or consignee of products being imported, or (iii) customs broker concerning the services provided to You for Your Flavored E-Cigarettes, including any contracts or Agreements.

1

**AMENDED REQUEST FOR PRODUCTION NO. 17(d):** All Documents and Communications between You and Any (i) fulfillment center, (ii) drop-shipping supplier, (iii) distribution center, or (iv) warehouse concerning the use of such centers, suppliers, or warehouses for Your Flavored E-Cigarettes, including any contracts or Agreements.

**AMENDED REQUEST FOR PRODUCTION NO. 17(e):** All Documents and Communications between You and Any (i) shipping, (ii) transportation, (iii) delivery, or (iv) logistics company concerning the services provided to You for Your Flavored E-Cigarettes, including any contracts or Agreements.

**REQUEST FOR PRODUCTION NO.  18:** To the extent not produced in response to RFP No. 17, all sourcing, distributor, and digital marketing Agreements, formal, informal, or otherwise.

**REQUEST FOR PRODUCTION NO.  19:** All Documents and Communications to and from You or any board member, officer, or Employee and any vape industry business or trade association or membership group and/or its members concerning safety, compliance, ongoing legal actions, regulatory actions, Marketing and Promotions, sale, and/or distribution of Flavored E-Cigarettes.

**AMENDED REQUEST FOR PRODUCTION NO. 20:** All Documents and Communications simultaneously sent and/or received to multiple recipients, including group chats or listserve Communications using any platform or service provider concerning (i) sales and purchasing strategies; (ii) legal compliance; (iii) marketing strategies; (iv) pricing; (v) sales territories; (vi) Defendants' respective market share and/or geographic reach; (vii) lobbying efforts; and (viii) the health impact of Flavored E-Cigarettes.

**AMENDED REQUEST FOR PRODUCTION NO. 22:** All Documents and Communications concerning the purpose of Your visits to or meetings with suppliers or manufacturers or potential suppliers or manufacturers of Your Flavored E-Cigarettes.

**AMENDED REQUEST FOR PRODUCTION NO. 23:** All Documents and Communications with suppliers and/or manufacturers or potential suppliers or manufacturers concerning the product development, branding, promotion, Marketing, supply, demand, and pricing of Your Flavored E-Cigarettes.

**REQUEST FOR PRODUCTION NO. 27:** All formal or informal Marketing and Promotion and sales plans used by You concerning Your Flavored E-Cigarettes.

**REQUEST FOR PRODUCTION NO.  28:** All Documents and Communications concerning branded and unbranded Advertising materials and Marketing and Promotion materials used by You relating to Any of Your Flavored E-Cigarettes, including without limitation materials prepared for:

a. Traditional and digital media outlets and publications (e.g., television, print, radio);
b. Internet websites;
c. Apps or any application or type of software that can be installed and run on a computer, tablet, smartphone, or other electronic device;

d. Email;

e. Text Message or Instant Message;

f. Online influencers, including without limitation official or unofficial brand ambassadors;

g. Social Media outlets/platforms (e.g., Facebook, Instagram, Twitter, X, YouTube, TikTok, Reddit, Twitch, Discord, Bluesky, etc.); and

h. Tradeshows or conventions

Your response should include, at a minimum, a copy of each such Advertisement, Marketing and Promotion materials, including documentation showing target audiences, publish and run dates, and final ad result metrics.

**REQUEST FOR PRODUCTION NO.  29:** All Documents and Communications concerning branded apparel, merchandise, or swag related to You or any Flavored E-Cigarette sold by You.

**REQUEST FOR PRODUCTION NO.  30:** All Documents and Communications concerning any premarket tobacco product application ("PMTA") submitted to the FDA, as well as any FDA order granting or denying premarket authorization.

**REQUEST  FOR  PRODUCTION  NO.   31:** All Documents and Communications, including Policies and Procedures concerning:

a. Compliance with all federal, state, and local laws Concerning Flavored ECigarettes,

including but not limited to the PACT Act reporting and registration (15 U.S.C. § 376), delivery sales (15 U.S.C. § 376a), and nonmailable deliveries (18 U.S.C. § 1716E) provisions; FDA regulations on tobacco products that may be legally marketed in the United States; and New York's Public Health Law §§ 1399-bb, 1399-bb-1, 1399-cc, 1399-ll, 1399-mm-1, and 1701;

b. Evaluation of Your customers' compliance with federal, state and local laws in the jurisdictions they sell or offer for sale Your Flavored E-Cigarettes;

c. Age verification;

d. Shipping labels;

e. Scientific Research on Flavored E-Cigarettes;

f. Appeal of Your Flavored E-Cigarettes to youth;

g. Advertising and Marketing and Promotion to youth;

h. Disposal of Flavored E-Cigarettes;

i. Environmental impact of Your Flavored E-Cigarettes; and

j. Third-party relationships, including without limitation advertisers, online influencers, Social Media platforms (e.g., Facebook, Instagram, Twitter, X, YouTube, TikTok, etc.), age verification service providers, and/or manufacturing/shipping/distribution partners.

**REQUEST FOR PRODUCTION NO. 32:** All Documents and Communications concerning any Flavored E-Cigarette recycling or buyback program You have or have had at any point during the Time Period.

**REQUEST FOR PRODUCTION NO. 35:** All Documents and Communications concerning complaints and/or grievances received by You concerning Underage Individuals' use of Your Flavored E-Cigarettes.

**REQUEST FOR PRODUCTION NO. 36:** All Document requests and/or inquiries from any government or regulatory agency concerning Flavored E-Cigarettes and Your responses thereto.

**REQUEST FOR PRODUCTION NO. 178:** All Documents sufficient to show, over the Time Period, separately for sales into and within New York and sales into and within the United States, Your profits from the sale of Flavored E-Cigarettes.

**REQUEST FOR PRODUCITON NO. 182:** All Documents and Communications concerning any website that You own, operate, or have used to offer, Market, Promote, or sell Flavored E-Cigarettes.

**REQUEST FOR PRODUCITON NO. 183:** All Documents and Communications concerning Your inventory of Flavored E-Cigarettes.

**REQUEST FOR PRODUCTION NO. 185**: All Documents and Communications concerning complaints and/or grievances received by You concerning Underage Individual's purchases of Your Flavored E-Cigarettes or Your sales of Flavored E-Cigarettes to Underage Individuals.

**Requests Specific to Puff Bar**

**REQUEST FOR PRODUCTION NO. 43:** All Documents and Communications concerning the Letter from the United States House of Representatives Committee on Energy and Commerce to Patrick Beltran and Nick Minas, dated March 22, 2022, including, but not limited to all Documents and Communications provided to said Committee.

**Requests Specific to Demand Vape**

**REQUEST FOR PRODUCTION NO. 87:** All Documents and Communications concerning preferential treatment, including heavily discounted pricing, early access to newly released products, custom designed and manufactured products (OEM), and specialized packaging to Demand Vape's benefit or potential benefit.

**REQUEST FOR PRODUCTION NO. 88:** All Documents and Communications with any representative for the manufacturer or foreign distributor of the Geek Bar or Spaceman brands of Flavored E-Cigarettes.

**Requests Specific to Magellan**

**REQUEST FOR PRODUCTION NO. 94:** All Documents and Communications concerning preferential treatment, including heavily discounted pricing, early access to newly released products, custom designed and manufactured products (OEM), and specialized packaging to Magellan's benefit or potential benefit.

**REQUEST FOR PRODUCTION NO. 95:** All Documents and Communications with any representative for the manufacturer or foreign distributor of the Geek Bar or Spaceman brands of Flavored E-Cigarettes.

**Requests Specific to Happy Distro**

**REQUEST FOR PRODUCTION NO. 97:** All Documents and Communications concerning the registration, assignment, ownership, or use of the Happy Distro trademark.

**REQUEST FOR PRODUCTION NO. 98:** All Documents and Communications concerning the relationship between YLSN Distribution Inc. and the following entities: DKSS Distribution Inc. FT Distro Inc., Happy Global Inc., and Golden Coast Distro Inc.

**REQUEST FOR PRODUCTION NO. 100:** All Documents and Communications concerning the role of Happy Distro as a "trusted partner" (as quoted from Your website) with any Flavored E-Cigarette manufacturer, including but not limited to all Documents and Communications concerning the basis for Happy Distro's claim to be a "trusted partner."

**REQUEST FOR PRODUCTION NO. 101:** All Documents and Communications concerning Your response (or lack thereof) to FDA enforcement efforts concerning Flavored E-Cigarettes sold or purchased by Happy Distro, including but not limited to (a) March 13, 2025 warning letter to FT Distro Inc.; (b) 2023 FDA import alert for Elf Bar; and (c) October 4, 2024 Letter from Ruben Gallego to Brian King.

**Requests Specific to Midwest Goods**

**REQUEST FOR PRODUCTION NO. 106:** All Documents and Communications concerning preferential treatment, including heavily discounted pricing, early access to newly released products, custom designed and manufactured products (OEM), and specialized packaging to Midwest Goods' benefit or potential benefit.

5

**REQUEST FOR PRODUCTION NO. 107:** All Documents and Communications with any representative for the manufacturer or foreign distributor of the Geek Bar or Spaceman brands of Flavored E-Cigarettes.

**REQUEST FOR PRODUCTION NO. 196**: All Documents and Communications concerning the offering, Marketing and Promotion, or selling of Flavored E-Cigarettes or Disposable Vapes through the website http://www.midwestgoods.com/ or any other website that at any time has offered, Marketed, Promoted, or sold any of Your products.

**Requests Specific to Pod Juice**

**REQUEST FOR PRODUCTION NO. 112:** All Documents and Communications concerning the concentration of nicotine in Your Flavored E-Cigarettes or Disposable Vapes, including but not limited to Documents and Communications concerning the percentage or level of concentration of nicotine which You aimed to achieve for any Pod Juice Flavored E-Cigarette or Disposable Vape product or potential product.

**REQUEST FOR PRODUCTION NO. 113:** All Documents and Communications concerning any consideration or effort(s) by You to create, manufacture, or distribute Your own brand of Flavored E-Cigarette or Disposable Vapes.

**REQUEST FOR PRODUCTION NO. 114:** All Documents and Communications concerning any consideration or effort(s) by You to enter into contracts and/or Agreements with other Flavored E-Cigarette or Disposable Vape companies to develop, manufacture, distribute or market co-branded Flavored E-Cigarette or Disposable Vapes.

**REQUEST FOR PRODUCTION NO. 115:** All Documents and Communications concerning the creation of or transfer of any portion of Your business to Headway Funding Inc. d/b/a Jewel Distribution, or any other Person who was considered or intended to carry on any part of Your Flavored E-Cigarette or Disposable Vape business.

**REQUEST FOR PRODUCTION NO. 116:** All Documents and Communications concerning the offering, Marketing and Promotion, or selling of Flavored E-Cigarettes or Disposable Vapes through the websites JewelDistribution.com, podjuice55.com, or any other website that at any time has offered, Marketed, Promoted, or sold any of Your products.

**Requests Specific to Safa Goods**

**REQUEST FOR PRODUCTION NO. 120:** All Documents and Communications concerning the expansion of Your domestic wholesale Flavored E-Cigarette business, including but not limited to acquisitions of additional distribution centers.

**REQUEST FOR PRODUCTION NO. 122:** All Documents and Communications concerning the offering, Marketing and Promotion, or selling of Flavored E-Cigarettes or Disposable Vapes

6

through the website safagoods.com or any other website that at any time has offered, Marketed, Promoted, or sold any of Your products

**REQUEST FOR PRODUCTION NO. 123:** All Documents and Communications concerning the registration, assignment, ownership, or use of any Raz brand trademark.

**REQUEST FOR PRODUCTION NO. 124:** All Documents and Communications concerning Your use of the trademarks relating to any of the Flavored E-Cigarettes You sell and/or offer for sale.

**Requests Specific to Mi-One**

**REQUEST FOR PRODUCTION NO. 126:** All Documents and Communications concerning the offering, Marketing and Promotion, or selling of Flavored E-Cigarettes or Disposable Vapes through the websites mipod.com and mipodwholesale.com, vaping.com, or any other website that at any time has offered, Marketed, Promoted, or sold any of Your products.

**REQUEST FOR PRODUCTION NO. 127:** All Documents and Communications concerning Your relationship to Any entities that manufacture Mi-One-branded Flavored E-Cigarettes and Disposable Vapes.