**ZAYROV LAW, P.C.**
3400 Lawson Blvd., Oceanside, NY 11572 | (347) 335-5723 | zayrovlaw@gmail.com

***VIA ECF*** October 9, 2026

Hon. Valerie Figueredo,
United States Magistrate Judge,
Southern District of New York
500 Pearl Street, New York, NY 10007

**Re: *People of the State of New York v. Puff Bar, et al.*, No. 25-cv-1445 (MMG) (VF);**
***City of New York v. Puff Bar, et al.*, No. 25-cv-2850 (MMG) (VF):**
**Myle Defendants' Confidentiality Designations (State ECF No. 239; City ECF No. 143)**

Dear Judge Figueredo:

This firm represents Defendants MYLÉ Vape Inc. and MVH I, Inc. (together, "Myle"), and writes pursuant to the Court's September 25, 2026 Order. Docket citations are to No. 25-cv-1445. Most of the categories Myle designates below are materials the Protective Order itself identifies as eligible for Attorneys' Eyes Only ("AEO") treatment; the rest are designated Confidential. The need for them comes from a fact particular to this case: the parties entitled to see Confidential material include the business personnel of Myle's competitors and customers, its co-defendants.

**1. The designations**

Myle has reviewed the 837 documents referenced in the September 17 Joint Letter (ECF No. 234, the "Joint Letter") and on October 8, 2026, served an overlay de-designating the vast majority of them, including the product images and marketing photographs the State identified. With regard to the following:

- **Supply and manufacturing agreements; freight agency agreement (AEO).** Unit costs, minimum order quantities, payment and exclusivity terms, and the identity of each manufacturer. These are the "supplier/vendor contracts" the Protective Order names. Protective Order ¶ 5.
- **Invoices, purchase orders, and customer-level sales data (AEO).** What each customer buys, in what quantity, and at what price, the "sales, purchase, or pricing data" of ¶ 5.
- **PACT Act reports (AEO).** Each customer's name, address, and quantities shipped, in effect a ready-made "customer list." *Id.*
- **Bills of lading and shipping records, incoming and outgoing (AEO).** Myle's manufacturers, shipping routes, volumes, and consignees, tracing its supply chain from factory to customer.
- **Company financial records (AEO).** Financial statements and revenue, cost, margin, and profit data showing Myle's cost structure and profitability by product and period.

- **Product design, formulation, and development documents (AEO).** Non-public specifications and development plans, which ¶ 5(iv) expressly covers.
- **Internal records: marketing plans, strategy, policies, and organization (AEO or Confidential).** How Myle plans, markets, and manages its business. These are AEO where they contain pricing, supplier, or customer terms, and Confidential otherwise.
- **Personal information of consumers and employees (Confidential at minimum).** Names, home addresses, contact details, and age-verification data of non-parties, wherever it appears.

For most of these categories the protected information is not a passage within the document but the document itself. An invoice stripped of the customer, the products, the quantities, and the price is a blank form, and a supply agreement without its price, volume, and counterparty terms says nothing. Redacting these records line by line would impose a substantial and unwarranted burden on Myle, yield filings of little use to the Court or the public, and still fail to prevent the aggregate harm described below.

The parties have agreed that PMTA materials qualify for AEO treatment. Joint Letter at 18-19.

**2. The designations are necessary to avoid clear competitive disadvantage**

The State's chief objection is that designations limit how documents may be used, and that "there is a strong public interest in transparency." That objection conflates two questions:

I. Whether discovery material may carry a designation is governed by Rule 26(c) and the Protective Order.
II. Whether a document later filed may be sealed is governed by *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

Discovery exchanged between parties is not public. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("pretrial depositions and interrogatories are not public components of a civil trial").

On the first question, the Protective Order reserves AEO for "trade secrets or sensitive commercial information which if disclosed would cause substantial injury to the competitive position of the producing party," and names "sales, purchase, or pricing data," "customer lists," and "supplier/vendor contracts" as examples. ECF No. 119 ("Protective Order") ¶ 5; *see* Fed. R. Civ. P. 26(c)(1)(G). Myle's agreements, invoices, sales data, PACT Act reports, and shipping records are those materials. The AEO tier exists for this reason: the defendants proposed it because they compete in the same industry, and Judge Garnett adopted it with the list quoted above after the parties litigated the issue.

Confidential material may be shown to the "officers, directors, and employees" of every party. Protective Order ¶ 9(b). AEO material is limited to counsel. *Id.* ¶ 6. Myle's co-defendants include competing e-cigarette brands, and distributors that buy from Myle and from its competitors. Without the AEO tier, a competing brand's executives could read what Myle pays its manufacturers, and a distributor's buyers could read what Myle charges every other distributor. Myle keeps this information from everyone outside the company and restricts it internally.

The harm is also cumulative. One invoice or bill of lading records a single transaction and may reveal little, but a competitor would see the whole production. Together, Myle's invoices, PACT Act reports, and shipping records are its customer list, its price list, and a map of its supply chain: who manufactures its products, on what terms, how they are shipped, and which distributors receive them. A competitor could use that picture to go directly to Myle's manufacturers, undercut its prices, or court its distributors.

Some records also identify individual people such as consumer sales records, together with age-verification and customer-service records, contain consumers' names, home addresses, contact details, and in some cases dates of birth, and internal records contain employees' personal information. These non-parties have no stake in this case, and their privacy interests "should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995). In *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (*Amodeo II*), the U.S. Court of Appeals for the Second Circuit established that the privacy interests of innocent third parties weigh heavily as a countervailing factor against the common-law and constitutional presumption of public access to judicial documents.

The State's own authority frames the test as a balance of "the risk of economic harm to the producing party against the requesting party's need for the information," and it denied AEO protection where the recipient was "not a business competitor." *Multi-State P'ship for Prevention, LLC v. Kennedy*, No. 24-CV-00013 (JMW), 2024 WL 5146067 (E.D.N.Y. Dec. 17, 2024). Both factors favor Myle: AEO excludes competitors, and Plaintiffs' counsel and experts have every document. *See Nanjing CIC Int'l Co. v. Schwartz*, No. 6:20-CV-07031 (EAW) (CDH) (W.D.N.Y. June 17, 2025) (maintaining AEO designation of customer-level sales reports where the recipient was a direct competitor).

The injury Myle faces is concrete. Several co-defendants are brands that compete with Myle for the same distributors and retail accounts, and others are distributors that carry Myle's competitors. A co-defendant brand that learned Myle's unit costs and minimum order quantities could go to the same manufacturers and bargain against Myle's own terms. With Myle's customer-level prices, it could undercut Myle account by account. A co-defendant distributor would learn what Myle charges its rivals and could use that knowledge in its own purchasing, or pass it to the competing brands it carries. That is the "substantial injury to the competitive position of the producing party" the AEO tier exists to prevent. Protective Order ¶ 5. Courts maintain AEO protection in exactly this setting, where the party seeking access is a direct competitor. See Nanjing CIC Int'l Co. v. Schwartz, No. 6:20-CV-07031 (EAW) (CDH) (W.D.N.Y. June 17, 2025) (maintaining AEO designation of customer-level sales reports where the recipient was a direct competitor); cf. Multi-State P'ship for Prevention, LLC v. Kennedy, No. 24-CV-00013 (JMW), 2024 WL 5146067 (E.D.N.Y. Dec. 17, 2024) (denying AEO protection where the recipient was "not a business competitor"). The harm also cannot be undone once it happens. A competitor that has seen Myle's pricing and supplier terms cannot unlearn them, and no later order would restore Myle's position. See Skyline Steel, LLC v. PilePro, LLC, 101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015) (protecting non-public sales and pricing information); W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A., 2022 WL 890184, at *2-3 (S.D.N.Y. Mar. 25, 2022) (protecting pricing, purchase quantity objectives, and payment terms in a distribution agreement).

### 3. Sealing under *Lugosch*

No presumption of public access attaches to these documents now. *Lugosch* applies to "judicial documents," meaning items filed with the Court that are "relevant to the performance of

the judicial function and useful in the judicial process." 435 F.3d at 119 (quotation omitted). Documents "passed between the parties in discovery, lie entirely beyond the presumption's reach." *Amodeo*, 71 F.3d at 1050. Material placed before a court only so it can decide whether that material is protected is not a judicial document either. *See Brown v. Maxwell*, 929 F.3d 41, 50 n.33 (2d Cir. 2019).

The weight of the presumption depends on the document's role, and it is "generally somewhat lower" for a discovery dispute than for a dispositive motion. *Brown*, 929 F.3d at 50. Against that presumption, courts in this District, including this Court, "routinely permit[] parties to seal or redact commercially sensitive information in order to protect confidential business and financial information." *In re B&C KB Holding GmbH*, No. 22-mc-180 (LAK) (VF), 2023 U.S. Dist. LEXIS 27090, at *3 (S.D.N.Y. Feb. 14, 2023). They protect the information mentioned above. *See W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, 2022 WL 890184, at *2-3 (S.D.N.Y. Mar. 25, 2022) (pricing lists, purchase quantity objectives, and payment terms in distribution agreement). Where a filed document can be meaningfully redacted, Myle will redact it; where, as with invoices and supply agreements, the sensitive terms are the document, sealing it is the "narrowly tailored" remedy, *Lugosch*, 435 F.3d at 120 (quotation omitted), and the Protective Order provides for it. Protective Order ¶ 25. Just like in *B&C KB Holding*, 2023 U.S. Dist. LEXIS 27090, at 3*, the court should found here that a private company's privacy interest in its internal, non-public financial condition and operational details heavily outweighs the "modest" presumption of public access attached to discovery-related motions.

**4. Age**

Courts consider staleness, but age is a factor, not a cutoff, and old business information is not harmless merely because it is old. The question is whether it still reveals current relationships, pricing, or strategy. *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."); *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19 Civ. 9193 (PGG) (SLC) (S.D.N.Y. May 6, 2025) (age of information more than ten years old "does not undermine" sealing); *Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2009 U.S. Dist. LEXIS 11504, at *28 (S.D.N.Y. Jan. 30, 2009) (business plans at least six years old "remain competitively sensitive"). The dividing line is between a closed business and an operating one. *Valassis*, 2020 WL 2190708 (unsealing a closed unit's "five to ten year-old financial metrics" while protecting those of a party that "continues to participate in" the market).

Myle is an operating business which continues to participate in the global vape market: its supply agreements remain in force, its manufacturers remain its current suppliers, and the customers in its older invoices continue to buy from it today. Its commercial information therefore stays sensitive whatever its date. Myle keeps and wins customers by building on the pricing and supplier terms in its older records. Several years of that data show a competitor the trend behind today's prices and margins.

**5. Use at depositions**

The State's concern that AEO documents cannot be shown to deposition witnesses does not require de-designation. Myle's AEO documents may be shown to any current or former Myle

officer or employee, to any author or recipient, and to the Plaintiffs' retained experts. For any other witness, Myle joins the 48-hour notice procedure the defendants proposed on September 9.

**6. Samples for in camera review**

Given the sensitivity of these documents, Myle has not filed samples on the public docket. With the Court's permission, Myle will promptly provide representative samples of each category for in camera review, by e-mail to Chambers or as the Court otherwise directs. The Myle Defendants respectfully request that the Court sustain these designations.

Respectfully submitted,
**ZAYROV LAW, P.C.**

*/s/ Manny Zayrov,*
*Attorney for the Myle Defendants*