THOMPSON HINE

ATLANTA | CHICAGO | CINCINNATI | CLEVELAND
COLUMBUS | DAYTON | LOS ANGELES | MINNEAPOLIS
NEW YORK | SILICON VALLEY | WASHINGTON, D.C.

October 9, 2026

*Via ECF, with Enclosures Submitted Via Email to:*
*FigueredoNYSDChambers@nysd.uscourts.gov*

Hon. Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *State of New York v. Puff Bar, et al.*, No. 25-cv-1445-MMG
(Related Case: *City of New York v. Puff Bar, et al.*, No. 25-cv-02850-MMG)
**Letter and Samples of Types of Documents Labeled AEO or Confidential Per September 25, 2026 Order (ECF No. 239)**

Dear Magistrate Judge Figueredo:

Pursuant to your September 25, 2026 Order ("Order"), 25-cv-1445 ECF No. 239, 1:25-cv-02850 ECF No. 143, the undersigned respectfully submits, on behalf of Defendant SV3, LLC ("SV3"), this letter explaining the necessity of designating certain documents in its document production as "Attorneys' Eyes Only" ("AEO") and "Confidential" and, per the Court's direction, addressing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). SV3 is submitting separately via email to the Court and opposing counsel a declaration from Geoff Habicht in support of the designations and samples of the types of documents SV3 has designated as AEO or Confidential.[1]

As a threshold matter, the Parties previously litigated before Judge Garnett prior to her entry of the Protective Order the question of whether certain documents could be designated "AEO" or "Confidential" and the types of documents to which such designations could apply. *See* ECF Nos. 111, 112, 117, 118, and 119. A primary point of dispute at that time was the inclusion of an "AEO" designation, which Defendants collectively proposed based on their concern that as the defendants compete in the same industry, the sharing of commercially sensitive pricing, sales, purchase, customer, and vendor/supplier information would present potential harm to each defendant if misused or improperly shared. This was particularly the case for information that, in the aggregate, would provide a competitor or third party with complete information as to a particular defendant's pricing or sales strategy, customers, and/or suppliers/vendors. Ultimately, Judge Garnett entered the Protective Order to include the "AEO" designation and specifically identified categories of documents that warranted the designation, including: "(i) commercial

[1] Given the number of documents produced, and the breadth of Plaintiff's discovery requests, the documents submitted herewith are intended to be indicative of the types of documents SV3 has designated as "AEO" or "Confidential", but not exhaustive, as the exact form of document may vary, as may the date when it was created.

THOMPSON HINE



information, such as sales, purchase, or pricing data; (ii) customer lists; (iii) supplier/vendor contracts; and (iv) product design and ingredient information not subject to public disclosure pursuant to 10 NYCRR 1006.3." ECF No. 119. This list was illustrative and not exhaustive.

Judge Garnett's entry of the Protective Order should have resolved that dispute, and the Second Circuit has made clear that such an order should not be readily revisited. "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'" *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). There is, accordingly, "a strong presumption against the modification of a protective order." *Id*. at 229. That presumption reflects the "vital function" that protective orders serve in "'secur[ing] the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant," an objective that "represents the cornerstone of our administration of civil justice." *Id.* (quoting *Martindell*, 594 F.2d at 295). As the Second Circuit explained, "if previously-entered protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future." *Id.* at 229-30. For these reasons, "[i]t is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied," as such modifications "unfairly disturb the legitimate expectations of litigants." *Id.* (citing *Palmieri v. State of New York*, 779 F.2d 861, 865 (2d Cir. 1985)).

Those principles apply squarely here. The scope of the "AEO" and "Confidential" designations was the subject of the parties' briefing before Judge Garnett, and Judge Garnett resolved that dispute by entering the Protective Order, which expressly identifies the categories of documents warranting "AEO" treatment. *See* ECF No. 119. In reliance on that Order, Defendants have produced tens of thousands of documents, some bearing "AEO" and "Confidential" designations, with the assurance that the commercially sensitive information in those documents would be protected as the Order provides. Plaintiff has not moved to amend or modify the protective order, has not sought reconsideration of its terms by Judge Garnett, and has not identified any extraordinary circumstance or compelling need that would warrant revisiting it. Requiring Defendants to re-justify, category by category, designations the Protective Order already authorizes would, in effect, modify the Protective Order and disturb the very expectations on which SV3's production was based. SV3 therefore respectfully submits that its designations should be maintained on this basis alone. Nonetheless, in compliance with the Court's Order, SV3 sets forth below the categories of documents it has designated and the reasons those designations are warranted.

The categories as to which SV3 seeks to maintain the "AEO" designation through discovery include:

- Sales data, both in composite form, and individual invoices;

- Purchase data, both in composite form, and individual invoices and/or purchase orders;

- PACT Act Reports;

- Shipping information and related documents for outgoing and incoming shipments;

- Company financial documents, including documents relating to revenue, costs, and profit;

- Documents related to the development of new, different, or unique products; and

- FDA submissions and related documents and communications.

All the above categories of documents, and communications related to them, not only fall squarely within the identified categories of the Protective Order but also contain commercially-sensitive and proprietary information relating to SV3's operations, sales, and purchases, pricing, customers, suppliers/vendors, and strategy. For example, the sales data has been produced in a composite form, which identifies, *inter alia*, SV3's customers, the products sold, the price charged, and the date of sale. Similarly, the PACT Act reports produced identify SV3's customers, products sold, and date of sale. While individual invoices on their own may only identify one sale to one customer, in the aggregate, they identify the full picture of SV3's customers, the prices charged, products sold, volume of products sold, and dates of sale. Likewise, shipping information and customer licenses, which individually may provide information only as to one transaction, in the aggregate provide a competitor or third party a complete view into SV3's operations, sales, and customers, all of which are valuable information to a competitor that could use that information to obtain new customers and compete against SV3. *See Nanjing CIC Int'l Co. Ltd. v. Schwartz*, No. 6:20-CV-07031-EAW-CDH, 2025 U.S. Dist. LEXIS 115568, at *20-21 (W.D.N.Y. June 17, 2025) (denying motion to require de-designation of invoice information marked as AEO as revealing the information to competitor plaintiff "would, in the aggregate, reveal key information about customers' order histories, allowing Plaintiff and other potential competitors to understand the volume and frequency at which [Defendant]'s customers order products").

Purchase data, invoices, and shipping information, along with the related communications, similarly provide a competitor, including the other defendants, with insight into SV3's operations, purchase pricing, and suppliers. Such information is valuable to competitors for purposes of obtaining better pricing (thereby being able to offer better or lower pricing than SV3) as well as

identifying and obtaining suppliers that would allow them to obtain products directly from the supplier rather than from SV3 or SV3's downstream customers.

The last two categories of documents relate to product development and design, which are commercially sensitive information as a competitor may be able to use this information to develop the same or similar products.

The categories of documents that SV3 asserts should remain confidential through discovery include the above-identified categories of documents and related communications, as well as the the following categories of documents[2]:

- Customer licenses and/or other documents provided by customers are part of demonstrating their ability to lawfully operate;
- Internal documents and communications relating to company operations, pricing, purchasing, sales, marketing, customers, suppliers/vendors, and or strategy;
- Agreements and related documents, invoices, and communications with vendors and service-providers; and
- Documents and related communications with third parties relating to pricing, purchasing, sales, customers, strategy, lobbying or legislative efforts.

These categories of documents, like those for which SV3 seeks to maintain the "AEO" designation, are commercially sensitive as they relate to SV3's operations, business practices, and strategies. Such information would be valuable to a competitor or third party as the documents provide insight into SV3's operations, structure, and decision-making as to pricing, purchasing, sales, and marketing. In essence, these documents would provide a third party with complete visibility into SV3's operations, allowing them to replicate or subvert SV3's business operations and efforts.

While paragraph 25 of the Protective Order instructs that parties are to submit materials designated as AEO or Confidential under temporary seal pending further order of the Court, justifying confidentiality designations for purposes of discovery is a distinct inquiry and involves a significantly lower burden under the terms of the Protective Order than justifying the permanent sealing of materials actually filed with the Court on a case-by-case basis, where the public interest in access to judicial proceedings comes into play. Only the former is at issue here, while *Lugosch v. Pyramid Co. of Onandaga* addresses the latter. Indeed, Discovery exchanged between parties is

[2] Additional documents that SV3 anticipates would receive a "Confidential" or "AEO" designation have not yet been produced; however, SV3 includes this list here as these documents may be included in upcoming productions.

THOMPSON HINE



generally not public. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial.").

Under *Lugosch*, the Second Circuit articulated a three-step test to determine whether the presumption of public access to judicial documents has been overcome before sealing or redacting a document. *CRC Ins. Servs., Inc. v. Suh*, No. 22-CV-9528 (AT) (JW), 2025 U.S. Dist. LEXIS 33451, at *2 (S.D.N.Y. Feb. 19, 2025). The Court (1) determines whether the documents are "judicial documents" useful in the judicial process; (2) if the documents are deemed judicial documents, the presumption attaches, and the Court then determines the weight of the presumption of public access; and (3) the Court balances the competing considerations against the presumption of access, including the "privacy interests of those resisting disclosure." *CRC Ins. Servs., Inc.*, at *2 (citing *Lugosch*, 435 F.3d at 119-20).

The Court must first consider whether the documents at issue are "judicial documents," which are items filed with the court that are relevant to the performance of judicial functions and useful in the judicial process. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). "Documents that are simply passed between the parties in discovery are not ordinarily considered judicial documents." *King v. Habib Bank Ltd.*, No. 20-CV-4322 (LGS) (OTW), 2025 U.S. Dist. LEXIS 9731, at * 12 (S.D.N.Y. Jan. 16, 2025) (citations omitted). When the documents at issue are not judicial documents, the presumption of public access to these documents is generally lower and the reasons to seal certain materials do not need to be as compelling. *Brown v. Maxwell*, 929 F.3d 41, 50 (2nd Cir. 2019).[3]

Established factors that can outweigh the presumption of public access include legal privilege, business secrecy, and privacy interests. *CBF Industria De Gusa S/A v/ AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2021 U.S. Dist. LEXIS 172220, at *8 (S.D.N.Y. Sept. 10, 2021) (citation omitted). Courts in this District "routinely permit parties to seal or redact commercially sensitive information in order to protect confidential business and financial information." *In re B&C KB Holding GmbH*, No. 22-mc-180 (LAK) (VF), 2023 U.S. Dist. LEXIS 27090, at *3 (S.D.N.Y. Feb. 14, 2023); *see also In re Dig. Music Antitrust Litig.*, 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017) (stating that "internal pricing strategies and competitive pricing data [are] sufficiently sensitive to warrant redaction" of judicial documents); *Hesse v. Sungard Sys. Int'l*, No. 12 Civ.1990 (CM) (JLC), 2013 U.S. Dist. LEXIS 7289, at *6 (S.D.N.Y. Jan. 14, 2013) (permitting the sealing of emails that included company's "billing rates and project pricing, as well as details of specific projects completed for several clients"); *Graczyk v. Verizon Communs., Inc.*, No. 18

[3] "[P]ublic interest in particular litigation does not generate a public right of access to all discovery materials. Indeed, no public right of access exists with respect to materials produced during the initial stages of discovery." *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

THOMPSON HINE



Civ. 6465 (PGG), 2020 U.S. Dist. LEXIS 50812, at *22 (S.D.N.Y. Mar. 24, 2020) (permitting redactions to contracts to protect sensitive financial information).

"The disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *In re City of New York*, 607 F.3d 923, 935 (2nd Cir. 2010). "The Second Circuit has explained that the 'purpose' of 'attorneys' eyes only' protection is to 'prevent a *party* from viewing the sensitive information while nevertheless allowing the *party*'s lawyers to litigate on the basis of the information' disclosed." *Flores v. Stanford*, No. 18 Civ. 02468 (VB)(JCM), 2021 U.S. Dist. LEXIS 185700, at *22 (S.D.N.Y. Sept. 28, 2021) (quoting *In re City of New York*, 607 F.3d at 935-36). "Courts commonly find that sales information is entitled to protection as either AEO or confidential." *Nanjing CIC Int'l Co. v. Schwartz*, No. 20-CV-7031EAW, 2023 U.S. Dist. LEXIS 189070, *13 (W.D.N.Y. Oct. 20, 2023). To determine whether documents should retain an attorneys'-eyes-only designation, the party seeking the designation "must show there is 'good cause' for the restriction . . . . To make this showing, the party seeking protection . . . must set forth specific facts showing that the information at issue is a trade secret or confidential and then demonstrate that" its disclosure may be harmful. *John Zink Co., LLC v. Zeeco, Inc.*, Case No. 25-cv-059-JDR-CDL, 2025 U.S. Dist. LEXIS 147774, at *8 (N.D. Okla. July 31, 2025) (citations omitted). Once this showing is made, the burden shifts to the party seeking discovery of this information to establish that the disclosure of the trade secret is relevant and necessary to the action. *Id.* (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)).

While the issue is premature, in addition to maintaining the "AEO" and "Confidential" designations for the documents submitted herewith and similar documents for purposes of discovery, good cause would also exist to seal those documents if some subset thereof were ultimately filed with the Court. As discussed above, the information SV3 seeks to protect concerns confidential business information, such as customer lists, marketing strategy, cost and profit structure, and internal operations that Defendant does not publicly disclose, and to which it limits access internally. When assessing "harms imposed by the disclosure of sensitive commercial information, courts consider whether the information is stale. The disclosure of old business information is not necessarily harmless, however." *See e.g., Grand River Enters. Six Nations v. King*, No. 02 Civ. 5068 (JFK), 2009 U.S. Dist. LEXIS 11504, at *28 (S.D.N.Y. Jan. 30, 2009) (upholding the district court's finding that business plans dated at least six years old, "even if historical, [] remain competitively sensitive"); *Encyclopedia Brown Prods. v. Home Box Office*, 26 F. Supp. 2d 606 (N.Y.S.D. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."); *Monterey Bay Mil. Hous., LLC v. Ambac Assur. Corp.*, No. 19 Civ. 9193 (PGG) (SLC), 2025 U.S. Dist. LEXIS 86407, at *13-14 (N.Y.S.D. May 6, 2025) (holding documents older than 10 years old should be sealed or redacted because the action had been pending for almost 8 years, claims arose from events and transactions dating back over 20 years, and the documents remained highly sensitive as they included information that the party had

THOMPSON HINE



consistently taken steps to protect and which remained competitively sensitive for the future). SV3's commercial information remains highly sensitive regardless of how old it is, as SV3 builds on this information to retain and obtain customers. Many of SV3's current customers and suppliers have been customers and suppliers for years. Further SV3's historic customers and suppliers may again become customers and suppliers in the future.

If a party is unable to establish good cause for an AEO designation of documents, the court can direct the party to change the designation from AEO to confidential. *Nanjing CIC Int'l Co.*, 2023 U.S. Dist. LEXIS 189070, at *21 (de-designating a version of a defendant's sales report that included data from 2018 to 2022 from AEO to confidential because the recent sales information was commercially and competitively sensitive). Courts in this District have "permitted sealing or redaction of marketing plans, revenue information, pricing information, advertising expenditures, merchandising strategies, business-development materials, and similar confidential commercial information." *Bliss Trademark Holdings, LLC v. Blissy LLC*, No. 1:25-cv-01763-LAK 2026 U.S. Dist. LEXIS 103385, at *7 (S.D.N.Y April 29, 2026) (collecting cases). *Cf. Conservation Law Found., Inc. v. Shell Oil Co.*, No. 3:21-cv-00933 (JAM), 2023 U.S. Dist. LEXIS 154256, at *22 (D. Conn. May 16, 2023) (sealing documents because defendants declared they were not publicly available and that their public disclosure would cause competitive harm).

The discovery documents SV3 has designated as AEO and Confidential clearly satisfy the lower threshold required to overcome the presumption of public access during discovery, as they are confidential business records Defendant has actively taken steps to protect and their disclosure to competitors will be harmful to SV3. Accordingly, the designations as applied by SV3 should be maintained, or alternatively, those documents identified as "AEO" should, at minimum, be merely downgraded to "Confidential" rather than de-designated altogether.

Respectfully submitted,

*/s/ Eric N. Heyer*
Eric N. Heyer
THOMPSON HINE LLP

Enclosures (submitted via email)