Zanicorn™ LEGAL PLLC

October 9, 2026

**Via ECF**

Hon. Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *State of New York v. Puff Bar, et al.*, No. 25-cv-1445-MMG
(Related Case: *City of New York v. Puff Bar, et al.*, No. 25-cv-02850-MMG)
**Letter of Puff Defendants in Response to September 25, 2026 Order of Magistrate Judge Valerie Figueredo**

Dear Judge Figueredo:

Pursuant to your September 25, 2026 Order ("Order"), counsel respectfully submits, on behalf of Puff Bar, EVO Brands, LLC, and PVG2, LLC (the "Puff Defendants"), this letter explaining the necessity of designating certain documents in its document production as "Attorneys' Eyes Only" ("AEO") and "Confidential" and why the documents in these categories should be sealed pursuant to *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) and why private, individual consumer information should be protected.

## I. AEO and Confidential Designations

As a threshold matter, the question of whether certain documents could be designated Attorneys Eyes Only *i.e.,* "AEO" or "Confidential" and the types of documents to which such designation could apply was litigated before Judge Garnett prior to entry of the Protective Order. *See* ECF Nos. 111, 112, 117, 118, and 119. A primary point of dispute at that time was the inclusion of an "AEO" designation, which Defendants collectively proposed based on their concern that as the defendants compete in the same industry, the sharing of commercially sensitive pricing, sales, purchase, customer, and vendor/supplier information would present potential harm to each defendant is misused or improperly shared. This was particularly the case for information that, in the aggregate would provide a competitor or third-party with complete information as to a particular defendant's pricing or sales strategy and customers and suppliers/vendors. Ultimately, the Protective Order entered by Judge Garnett included the "AEO" designation, and specifically identified types of documents that warranted the designation, including: "(i) commercial information, such as sales, purchase, or pricing data; (ii) customer lists; (iii) supplier/vendor contracts; and (iv) product design and ingredient information not subject to public disclosure pursuant to 10 NYCRR 1006.3" ECF No. 119. This list was illustrative, and not exhaustive.

Insofar as the "AEO" category is concerned, the Puff Defendants have only two documents relating to a private study hereinafter referred to as the "CSUR Report" that was

commissioned by the Puff Defendants that the Puff Defendants maintain must carry the AEO designation. The reason for applying the AEO category to the two documents relating to the CSUR Report is that the document itself is protected by a private license and a non-disclosure agreement. In fact, in order to produce the document in this case for any reason entailed notification to the issuer of the CSUR Report and communication to the owner/writer of the CSUR Report of the necessity of compliance with presentation of the documents.

Since the Puff Defendants maintain only a very small amount of sales with respect to their zero nicotine products, as previously represented to the Plaintiffs, the Puff Defendants seek to maintain a "Confidential" only designation to the following categories of documents:

The categories of documents that the Puff Defendants assert should remain Confidential through discovery include the above identified categories of documents and related communications, and the following categories and types of documents:

- Sales data, both in composite form, and individual invoices;
- Purchase data, both in composite form, and individual invoices and/or purchase orders;
- Shipping information and related-documents for outgoing and incoming shipments;
- Company financial documents, including relating to revenue, costs, and profit;
- Documents related to the development of new, different, or unique products; and
- Premarket Tobacco Product Applications and related documents and communications.

Insofar as the Puff Defendants are concerned and unlike the other defendants in the above-referenced cases, the Puff Defendants are able to categorize the above categories of documents, and communications related to them, which do contain commercially-sensitive and proprietary information relating to Defendant's operations, sales, and purchases, pricing, customers, suppliers/vendors, and strategy as confidential primarily due to the fact that some of this information was previously supplied in connection the Senate and House investigations that were earlier conducted for the Puff products. For instance, in the present case also, the sales data has been produced in a composite form, which identifies, *inter alia*, Puff Defendants' customers, the products sold, the price charged, and the date of sale. While individual invoices on their own may only identify one sale to one customer, in aggregate, they identify Puff Defendant's customers, the prices charged, product sold, volume of product sold, and date of sale.

The last two categories of documents relate to product development and design, which are commercially sensitive information as a competitor may be able to use this information to develop the same or similar products. Additionally, Premarket Tobacco Product Applications

("PMTAs"), which contain proprietary data and product information, as they are not otherwise publicly available, are confidential by statute and not available for public disclosure by FDA. *See* 21 C.F.R. § 20.61(b)-(c).

Additional categories of documents that the Puff Defendants assert should remain Confidential through discovery include the above identified categories of documents and related communications, and the following categories and types of documents:

- Customer licenses and/or other documents provided by customers are part of demonstrating their ability to lawfully operate;
- Internal documents and communications relating to company operations, pricing, purchasing, sales, marketing, customers, suppliers/vendors, and or strategy;
- Agreements and related documents, invoices, and communications with vendors and service-providers; and
- Documents and related communications with third parties relating to pricing, purchasing, sales, customers, strategy, lobbying or legislative efforts.

Under *Lugosch v. Pyramid Co. of Onondaga*, the Second Circuit has articulated a three-step test to determine whether the presumption of public access to judicial documents has been overcome before sealing or redacting a document. *CRC Ins. Servs., Inc. v. Suh*, No. 22-CV-9528 (AT) (JW), 2025 U.S. Dist. LEXIS 33451, at *2 (S.D.N.Y. Feb. 19, 2025). The Court (1) determines whether the documents are "judicial documents" useful in the judicial process; (2) if the documents are deemed judicial documents, the presumption attaches, and the Court then determines the weight of the presumption of public access; and (3) the Court balances the competing considerations against the presumption of access, including the "privacy interests of those resisting disclosure." *CRC Ins. Servs., Inc.*, at *2 (citing *Lugosch*, 435 F.3d at 119-20).

The Court must first consider whether the documents at issue are "judicial documents," which are items filed with the court that are relevant to the performance of judicial functions and useful in the judicial process. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). "Documents that are simply passed between the parties in discovery' are not ordinarily considered judicial documents." *King v. Habib Bank Ltd.*, No. 20-CV-4322 (LGS) (OTW), 2025 U.S. Dist. LEXIS 9731, at * 12 (S.D.N.Y. Jan. 16, 2025) (citations omitted). When the documents at issue are not judicial documents, the presumption of public access to these documents is generally lower and the reasons to seal certain materials do not need to be as compelling. *Brown v. Maxwell*, 929 F.3d 41, 50 (2nd Cir. 2019).[1]

[1] "[P]ublic interest in particular litigation does not generate a public right of access to all discovery materials. Indeed, no public right of access exists with respect to materials produced during the initial stages of discovery." *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, at 222 (S.D.N.Y. 2006) (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

Established factors that can outweigh the presumption of public access include legal privilege, business secrecy, and privacy interests. *CBF Industria De Gusa S/A v/ AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2021 U.S. Dist. LEXIS 172220, at * 8 (S.D.N.Y. Sept. 10, 2021) (citation omitted). S.D.N.Y. has "routinely permit parties to seal or redact commercially sensitive information in order to protect confidential business and financial information." *In re B&C KB Holding GmbH*, No. 22-mc-180 (LAK) (VF), 2023 U.S. Dist. LEXIS 27090, at *3 (S.D.N.Y. Feb. 14, 2023); *see, e.g.*, *In re Dig. Music Antitrust Litig.*, 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017) ("internal pricing strategies and competitive pricing data [are] sufficiently sensitive to warrant redaction" of judicial documents); *Hesse v. Sungard Sys. Int'l*, No. 12 Civ.1990 (CM) (JLC), 2013 U.S. Dist. LEXIS 7289, at *6 (S.D.N.Y. Jan. 14, 2013) (permitting the sealing of emails that included company's "billing rates and project pricing, as well as details of specific projects completed for several clients"); *Graczyk v. Verizon Communs., Inc.*, No. 18 Civ. 6465 (PGG), 2020 U.S. Dist. LEXIS 50812, at *22 (S.D.N.Y. Mar. 24, 2020) (permitting redactions to contracts to protect sensitive financial information).

"The disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *In re City of New York*, 607 F.3d 923, 935 (2nd Cir. 2010). "The Second Circuit has explained that the 'purpose' of 'attorneys' eyes only' protection is to 'prevent a *party* from viewing the sensitive information while nevertheless allowing the *party*'s lawyers to litigate on the basis of the information' disclosed." *Flores v. Stanford*, No. 18 Civ. 02468 (VB)(JCM), 2021 U.S. Dist. LEXIS 185700, at *22 (S.D.N.Y. Sept. 28, 2021) (quoting *In re City of New York*, 607 F.3d at 935-36). "Courts commonly find that sales information is entitled to protection as either AEO or confidential." *Nanjing CIC Int'l Co. v. Schwartz*, No. 20-CV-7031EAW, 2023 U.S. Dist. LEXIS 189070, *13 (W.D.N.Y. Oct. 20, 2023). To determine whether documents should retain an attorneys' eyes only designation, the party seeking the designation "must show there is 'good cause' for the restriction . . . . To make this showing, the party seeking protection . . . must set forth specific facts showing that the information at issue is a trade secret or confidential and then demonstrate that" its disclosure may be harmful. *John Zink Co., LLC v. Zeeco, Inc.*, No. 2025 U.S. Dist. LEXIS 147774, at *8 (N.D. Okla. July 31, 2025) (citations omitted). Once this showing is made, the burden shifts to the party seeking discovery of this information to establish that the disclosure of the trade secrets is relevant and necessary to the action. *Id.* (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)).

## II. Privacy Considerations Particularly Relating to Consumer Invoices and Data Redaction

A separate issue exists with respect to the sales invoices and composites of such sales invoices sold by the Puff Defendants and the Puff Defendants seek to ensure that the private information of their former customers remains private. The Puff Defendants have sold only $15, 654.85 worth of zero nicotine products into the State of New York (which numbers includes shipping costs) and they have supplied the customer information for such sales on a spreadsheet to the Plaintiffs based upon the invoice data. The Puff Defendants seek to maintain the privacy of this information for their consumers.

The Supreme Court has recognized that civil discovery can seriously implicate the privacy interests of parties and third persons and that courts have broad discretion under Rule 26(c) to determine what protection is appropriate. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36 (1984). Similarly, the Second Circuit has recognized the district court's broad discretion to manage discovery and issue protective orders under Rule 26(c). *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). Similarly, in *Trooper 1 v. New York State Police*, No. 22-CV-893, 2024 WL 1349122, at *9–10 (E.D.N.Y. Mar. 28, 2024), the Court recognized the inherent privacy interests individuals have in private information, with particular concern for nonparties. The Trooper Court supported targeted protection of nonparty information rather than treating an ordinary blanket protective order as sufficient for every category of data.

Plaintiffs have argued that under ESI rules names and addresses of individuals need to be supplied and that only social security numbers and dates of birth information should be redacted. However, the Puff Defendants suggest that Rules 26 and 34 do not require production of every field contained in a responsive electronic file. Rule 34 expressly limits production to matters within Rule 26(b)(1), which requires both relevance and proportionality. The responsive sales transactions can be evaluated through transaction dates, products, quantities, amounts, order numbers, and geographic information without disclosing every customer's name, telephone number, email address, and street address. The Puff Defendants maintain that all customer information should be labelled Confidential but request that should the Court decline to extend that Confidential designation to all the consumer information the Court all that telephone numbers and email addresses may be redacted and anonymization and/or redaction applied to names and physical addresses in a manner that only provides the zip codes in order to establish relevancy of each of those $15,654.85 worth of sales in the State of New York.

**III. Conclusion**

Good cause exists to seal the and maintain the "AEO" and "Confidential" designations for the accompanying and similar documents in discovery. As discussed above, the information the Puff Defendants seek to protect concerns confidential business information, such as customer lists, cost and profit structure, and particularly, information relating specifically to the purchase of the intellectual property assets of the Puff brand that the Puff Defendants do not publicly disclose. When assessing "harms imposed by the disclosure of sensitive commercial information, courts consider whether the information is stale. The disclosure of old business information is not necessarily harmless, however." *See e.g., Grand River Enters. Six Nations v. King*, No. 02 Civ. 5068 (JFK), 2009 U.S. Dist. LEXIS 11504, at *28 (S.D.N.Y. Jan. 30, 2009) (upholding the district court's finding that business plans dated at least six years old, "even if historical, [] remain competitively sensitive."); *Encyclopedia Brown Prods. v. Home Box Office*, 26 F. Supp. 2d 606 (N.Y.S.D. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."); *Monterey Bay Mil. Hous., LLC v. Ambac Assur. Corp.*, No. 19 Civ. 9193 (PGG) (SLC), 2025 U.S. Dist. LEXIS 86407, at *13-14 (N.Y.S.D. May 6, 2025) (holding documents older than 10 years old should be sealed or redacted because the action had been pending for almost 8 years, claims arise from events and transactions dating back over 20 years, and the documents remain highly sensitive as they include information that the party has

consistently taken steps to protect that retain competitive sensitivity for the future). The Puff Defendants commercial information remains highly sensitive regardless of how old it is particularly because there is still much misunderstanding regarding the distinction between prior ownership of the Puff brand and the current ownership of the Puff brand.

If a party is unable to establish good cause for an AEO designation of documents, the court can direct the party to change the designation from AEO to confidential. *Nanjing CIC Int'l Co.*, 2023 U.S. Dist. LEXIS 189070, at *21 (de-designating a version of a defendant's sales report that included data from 2018 to 2022 from AEO to confidential because the recent sales information was commercially and competitively sensitive). S.D.N.Y. has "permitted sealing or redaction of marketing plans, revenue information, pricing information, advertising expenditures, merchandising strategies, business-development materials, and similar confidential commercial information." *Bliss Trademark Holdings, LLC v. Blissy LLC*, No. 2026 U.S. Dist. LEXIS 103385, at *7 (S.D.N.Y April 29, 2026) (collecting cases). *Cf. Conservation Law Found., Inc. v. Shell Oil Co.*, No 2023 U.S. Dist. LEXIS 154256, at *22 (D. Conn. May 16, 2023) (sealing documents because defendants declared they were not publicly available and that their public disclosure would cause competitive harm).

The AEO and Confidential designated discovery documents clearly satisfy the lower threshold required to overcome the presumption of public access, as they are confidential business records the Puff Defendants has actively taken steps to protect and that will be harmful to Defendant if disclosed.

Respectfully submitted,

**ZANICORN LEGAL PLLC**

By: __/s/ Mary G. Bielaska/__________
Mary G. Bielaska
Counsel for Puff Bar, EVO Brands, LLC, and PVG2, LLC